| | |
|---|---|
| 1 | Robert A. Izard |
| | Andrew M. Schatz |
| 2 | Wayne T. Boulton |
| | Todd A. Higgins |
| 3 | SCHATZ & NOBEL, P.C. |
| | 330 Main Street |
| 4 | Hartford, CT 06103 |
| | Telephone: (860) 493-6292 **E-filing** |
| 5 | Facsimile: (860) 493-6290 |

FILED
2003 OCT 22 PM 2:11
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Alan R. Plutzik (State Bar No. 077785)
Kathryn A. Schofield (State Bar No. 202939)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADR

| | |
|---|---|
| DOUGLAS A. PETTIT, individually, on behalf of the JDS Uniphase Corporation 401(k) Retirement Plan and on behalf of a class of similarly situated individuals, | Civil Action No. **C 03 4743 MJJ** |
| | **COMPLAINT AND JURY TRIAL DEMAND** |
| Plaintiff, | |
| v. | |
| JDS UNIPHASE CORPORATION, the Administrative Committee of the JDS Uniphase Corporation Employee 401(k) Retirement Plan, John Does 1-30, Jozef Straus, Martin A. Kaplan, Kevin Kalkhoven, Anthony R. Muller, Charles J. Abbe, Donald R. Scifres, Casmir S. Skrzypczak, Robert E. Enos, Peter A. Guglielmi, Bruce D. Day, Donald J. Listwin, John A. McNaughton, Richard T. Liebhaber, Kevin J. Kennedy, Wilson Sibbett, and William J. Sinclair, | <u>CLASS ACTION</u> |
| Defendants. | |

Plaintiff, Douglas A. Pettit ("Plaintiff"), on behalf of the JDS Uniphase Corporation Employee 401(k) Retirement Plan (the "JDSU Plan") and its predecessors, including the OCLI 401(k) PLAN (the "OCLI Plan"), (collectively the "Plan"), and on behalf of a class of similarly situated participants in the Plan (the "Participants"), by his attorneys, alleges the following for his Complaint (the "Complaint"):

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1. Plaintiff, a Participant in the Plan, brings this action for Plan-wide relief on behalf of the Plan, and on behalf of a class of all Participants in the Plan for whose individual accounts the Plan held shares of JDS Uniphase Corporation ("JDSU") common stock and/or a fund invested in JDSU common stock (collectively, "JDSU stock," "stock," or "Fund") between February 4, 2000 and the present (the "Class"). Excluded from the Class are Defendants, officers and directors of JDSU (collectively, "JDSU" or the "Company"), members of their immediate families, and the heirs, successors or assigns of any of the foregoing. Plaintiff brings this action on behalf of both the Plan and the Class pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2)and (3).

2. As more fully set forth below, Defendants breached their fiduciary duties to the Plan and the Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550. As a result of these wrongful acts, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants are personally liable to make good to the Plan the losses resulting from each such breach of fiduciary duty. Plaintiff also seeks equitable relief.

3. Plaintiff alleges that it was imprudent for the Plan to invest Plan assets, which were to be maintained for the purpose of providing for Participant retirements, in a high risk, high flying growth stock like JDSU that reached stratospheric prices during the fiber optic stock boom. Defendants' breach was particularly egregious in that Plan investment in JDSU stock continued as demand for JDSU products slowed dramatically, which resulted in JDSU writing off massive amounts of worthless inventory. Though Defendants recognized the imprudence of JDSU stock as

an investment and sold virtually all of their own shares of JDSU stock, they nevertheless continued to permit the Plan to invest in the Fund in breach of their duties.

4. Plaintiff also alleges that Defendants breached their fiduciary duties by negligently misrepresenting and failing to disclose material information necessary for Participants to make informed decisions concerning Plan assets and benefits. As detailed herein, Defendants negligently misrepresented and failed to disclose material information concerning the demand for JDSU products, the growth in JDSU sales, the value of JDSU inventory and JDSU's financial performance.

5. Plaintiff further alleges that Defendants acted in their own self interests in selling virtually all of their JDSU stock yet at the same time took no steps to protect the Plan from its massive losses in breach of the duty of loyalty.

6. As a result of Defendants' breaches, the Plan suffered tremendous losses when the price of JDSU stock fell from over $140 per share to under $10 per share, wiping out Participants' retirement savings.

## II. JURISDICTION AND VENUE

7. Plaintiffs' claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

8. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

9. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan is administered, where the breaches took place and where one or more defendants reside or may be found.

## III. THE PARTIES

**Plaintiff**

10. Plaintiff is a resident of the State of California and was at all relevant times and is a Participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

**Defendants**

11. Defendant JDSU is a corporation that maintains its principal office in San Jose, California.

12. The Administrative Committee is, upon information and belief, a group of JDSU employees.

13. Defendants John Does 1-30 are the members of the Administrative Committee who, upon information and belief, were senior JDSU employees whose names are unknown at this time but should be identified in discovery. (The Administrative Committee and its members are hereinafter referred to as the "Committee" or the "Administrative Committee"). Upon information and belief, Committee members served at the pleasure of JDSU without compensation and within the scope of their employment.

14. Defendant Jozef Straus was at various times the Co-Chairman of the Board of Directors and the Chief Executive Officer of JDSU.

15. Defendant Kevin Kalkhoven was at various times the Chief Executive Officer and Co-Chairman of the Board of Directors of JDSU.

16. Defendant Martin Kaplan was at various times a Director and Co-Chairman of the Board of Directors of JDSU.

17. Defendant Donald R. Scifres was at various times a Director and Co-Chairman of the Board of Directors of JDSU.

18. Defendant was Casimir S. Skrzypczak was a Director of JDSU.

19. Defendant Robert E. Enos was a Director of JDSU.

20. Defendant Peter A. Guglielmi was a Director of JDSU.

21. Defendant Bruce D. Day was a Director of JDSU.

22. Defendant Donald J. Listwin was a Director of JDSU.

23. Defendant John A McNaughton was a Director of JDSU.

24. Defendant Richard T. Liebhaber was a Director of JDSU.

25. Defendant Kevin J. Kennedy was a Director of JDSU.

26. Defendant Wilson Sibbett was a Director of JDSU.

27. Defendant William J. Sinclair was a Director of JDSU.

28. Defendant Anthony R. Muller was the Executive Vice President, Chief Financial Officer and Secretary of JDSU. Muller signed the Form 11-K Annual Report of the OCLI Plan on behalf of the OCLI Plan. Upon information and belief, Muller was a member of the Committee.

29. Defendant Charles J. Abbe was the President and Chief Operating Officer of JDSU.

30. Upon information and belief, JDSU acted by and through Defendants Straus, Kalkhoven, Kaplan, Scifres, Skrzypczak, Enos, Guglielmi, Day, Listwin, McNaughton, Leibhaber, Kennedy, Sibbett, Sinclair, Muller and Abbe ('the "Individual Defendants") with respect to the Plan.

## IV. CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action in part as a class action pursuant to Rules 23(a) and (b)(1) and(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all Participants in the Plans for whose individual accounts the Plan held shares of the Fund between February 4, 2000 and the present. Excluded from the Class are Defendants, officers and directors of JDSU, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

32. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class in that JDSU's public statements represent that it had over 29,000 employees during the Class Period, and that many or all of these employees were Participants in the Plan for whose account the Plan held shares of the Fund.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Defendants were fiduciaries to the Plan and/or the Participants;

    b. whether Defendants breached their fiduciary duties;

    c. whether the Plan and the Participants were injured by such breaches; and

    d. whether the Class is entitled to damages and injunctive relief.

34. Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

37. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## V. DESCRIPTION OF THE PLAN

38. On February 4, 2000, JDSU acquired Optical Coating Laboratory, Inc. ("OCLI"). At that time, the OCLI Plan invested in OCLI stock. On the date of the acquisition, each share of OCLI stock held by the OCLI Plan was exchanged for 3.712 shares of JDSU common stock.

39. Effective June, 2001, the OCLI Plan was merged into the JDSU Plan.

40. At or about this same time, a number of other plans sponsored by companies acquired by JDSU were merged into the JDSU Plan, including the PIRI Savings Plan and Trust, the Epion 401(k) Plan, the SDL, Inc. Profit Sharing and Savings Plus Plan and the E-Tek Dynamics, Inc. 401(k) Plan. Upon information and belief, these plans invested in JDSU stock after the sponsors were acquired by JDSU but before they were merged into the JDSU Plan in 2001.

COMPLAINT AND JURY TRIAL DEMAND 5
38951

41. The Plan is an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

42. The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

43. The Plan is a voluntary contribution plan whereby Participants made contributions to the Plan and directed the Plan to purchase investments with those contributions from among the investment options available in the Plan and allocate them to Participants' individual accounts. At various times, the Fund was an investment option for Plan assets. All assets of the Plan were held collectively in a Master Trust.

44. The Plan provided that JDSU would make matching contributions as approved by the JDSU Board of Directors.

45. According to the Plan's Form 11-K for the year ended 2001, effective September 1, 2001, the Administrative Committee prohibited future investment in the Fund from Participant voluntary contributions and limited new Fund investments to JDSU matching contributions.

## VI. DEFENDANTS WERE FIDUCIARIES

46. As more fully alleged below, at all times relevant to this Complaint, Defendants were fiduciaries of the Plan because they were so named and/or because they exercised discretionary authority or control respecting management of the Plan or management or disposition of Plan assets or had discretionary authority or responsibility in the administration of the Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In that regard, a person is a fiduciary even if a plan does not name him as such or by its terms assign fiduciary duties to him where by his conduct he engages in fiduciary activities. The test for whether a person is a fiduciary is functional and based on actual conduct. Those who have discretion over management of a plan or plan assets are

fiduciaries regardless of the labels or duties assigned to them by the language of a plan. Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

47. A fiduciary may not avoid his fiduciary responsibilities under ERISA by relying solely on the language of the plan documents. While the basic structure of a plan may be specified within limits by the plan sponsor, the fiduciary may not follow the plan document if to do so leads to an imprudent result under ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

48. According to the Form 5500 Annual Reports for the Plan, JDSU was the Administrator of the Plans within the meaning of ERISA § 3(16)(A), 29 U.S.C.§ 1002(16)(A) and 29 U.S.C. § 1102(a).

49. According to the Form 11-K filed by the Plan for the period ending December 31, 2001, at some point during the relevant time period, the JDSU Directors appointed the Defendant Administrative Committee and its members to participate in the management of the Plan on behalf of JDSU. Committee members were fiduciaries as a result of their positions on the Committee. The Committee selected investment options for the Plan.

50. The Individual Defendants were fiduciaries in that JDSU acted by and through them with respect to the Plan.

### VII. FIDUCIARY DUTIES UNDER ERISA

51. **The Statutory Requirements.** ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

COMPLAINT AND JURY TRIAL DEMAND
38951
7

52. **The Duty of Loyalty.** ERISA imposes on a plan fiduciary the duty of loyalty--that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."

53. The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

54. **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence--that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...."

55. **The Duty to Inform.** The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: 1) a negative duty not to misinform; 2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and 3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the Participants, on the other.

56. Pursuant to the duty to inform, fiduciaries of the Plan were required under ERISA to furnish certain information to Participants. For example, ERISA § 101, 29 U.S.C. § 1021, requires that fiduciaries furnish a Summary Plan Description ("SPD") to Participants. ERISA § 102, 29 U.S.C.§ 1022, provides that the SPD must apprise Participants of their rights under the Plan. The SPD and all information contained or incorporated therein constitutes a representation in a fiduciary capacity upon which Participants were entitled to rely in determining the identity and

responsibilities of fiduciaries under the Plans and in making decisions concerning their benefits and investment and management of Plan assets allocated to their accounts:

> The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(b).

57. **The Duty to Investigate and Monitor Investment Alternatives**. With respect to a pension plan such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan.

58. **The Duty to Monitor Appointed Fiduciaries**. Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries thus appointed. The duty to monitor entails both giving information to and reviewing the actions of the appointed fiduciaries. In a 401(k) plan such as the Plan, the monitoring fiduciaries must therefore ensure that the appointed fiduciaries:

- possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties;
- are knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of Plan participants;
- are provided with adequate financial resources to do their job;
- have adequate information to do their job of overseeing the Plan investments with respect to company stock;

COMPLAINT AND JURY TRIAL DEMAND
38951

9

- have access to outside, impartial advisors when needed;
- maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and
- report regularly to the monitoring fiduciaries.

The monitoring fiduciaries must then review, understand, and approve the conduct of the hands-on fiduciaries.

59. **The Duty Sometimes to Disregard Plan Documents.** A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so leads to an imprudent result. ERISA § 404(a)(1)(d), (29 U.S.C. § 1104(a)(1)(D)).

60. **Co-Fiduciary Liability.** A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

61. **Non-Fiduciary Liability.** Under ERISA non-fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1332(a)(3).

## VIII. PARTICIPANTS ARE NOT RESPONSIBLE FOR IMPRUDENT PLAN INVESTMENTS

62. The fact that Participants selected the investments in which the Plan invested Participant account balances is no defense in this case. Fiduciaries can shift liability for imprudent investments to fiduciaries under ERISA § 404(c), 29 U.S.C. § 1104(c) only if, among other things, they meet four specific requirements:

a) they disclose in advance the intent to shift liability to Participants;

b) they ensure that Participants are not subject to undue influence;

c) they provide an adequate description of the investment objectives and risk and return characteristics of each investment option; and

d) they disclose to Participants all material information necessary for Participants to make investment decisions that they are not precluded from disclosing under other applicable law. In this regard, fiduciaries have a choice – they can disclose all material information to Participants, including information that they are not required to disclose under the securities laws, and shift liability to Participants, or they can comply with the more limited disclosure requirement under the securities laws but remain liable for imprudent investments. 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(i) and (ii) and (c)(2)(i) and (ii).

63. As set forth in more detail below, Defendants failed to shift liability to Participants for imprudent investment decisions under section 404(c) because they failed to comply with the relevant Regulations.

## IX. DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

64. JDSU manufactures and sells advanced fiber optic components and modules to telecommunications and cable television businesses. Demand for JDSU products was substantial during the telecommunications boom of the late 1990's. During this time period, JDSU's stock price skyrocketed to over $140 per share with a price/earnings ration as high as 713. Consequently, the Fund was a high growth, high risk, speculative investment that was not appropriate for a retirement plan like the Plan that was designed to provide the resources necessary to support JDSU employees in their retirements. Indeed, on April 14, 2000, a Bloomberg news

article warned that JDSU "cost too much" in that it had annual sales of only $674 million and no earnings but had a total market value of $56.7 billion, greater than General Motors. The warnings increased when a Bloomberg article stated on July 11, 2000 that the market value of JDSU was up to $94 billion, " a bit rich for a company that lost $486 million in the first nine months of the fiscal year that ended in June, following a $171 million loss in all of fiscal 1999." According to Pavilion Asset Management on October 25, 2000, "expectations for companies like JDS Uniphase and Nortel are enormous, so when they miss (forecasts), they're hit extremely harshly."

65. The imprudence of the Fund as an investment for the Plan increased dramatically as JDSU's business began to falter in 2000. Demand for JDSU products began to soften by Spring, 2000. This drop in demand continued and increased thereafter. For example, orders from key customers such as Nortel and Lucent diminished, and customers delayed or cancelled orders and deliveries and returned purchased products.

66. As a consequence of the drop in demand and because customers were free to cancel orders without penalty, inventory levels rose significantly as JDSU produced more inventory than its customers needed. Much of this inventory became obsolete and could not ever be used because of the rapid changes in the technology of the products manufactured by JDSU. Consequently, much of this inventory was worthless and eventually had to be destroyed and written off against JDSU earnings in accordance with Generally Accepted Accounting Principles. However, this write-off did not occur until much later than it should have.

67. The drop in demand and the corresponding drop in revenues, coupled with the significant increase in worthless inventory which should have lead to a corresponding write-off of the value of inventory and a reduction in earnings, created a substantial increase in the risk of a significant drop in JDSU's revenue, earnings and stock price. Consequently, the imprudence of the Fund as an investment for Plan assets increased substantially in 2000.

68. Defendants should have known that as a result of the foregoing, the Fund was not a prudent investment. Indeed, according to byteandswitch.com, a fiber optic industry publication, Defendant Kalkhoven stated that he saw that JDSU's business was "going sour" even before he left JDSU in May, 2000. Perhaps recognizing that JDSU stock was not a prudent investment, the

Individual Defendants, other senior officers of JDSU and JDSU's largest shareholder sold massive amounts of their shares of JDSU stock. The majority of these shares were sold when the stock price was close to its all-time high in summer, 2000.

69. Despite the fact that they should have known that the Fund was not a prudent investment, Defendants negligently failed to disclose to either the Plan or the Participants that demand was dropping which would result in a corresponding drop in sales, and that the levels of obsolete inventory that would have to be written off against earnings were rising. Consequently, they failed to disclose that JDSU's earnings and inventory levels and projected financial performance were overstated. They further failed to disclose to either the Plan or the Participants that they were selling virtually all of their stock.

70. To the contrary, Defendants made negligent misrepresentations in a fiduciary capacity in the SPD. Upon information and belief, the SPD incorporated by reference all of JDSU's past and future SEC filings. Consequently, the SEC filings were part of the SPD. Defendants exercised discretion in disseminating the SPD which incorporated by reference JDSU's SEC filings to Participants which were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plans.

71. The SEC filings which, upon information and belief, were incorporated into the SPD, negligently misrepresented JDSU's financial results and inventory levels. In particular, JDSU negligently misrepresented the following information:

(a) The Form 8-K dated September 1, 2000 negligently misrepresented JDSU's financial performance by overstating JDSU's earnings and inventory levels and, in particular, negligently misrepresented that inventory increased by 34 % or $94.7 million to $375.4 million as of June 30, 2000 as a result of "ongoing increases in demand for nearly all of our component and module products."

(b) The September 28, 2000 10-K incorporated by reference the September 1, 2000 8-K and was misleading for the same reasons.

(c) The November 13, 2000 10-Q for the quarter ending September 30, 2000 similarly negligently overstated financial results and inventory levels.

(d) The February 13, 2001 10-Q for the quarter ending December 31, 2000 again negligently overstated earnings and inventory levels. In particular, it negligently misrepresented that inventory levels were $493.9 million, an increase of 25 % over the previous quarter.

(e) The May 10, 2001 10-Q for the quarter ending March 31, 2000 also negligently misrepresented financial results and inventory levels. In particular, it negligently misrepresented that inventory levels were $672.9 million, an increase of 36 % over the previous quarter.

72. The forgoing negligent misrepresentations were false and misleading in that they overstated demand, inventory levels, revenue and earnings, and failed to disclose that the value of a substantial amount of inventory would have to be written off which would have reduced reported earnings.

73. Based on the foregoing, Defendants should have known that the Fund was an imprudent investment. Consequently, Defendants breached their fiduciary duties by (a) offering the Fund as an investment option for the Plan; (b) permitting the Plan to purchase shares of the Fund; (c) permitting the Plan to maintain its investment in the Fund; and (d) permitting the Plan to maintain its imprudent concentration in Fund shares.

74. Defendants also breached their fiduciary duties by negligently misrepresenting and failing to provide to Participants complete, accurate and material information necessary for Participants to make decisions concerning the prudence of directing the Plan to invest in the Fund as further alleged above.

75. As a consequence of the foregoing negligent misrepresentations and nondisclosures, Defendants failed to provide Participants with an adequate description of the risk and return characteristics of the Fund.

76. JDSU and the Individual Defendants also breached their fiduciary duty of loyalty in that they failed to act in the best interests of Participants when they sold their own shares of JDSU stock, and permitted senior officers and a large shareholder to sell their shares of JDSU stock, without halting the purchase of Fund shares by the Plan and selling the Plan's shares in the Fund, or at least disclosing to Participants that the Fund was not a prudent investment.

77. JDSU and the Director Defendants also breached their fiduciary duty to monitor the Committee as that duty is more fully alleged above in that they failed to ensure that the Committee had adequate information necessary to ensure that the Fund was an appropriate Plan investment and that the Plan and the Participants were protected from imprudent investments in the Fund. To the extent that JDSU and the Individual Defendants disclosed to the Committee the foregoing information that Plaintiff contends was negligently misrepresented and negligently not disclosed to Participants, then JDSU and the Individual Defendants breached their fiduciary duties by failing to appoint a Committee with the skill, experience and knowledge to perform their duties to the Plan and the Participants.

## PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiff prays for:

A. A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B. A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

D. Imposition a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E. An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F. Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

G. An Order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the common stock of JDSU

maintained by the Plan in proportion to the accounts' losses attributable to the decline in the stock price of JDSU;

H. An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I. An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine;

J. An Order for equitable restitution and other appropriate equitable monetary relief against the Defendants; and

K. Plaintiff demands trial by jury.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED: October 22, 2003    Respectfully submitted,

              SCHATZ & NOBEL, P.C.
              Robert A. Izard
              Andrew M. Schatz
              Wayne T. Boulton
              Todd A. Higgins
              330 Main Street
              Hartford, CT 06106-1851
              Telephone: (860) 493-6292
              Facsimile: (860) 493-6290

              BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
              Alan R. Plutzik (State Bar No. 077785)
              Kathryn A. Schofield (State Bar No. 202939)
              2125 Oak Grove Road, Suite 120
              Walnut Creek, CA 94598
              Telephone: (925) 945-0200
              Facsimile: (925) 945-8792

By: _/s/ Kathryn A. Schofield_
    Kathryn A. Schofield
  Attorneys for Plaintiff and the Class