1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10
11

**IN RE JDS UNIPHASE CORP.**
**ERISA LITIGATION**

12

**MASTER FILE C 03-04743 CW (WWS)**

13

**MEMORANDUM OF OPINION**
**AND ORDER**

14

_____

15

**THIS DOCUMENT RELATES TO:**

16

**ALL ACTIONS**
_____/

17
18

    This is a class action brought by and on behalf of employees and former employees of

19

JDS UNIPHASE Corp. ("JDSU") who participated in JDSU's 401(k) Plan between February 4,

20

2000, and the filing of this action.  The class also includes certain former employees of Optical

21

Coating Laboratories, Inc. ("OCLI") who participated in OCLI's 401(k) Plan between the date

22

JDSU acquired OCLI (February 4, 2000) and the date on which the OCLI Plan was merged with

23

the JDSU Plan (July 1, 2001) (collectively, the "Plans").  JDSU manufactures products for fiber

24

optic communications and for industrial, commercial and consumer applications.

25

    The consolidated complaint names forty-six defendants, in four categories:  JDSU,

26

fourteen current and former directors of JDSU ("Director Defendants"), eight current and former

27
28

members of the JDSU Benefits Committee ("Committee Defendants"),[1] and twenty-three individual defendants who engaged in some Plan-related activities ("Individual Defendants").  It alleges that the defendants were fiduciaries and violated their fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), by having the Plans make imprudent investments in JDSU stock and by negligently misrepresenting and failing to disclose material information to participants.  As a result, the Plans suffered losses when the stock fell from $145 to $5 per share.  ¶¶ 4-7.

All defendants have jointly moved to dismiss under Rule 12(b)(6).

## I.    STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Pleadings are construed liberally in favor of the pleader, and in challenging the sufficiency of a complaint all of the material allegations are taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The standard under Federal Rule of Civil Procedure 8 contains a powerful presumption against rejecting pleadings for failure to state a claim.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  "The Supreme Court has explained that it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."  *Id.* at 249 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (internal citation and quotation marks omitted)).  However, "conclusory allegations without more are insufficient to defeat a motion to dismiss."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

## II.   DEFENDANTS' FIDUCIARY STATUS UNDER ERISA

The defendants do not contest the sufficiency of plaintiffs' allegations with regard to the

---

[1]The complaint names as members of the Benefits Committee Michael Burkhard, Danny Karst, Angela Kupps, Joe Passarello, Andrew Pollack, Dena Regan, Garry Ronco, and Steve Sapers.  None is alleged to have been a director of JDSU.

ERISA fiduciary status of JDSU or the Committee Defendants.[2]  However, the defendants argue that the complaint fails to set forth nonconclusory allegations that the Director Defendants and the Individual Defendants are ERISA fiduciaries with regard to the counts alleged in the complaint.

Plaintiffs set forth four counts alleging various fiduciary breaches against the various defendants.  Count I alleges failure to prudently and loyally manage the Plans' assets against all defendants; Count II alleges failure to monitor against JDSU and the Director Defendants; Count III alleges failure to provide complete and accurate information to Plan participants and beneficiaries against all defendants; Count IV alleges breach of duty to avoid conflicts against all defendants, with certain allegations directed toward specific defendants.

   A.    ERISA Fiduciary Status

To establish personal liability under ERISA § 409, 29 U.S.C. § 1109(a), "an individual or entity must be a fiduciary." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093-94 (9th Cir. 2004).  Section 3(21)(A) provides in pertinent part that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or . . . (iii) has any discretionary authority or discretionary control responsibility in the administration of such plan." 29 U.S.C. § 1002 (21)(A)(i) and (iii).  Fiduciary status under ERISA is defined "in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997);  *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 544 (S.D. Tex. 2003).  Fiduciary status under ERISA is not an "all-or-nothing concept," and "a court must ask whether a person is a fiduciary *with respect to the particular activity at issue*." *Cotton v. Massachusetts Mut. Life Ins. Co.*, 2005 WL 604905 *1, *5 (11th Cir. 2005) (emphasis added) (citing *Coleman v. Nationwide Ins. Co.*, 969 F.2d 54,

---

[2] The complaint alleges that JDSU and the Benefits Committee have responsibility for administering the Plans, determining the investment options available under the Plans, and that these defendants are ERISA fiduciaries with respect to the alleged fiduciary breaches.

1   61 (4th Cir. 1992)); *see also Maniace v. Commerce Bank,* 40 F.3d 263, 267 (8th Cir. 1994)

2   (same). "[F]iduciary status is to be determined by looking at the *actual* authority or power

3   demonstrated, as well as the formal title and duties of the party at issue." *Landry v. Airline Pilots*

4   *Ass'n Int'l AFL-CIO,* 901 F.2d 404, 418 (5th Cir.), *cert. denied* 408 U.S. 895 (1990).

5         *B.*     *Sufficiency of the Pleadings*

6         Throughout the complaint, the allegations of fiduciary status against the Director

7   Defendants and the Individual Defendants are cast in the statutory language that they "exercis[ed]

8   discretionary authority with respect to management and administration of the Plans and/or

9   management and disposition of the Plans' assets."  Lacking any facts, such conclusory

10  allegations are insufficient to afford defendants adequate notice of the grounds underlying the

11  claims against them.  *See Cotton*, 2005 WL 604905 at *6 (holding that simple allegations that a

12  defendant falls within the statutory definition of fiduciary are conclusory assertions, not well-

13  pleaded factual allegations); *Conley*, 355 U.S. at 47 (stating that Federal Rule of Civil Procedure

14  8 requires a plaintiff to provide a short and plain statement of the claim so that the opposing party

15  receives "fair notice of what the plaintiff's claim is and the ground upon which it rests").

16  Plaintiffs' boilerplate statutory allegations are therefore meaningless.  To determine whether

17  plaintiffs have sufficiently alleged defendants' status as ERISA fiduciaries, the court must

18  discern from other portions of the complaint the functions that the various defendants allegedly

19  performed, *see Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996), and decide whether

20  performance of those functions caused the defendants to become fiduciaries as to the claims

21  asserted, *see Coleman*, 969 F.2d at 61.

22        1.     Allegations regarding the Director and Individual Defendants

23        As stated, the defendants do not dispute the fiduciary status of JDSU and the Committee

24  Defendants.  Regarding the liability of the Director Defendants and the Individual Defendants,

25  the complaint alleges:  (1) that the Board of Directors acted as the "primary executive arm" of

26  JDSU, wielded the company's ultimate power to modify the Plans, possessed authority for

27

28                                       -4-

1   deciding whether to make matching contributions under the Plans, and reviewed and evaluated

2   information received on the status of the Plans from Compensation Committee reports, ¶¶ 79-81;

3   and (2) that the Individual Defendants were named as fiduciaries and/or signed certain

4   documents or were otherwise involved in the administration of the Plans, thus making them

5   fiduciaries.  ¶¶ 45-46.

6                 2.      Count I

7           Plaintiffs allege that the Director Defendants and the Individual Defendants are ERISA

8   fiduciaries regarding the failure to prudently and loyally manage the Plans' assets.  However, the

9   allegations indicate that only the Benefits Committee is responsible for the actual management of

10   the stock fund.  It states that the Benefits Committee "shall be *solely* responsible for directing the

11   Trustee as to the investment and disposition of the Trust Fund and shall have responsibility for

12   the overall diversification of the Trust Fund."  ¶ 88 (emphasis added).  The Benefits Committee

13   is also charged with selecting and monitoring all investment options available to participants

14   under the Plans.  The allegations regarding the Director Defendants' general oversight or the

15   Individual Defendants' ministerial actions regarding the Plans fail to show that these groups of

16   defendants had any discretionary control over the managing of the Plans' assets.  *See Cotton*,

17   2005 WL 604905 at *5 ("[A] court must ask whether a person is a fiduciary with respect to the

18   particular activity at issue.").

19                 a.      Director Defendants

20           Although a company may act *through* its directors, the Director Defendants are only

21   fiduciaries to the extent that they exercise discretionary authority with respect to the particular

22   activity at issue.  *Coleman*, 969 F.2d at 61; *Cotton*, 2005 WL 604905 at *5; *see also* 29 C.F.R.

23   § 2509.75-8, D-4 (1993) (Department of Labor) (stating that directors' liability and responsibility

24   as fiduciaries is limited to the extent of the functions they perform).  The Director Defendants are

25   not fiduciaries merely because the corporation is a fiduciary.  *See In re Calpine Corp. ERISA*

26   *Litig.*, C-03-1685 (N.D. Cal. 2005), slip op. at 5.  Here, plaintiffs allege breaches of fiduciary

27

28                                                    -5-

duty involving the JDSU stock fund, but allege no facts that show how the Director Defendants had any discretionary authority over the management of the stock fund.

b.     Individual Defendants

Plaintiffs allege that the Individual Defendants were identified as fiduciaries in a letter to plaintiffs from counsel for JDSU.  ¶ 46.  This letter, identifying generic Plan fiduciaries, was provided pursuant to a stipulation and order consolidating the ERISA actions in this case. However, the definition of fiduciary under ERISA is a functional one that looks to the actual authority and control performed by a defendant.  *Mertens,* 508 U.S. at 262.  A person or entity may be a fiduciary for one function but not for another.  *Hansen v. North Trident Reg. Hosp.*, 60 F. Supp. 2d 523, 526 (D.S.C. 1999).  Fiduciary status under ERISA is not an all-or-nothing concept, and the important inquiry is whether the person is a fiduciary with respect to the activity at issue.  *Coleman,* 969 F.2d at 61.  Here, the allegations fail to set forth any facts demonstrating authority or control over the stock fund by the Individual Defendants.  Plaintiffs' only specific allegation is that the Individual Defendants signed certain documents under certain titles, but this does not make an individual an ERISA fiduciary.  *See In re WorldCom*, *Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003) ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts."); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1460 (9th Cir. 1995) (holding that ERISA fiduciary status depends on an individual's functional role rather than title).  The preparation of government reports required by government agencies is a ministerial function, and those performing such functions are not fiduciaries.  29 C.F.R. § 2509.78-5 at D-2.  Absent any specific allegations that the Individual Defendants exercised discretionary control or authority regarding the management of the stock fund, there is no basis for finding ERISA fiduciary status.  *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) ("'Persons who have no power to make any decisions as to plan policy, interpretation,

1 practices or procedures' are not fiduciaries.") (citing 29 C.F.R. § 2509.75-8 at D-2).[3]

2                    3.        Count II

3        Plaintiffs allege that the Director Defendants are ERISA fiduciaries with regard to failing

4 to monitor the Benefits Committee, the Administrative Committee, and the Individual

5 Defendants, and provide them with accurate information.

6                         a.        OCLI Plan

7        Plaintiffs allege that OCLI was acquired by JDSU on February 4, 2000, that JDSU

8 maintained the OCLI Plan from February 4, 2000, through July 21, 2001, and that JDSU was the

9 direct successor of the former entity which administered the OCLI Plan.  Plaintiffs allege that

10 JDSU, as that successor, was given explicit responsibility under the OCLI Plan to appoint and

11 monitor the Administrative Committee, the Plan administrator, and set the parameters of their

12 responsibilities under the Plan.  The issue of whether and when JDSU became the successor to

13 OCLI by acquiring OCLI, and whether the Board of Directors therefore had discretionary

14 authority to appoint fiduciaries under the OCLI Plan, as it did under the JDSU Plan, requires

15 factual development that makes the issue inappropriate for dismissal at this stage.

16                         b.        Fiduciary status of the Director Defendants

17        As to both Plans, plaintiffs allege that "JDSU, through its Board of Directors or

18 otherwise, had the authority and discretion to hire and terminate [its] officers and employees"

19 and "to appoint, monitor, and remove officers and employees from their individual fiduciary

20 roles with respect to the Plans."  ¶ 17.  Accepting as true plaintiffs' allegation that JDSU had the

21

22        [3]Plaintiffs argue that "it is likely" that some of the Individual Defendants were members
of the Administrative Committee, but that this cannot be verified without further discovery.
23 However, the plaintiffs fail to allege that the Administrative Committee had any discretionary
control or authority over the management of the stock fund.  The allegations state that the
24 Administrative Committee had the power to construe and interpret Plan documents, appoint
advisors, provide Plan participants with financial reports, and appoint other persons to carry out
25 certain duties under the Plan.  The fact that some Individual Defendants may have been members
of such a committee falls short of providing specific nonconclusory allegations that such
26 individuals exercised discretionary control or authority over the management of the stock fund.

27

28                                            -7-

discretionary control and authority to appoint fiduciaries under the Plans, there arises a duty to monitor such fiduciaries. Where the discretionary authority to select or appoint fiduciaries exists, a director's duty to monitor those appointees also exists. 29 C.F.R. § 2509.75-8, DR-4 ("[T]he board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise 'discretionary authority or discretionary control respecting management of such plan.'"); *see also Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1448-49 (9th Cir. 1989) (citing 29 C.F.R. § 2509.75-8, DR-4); *Leigh v. Engle*, 727 F.2d 113, 133-34 (7th Cir. 1984) (same); *Calpine*, C-03-1685 at 10.[4] Plaintiffs have sufficiently alleged fiduciary status of the Director Defendants with regard to a duty to monitor their appointees.

### 4.    Count III

Plaintiffs allege that the Director Defendants and the Individual Defendants are ERISA fiduciaries with respect to the failure to provide complete and accurate information to Plan participants and beneficiaries. ¶ 179. Again, fiduciary status under ERISA is not an all-or-nothing concept, and the defendants are only liable to the extent that they have discretionary authority or control over the activity at issue. *Coleman*, 969 F.2d at 61. For the same reasons that plaintiffs have failed to allege facts showing that the Director Defendants or the Individual Defendants exercised any authority or control over the management of the trust fund, they have also failed to allege that either group of defendants possessed any responsibility for providing information to the Plan participants.

In fact, the complaint specifically alleges that the Benefits Committee and the

---

[4]Defendants argue that plaintiffs must specifically allege not only that defendants had authority to appoint or select fiduciaries, but that they retained control of monitoring those fiduciaries. This is not supported by the case law or federal regulations as explained by the Department of Labor. *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1465-66 (4th Cir. 1996) (citing 29 C.F.R. § 2509.75-8 at FR-17, and stating that "the *power* . . . to appoint, retain, and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan") (emphasis added).

1   Administrative Committee–not the Director Defendants or the Individual Defendants–had the

2   responsibility to provide prospectuses and other information to the Plan participants.  ¶¶ 92, 95.

3   Such allegations are noticeably absent from any statement describing the duties of the Director

4   Defendants and the Individual Defendants.  Alleging that the Director Defendants exercised a

5   general "executive" oversight over all things regarding the Plan is insufficient to allege their

6   status as ERISA fiduciaries with regard to this claim for the reasons discussed previously.

7                    5.      Count IV

8           Count IV alleges breach of the duty to avoid conflicts of interest against all defendants

9   and contains a disorganized grab bag of charges unsupported by factual allegations from which it

10  cannot be determined against what defendants the charges are directed or their factual basis.

11          Counts I and III will be dismissed, with leave to amend, as to the Director

12  Defendants and the Individual Defendants, for failure to sufficiently allege fiduciary status under

13  ERISA, and Count IV will be dismissed, with leave to amend, as to all defendants.

14  **III.     COUNT I - FAILURE TO PRUDENTLY MANAGE THE PLANS' ASSETS**

15          *A.      Sufficiency of the Pleadings*

16          Defendants contend that plaintiffs' claim for breach of the ERISA duty of prudence fails

17  as a matter of law because the complaint does not plead facts that if proven would establish that

18  any defendant had actual or imputed knowledge of the alleged slowdown in demand or of

19  accounting entries that plaintiffs contend made JDSU an imprudent investment.  Defendants rely

20  on two cases.  In *Haber v. Brown,* 774 F. Supp. 877 (S.D.N.Y. 1991), the court granted a motion

21  to dismiss a fiduciary claim against the defendant Washington National Life Insurance Company

22  because the complaint consisted only of recitals of the statutory language and alleged "no facts to

23  prove grounds for the claim that Washington National knowingly participated in Brown's

24  fiduciary breaches."  *Id.* at 878.  The case is not apposite in view of the detailed factual

25  allegations of the instant complaint.  In *Crowley v. Corning, Inc*., 234 F. Supp. 2d 222

26  (W.D.N.Y. 2002), the court found the allegations of the complaint deficient in various respects,

27

28                                          -9-

including the allegations that the members of the Committee "should have known that the Plan should not have invested in Company stock." *Id*. at 230.  The case is not persuasive for the proposition urged by defendants, that the instant complaint should be dismissed because it alleges that the fiduciary defendants "should have known that the [JDSU] Fund was not a prudent investment." ¶¶ 124, 125.  Allegations that defendants should have known that investing in company stock was imprudent were held sufficient in  *Kelley v. Household International, Inc.*, 2004 WL 723843 (N.D. Ill. 2004), and in *Enron*, 284 F. Supp. 2d at 656-57.  The allegation simply defines the defendants' fiduciary duty to determine whether the Fund was a prudent investment.  It is sufficient to give defendants notice of the breach of fiduciary duty claim, based on the factual allegations of the complaint.  Dismissal is inappropriate because it does not appear beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  *Conley*, 355 U.S. at 45-46.

>    B.    *Application of the Section 404(a)(2) Exemption*

Plaintiffs contend that defendants breached their fiduciary duties by offering the JDSU Stock Fund as an investment option under the Plans, by permitting the Plans to purchase and hold shares in the Fund when it was imprudent to do so, and by continuing to make available company matching contributions in JDSU stock.  ¶ 166.  Defendants contend that this claim fails under *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004).

Section 404(a)(1)(B) provides that "a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

The Plans at issue here were so-called Eligible Individual Account Plans ('EIAP'). 29 U.S.C. § 1002(34); ¶ 48.  The investments available to participants included numerous mutual funds with differing investment policies and risk profiles, in addition to the JDSU common stock fund.  ¶¶ 53, 61.  The Plans provided for employer matching contributions to participants who

made elective contributions.  ¶ 54.

Section 404(a)(2) provides:

> In the case of an eligible individual account plan . . . the diversification requirement of paragraph (1)(C) and prudence requirement (only to the extent it requires diversification) of paragraph 1(B) is not violated by acquisition or holding of qualifying employer . . . securities.

Citing *Wright,* defendants argue that plaintiffs' prudence claim is barred as falling squarely within the duty to diversify.  In *Wright*, plaintiffs alleged a violation of ERISA's prudence requirement under section 404(a)(1)(B) based on an ESOP's failure to sell the company's stock when a substantial premium could have been realized as the result of a merger and later to investigate whether to sell the stock when its value declined.  *Id.* at 1097.  The court affirmed the dismissal of the complaint under Rule 12(b)(6).

*Wright* does not hold that section 404(a)(2) bars a claim against an EIAP fiduciary based on that fiduciary's investment decisions respecting the company's stock.  It acknowledged that despite the section 404(a)(2) exemption, other courts have held that ERISA's prudence requirement continues to apply to EIAP fiduciaries.  *Id.* at 1097 (citing *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1985)); *see also Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995) (adopting a standard under which investment in the company's stock is presumptively prudent unless fiduciary abused its discretion).  At the same time, it recognized that "[i]nterpreting ERISA's prudence requirement to subject EIAPs to an albeit  tempered duty to diversify arguably threatens to eviscerate congressional intent and the guiding rationale behind EIAPs themselves."  *Wright*, 360 F.3d at 1097.

Because the facts of the case made it unnecessary, the court declined to "decide whether the duty to diversify survives the statutory text of § 1104(a)(2)."  *Id.* at 1097-98.  The court found that even if the *Moench* standard applied, plaintiff loses, stating, "[u]nlike *Moench,* this case does not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing."  *Id.* at 1098.  It observed that published accounts showed the company to be profitable and paying substantial dividends during the period.  *Id.* at

1   1098-99.

2       The instant complaint presents a different case.  Plaintiffs allege that defendants breached

3   their fiduciary duties because JDSU stock was –itself– an imprudent investment, not because

4   defendants breached a duty to diversify.  ¶¶ 108-41.  Although an EIAP fiduciary may be exempt

5   from the duty to diversify and the duty of prudence *to the extent that it requires diversification*,

6   the duty of prudence otherwise applies to EIAP fiduciaries.  *Id.* at 1097; 29 U.S.C. § 1104(a)(2).

7   Defendants argue that plaintiffs' claim of imprudence is, in reality, a claim for failure to

8   diversify, yet plaintiffs make no such diversification claim.  Contrary to what defendants appear

9   to argue, plaintiffs' claim is not transformed into a diversification claim merely because plaintiffs

10  argue that investment in JDSU was imprudent and that it logically follows from such an

11  argument that defendants therefore should have invested in other stocks.

12      The purpose of the duty to diversify is to minimize the risk of large losses.  29 U.S.C.

13  § 1104(a)(1)(C).  Normally this duty requires investment of plan assets in such a manner that the

14  assets are not invested predominantly in a single stock, such as company stock.  29 U.S.C.

15  § 1107(a)(2) (prohibiting investment of over ten percent of plan assets in employer stock).

16  Because of the section 404(a)(2) exemption from the duty to diversify, defendants did not breach

17  any fiduciary duty merely by investing a large portion of Plan assets in JDSU stock.  29 U.S.C.

18  § 1104(a)(2).  But plaintiffs do not claim that defendants breached their duty by putting a certain

19  percentage of the funds in JDSU stock, or that defendants should have invested certain

20  percentages of Plan assets in various alternative investments.  Rather, plaintiffs allege that *any*

21  investment in JDSU stock was imprudent in light of what the defendants knew about JDSU and

22  the risk of investing in JDSU stock.  ¶¶ 108-41.  Plaintiffs' claim is therefore not a diversification

23  claim, and the section 404(a)(2) exemption and *Wright* do not resolve this issue.

24      Even if plaintiffs' claim could be construed as a diversification claim, the court in *Wright*

25  expressly declined to decide whether any duty to diversify survives the statutory text of section

26  404(a)(2), and held that the plaintiffs' claim in that case failed under the *Moench* standard.

27

28                                                -12-

1   *Wright*, 360 F.3d at 1098.  Under the *Moench* standard, a fiduciary's presumption of

2   reasonableness may be overcome where a company's financial situation is seriously deteriorating

3   and there is a genuine risk of insider self-dealing.  62 F.3d at 572; *Wright*, 260 F.3d at 1098.  In

4   this case, plaintiffs have alleged sufficient facts to overcome such a presumption.

5          Plaintiffs allege, among other things, that at the beginning of the class period in early

6   2000 demand for the company's product fell off and orders were cancelled.  ¶ 111.  The company

7   prematurely recorded revenues, ¶ 112; shipped products not ordered or for which orders had been

8   cancelled, ¶ 113; accelerated revenue, ¶¶ 115-16; accumulated excessive inventories, ¶¶ 117-18;

9   overstated goodwill in the E-TEK acquisition, which it had to write off the next year in the

10  amount of $13 billion, ¶¶ 119-22; and failed to disclose material information to participants and

11  the public, ¶¶ 123-32, and the magnitude of JDSU's problems,  ¶¶ 135-37.  In July 2001 the

12  company announced that sales had collapsed, that it had lost $51 billion in the past 12 months

13  and written off $44.8 billion, and that it had laid off 9000 people and would cut 7000 more.

14  ¶¶ 138-39.  Its stock price had fallen from $100 in 2000 to $3 in August 2004.  ¶ 140.

15         In addition, the complaint alleges conflicts of interest affecting at least some of the

16  defendants and corporate insiders.  It alleges, among other things, that at the start of the class

17  period when the stock was at an all time high, insiders possessing inside information concerning

18  the downturn of the company's business, sold over $500 million of stock, ¶¶ 148-49; and that the

19  compensation of high-ranking officers of the company was tied to the price of the stock,  ¶¶144-

20  45.

21         *Lalonde v. Textron, Inc.,* 369 F.3d 1 (1st Cir. 2004), is the most recent appellate decision

22  on the issue presented here.  Plaintiffs, participants in Textron's ESOP plan, claimed that Textron

23  and the Textron executives who administered the plan, breached their fiduciary duty under

24  ERISA by continuing to direct 50% of employee contributions and 100% of employer matching

25  contributions in Textron stock when they knew or had reason to know that Textron faced

26  troubles that were certain to cause a decline in the value of its stock.  The complaint alleged,

27

28                                              -13-

among other things, that Textron artificially inflated the price of its stock by concealing internal

problems that led to lost earnings and a securities action brought by shareholders.   "Despite this

bleak scenario and in dereliction of their duties, plaintiffs say, defendants continued to fund the

Textron stock fund and prohibited the class from diversifying its retirement accounts." *Id.* at 3.

The district court granted the motion to dismiss and the court of appeals reversed.  The court held

that the allegations that Textron artificially inflated its stock price by concealing Textron's

problems and their adverse effect on Textron which are the subject of a securities act lawsuit by

shareholders against Textron and its officers and directors satisfied Federal Rule of Civil

Procedure 8(a) and the notice requirement under *Conley*, 335 U.S. at 47.  With respect to the

application of the *Moench/Kuper/Wright* line of cases, the court said:

> Because the important and complex area of law implicated by plaintiffs' claims is
> neither mature nor uniform . . . we believe that we would run a very high risk of
> error were we to lay down a hard-and-fast rule . . .based only on the statute's text
> and history, the sparse pleadings and the few and discordant judicial decisions
> discussing the issue we face.  Under the circumstances, further record
> development–and particularly input from those with expertise in the arcane area of
> the law where ERISA's ESOP provisions intersect with its fiduciary duty
> requirements–seems to us essential to a reasoned elaboration of that which
> constitutes a breach of fiduciary duty in this context.

*Id.* at 6.

The court's reasoning is persuasive.  Whether on a full development of the record the

evidence will sustain plaintiffs' allegations remains to be seen, but on this motion to dismiss we

must accept the well-pleaded allegations of the complaint as true. Those allegations are sufficient

to state a claim for violation of the prudence requirement.[5]

C.      *Violation of Insider Trading Rules & Loss Causation*

Defendants contend that plaintiffs are unable to show loss causation because their losses

were unavoidable.  They argue that had defendants forced participants to divest JDSU stock,

JDSU would first have had to disclose that the Plan was selling its JDSU stock and the reason for

---

[5]Compare *Calpine*, where the record before the court disclosed that Calpine had steady
revenue and profit, showing that it was a viable concern and not in the sort of deteriorating
financial circumstances that must be pled to rebut the presumption of prudence.

1    doing so.  The value of the stock would immediately have declined in response to that disclosure.

2    Plaintiffs' pleading leaves much to be desired in terms of clarity and organization.  However,

3    their claim appears not to be limited to failure to divest but extends to the making of imprudent

4    investments in the Fund in JDSU stock, as well as failing to eliminate JDSU as an investment

5    vehicle.  ¶ 196.  *In re McKesson HBOC, Inc. ERISA Litigation*, 2002 WL 31431588 (N.D. Cal.),

6    on which defendants rely, supports their position only to the extent that plaintiffs assert a

7    divestment claim.  *Id.* at *6.  But it specifically recognizes a potentially valid claim of breach of

8    fiduciary duties based on allegations that the continued contribution in the form of company

9    stock after the fiduciaries became aware the stock was an imprudent investment.  *Id.* at *8.

10        Moreover, courts generally have rejected the notion that the securities laws immunize

11    ERISA fiduciaries against liability for imprudent investments, including failing to disclose

12    information to participants.  *See, e.g., Enron*, 284 F. Supp. 2d at 565 (stating that "the statutes

13    should be construed to require, as they do, disclosure by . . . plan fiduciaries of [the company's]

14    concealed, material financial status to the investing public generally, including plan participants,

15    whether 'impractical' or not, because continued silence and deceit would only encourage the

16    alleged fraud and increase the extent of injury"); *WorldCom*, 263 F. Supp. 2d at 765-67 (same).

17        Finally the argument that plaintiffs' losses were unavoidable will not support dismissal.

18    It would be premature to determine the measure of damages on a motion to dismiss the

19    complaint, but presumptively, it would be determined with reference to what the value of the

20    Plan would have been had its assets been prudently invested.  *See Harris Trust and Sav. Bank v.*

21    *John Hancock Mut.,* 302 F.3d 18, 34 (2d Cir. 2002).

22    **II.    COUNT II – BREACH OF DUTY TO MONITOR**

23        Plaintiffs allege that JDSU and the Director Defendants failed to monitor the Benefits

24    Committee, the Administrative Committee, and the Individual Defendants, and provide them

25    with accurate information.  ¶¶ 173-74.

26

27

28                                        -15-

1

### A.    OCLI Plan

2    With respect to the OCLI Plan, defendants contend that JDSU was not the employer

3 under the OCLI plan and therefore owed no duty to monitor.  However, plaintiffs allege that the

4 OCLI plan was sponsored and administered by JDSU from February 4, 2001, until the plans were

5 formally merged on July 1, 2001, and that JDSU exercised fiduciary oversight of the plan during

6 that period.  ¶ 16, 41.  Moreover, under the OCLI plan, JDSU became the employer with the sole

7 responsibility to appoint and monitor the Administrative Committee, the plan administrator, and

8 set the parameters of their responsibilities under the plan.  ¶ 76. These allegations are sufficient

9 to state a claim.

10

### B.    Duty to Monitor

11    With respect to both Plans, defendants contend that the claim fails because, first, under

12 the Plan, the fiduciary duties of JDSU and the Director Defendants were limited to appointment

13 of the Benefits Committee and, second, the complaint contains only conclusory allegations which

14 are insufficient.

15    Plaintiffs allege that JDSU, through its Board of Directors, had the authority and

16 discretion to appoint, monitor, and remove officers and employees from their individual fiduciary

17 roles with respect to the Plans.  ¶ 17.  Where, as here, the Directors are alleged to have the power

18 to select and appoint plan fiduciaries, they exercise discretionary authority or discretionary

19 control respecting management of such a plan. 29 C.F.R. § 2509.75-8, D-4; *Batchelor v. Oak Hill*

20 *Med. Group*, 870 F.2d 1446, 1448-49 (9th Cir. 1989); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir.

21 1984).  This duty is, however, limited to the selection and retention of such fiduciaries.  29

22 C.F.R. § 2509.75-8; *Leigh*, 727 F.2d 113, 135 (holding that those responsible for appointing

23 fiduciaries "were not obliged to examine every action taken by [the administrators] but . . . [they]

24 were obliged to take prudent and reasonable action to determine whether the administrators were

25 fulfilling their fiduciary obligations"); *Coyne*, 98 F.3d 1457, 1465-66 (quoting Department of

26 Labor Bulletin, 29 C.F.R. § 2509.75-8 at FR-17, which defines the ongoing responsibility of an

27

28                                                          -16-

1 appointing fiduciary to review the performance of such fiduciaries at reasonable intervals to

2 ensure compliance with the terms of the plan and statutory standards).

3      Count II alleges in substance that Defendants breached their fiduciary duty by failing to

4 provide the Benefits and Administrative Committees with information about JDSU's business

5 problems and ensure that the Committees appreciated the risk of investment by employees in the

6 stock fund. Courts have held that whether a defendant's duty to monitor included the duty to

7 provide information to his appointees requires a fact intensive analysis that is inappropriate at

8 this stage of the proceeding. *In re Syncor Litig.*, 351 F. Supp. 2d 970, 986 (C.D. Cal 2004); *In re*

9 *Electronic Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 671 (E.D. Tex. 2004); *In re Sprint*

10 *Corp. ERISA Litig.*, 2004 WL 1179371 (D. Kan. 2004) (unpublished) (citing 29 C.F.R.

11 § 2509.75-8 at FR-17, and stating that the procedure for monitoring appointees may vary in

12 accordance with the nature of the plan and other facts and circumstances).

13      The allegations, which identify the Directors' power to appoint fiduciaries, suffice to

14 invoke the duty to monitor those appointees and, thus, provide defendants with adequate notice.

15 *See Electronic Data*, 305 F. Supp. 2d at 671 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506,

16 512-14 (2002) (discussing the simplified notice pleading standard under Fed. R. Civ. Proc. 8)).

17 The precise scope of the duty to monitor, including which Directors appointed which fiduciaries,

18 what the resulting duty to monitor entailed, and whether plaintiffs are entitled to relief on this

19 claim, require factual determinations that make the issue inappropriate for dismissal on this

20 motion.

21 **III.     COUNT III – BREACH OF DUTY TO DISCLOSE**

22      *A.     Disclosure Claim*

23      In Count III, plaintiffs allege in substance that defendants breached their fiduciary duty

24 by failing to provide complete and accurate information regarding investment in JDSU stock and

25 by conveying inaccurate information regarding the soundness of JDSU stock and the prudence of

26 investing retirement contributions in it, thus, fundamentally deceiving plaintiffs about the

27

28                           -17-

prudence of making and maintaining investments in JDSU stock.  ¶¶ 179-83.  Defendants, by narrowly interpreting the allegations, contend that the claim fails.  However, at this stage, the allegations are sufficient to implicate ERISA fiduciary duties.

In *Bins v. Exxon Co. USA*, 220 F.3d 1042, 1053 (9th Cir. 2000), the Ninth Circuit held that, absent employee inquiry, an ERISA fiduciary does not have an affirmative duty to volunteer information regarding plan changes or amendments.  However, the court in *Bins* also stated that "we do not question the existence of other 'affirmative' disclosure duties of an employer-fiduciary under circumstances not present here."  220 F.3d 1042, 1053 n.10 (citing *Acosta v. Pacific Enter.*, 950 F.2d 611, 619 (9th Cir. 1991)).  In *Acosta* the Ninth Circuit held that:

> [A]n ERISA fiduciary's duty to disclose information to beneficiaries is not limited to the dissemination of the documents and notices specified in [the Act] but may in some circumstances extend to additional disclosures where the interests of the beneficiaries so require. . . . Thus, an ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits.

950 F.2d at 618-19.  Circumstances that give rise to such an affirmative duty to disclose information to plan participants, as indicated by the cases cited in *Acosta*, include an employer's failure to contribute to a fund as required, or when an ineligible person contributes to a fund and the employer knows that person is ineligible.  *Eddy v. Colonia Life Ins. Co. of Am.*, 919 F.2d 747, 750-51 (D.C. Cir. 1990); *Rosen v. Hotel & Rest. Employees Union*, 637 F.2d 592, 599-600 (3d Cir.), *cert. denied*, 454 U.S. 898 (1981); *Aitken v. IP & GCU-Employer Retirement Fund*, 604 F.2d 1261, 1270 (9th Cir. 1979).  The allegations in this case –that the defendants should have known that investing in JDSU stock was imprudent and that the defendants' failed to inform plan beneficiaries of such imprudent investments– are more similar to the instances of employer prejudice that "threaten the funding of benefits" cited in *Acosta*, than to a business decision to make changes to a plan, as was at issue in *Bins*.  While factual development and further briefing may establish that no affirmative duty to disclose information existed in this case, the Court cannot say at this stage that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  *Conley v. Gibson*, 355 U.S. at 45-46.  The allegations that the

1   fiduciary defendants failed to give complete and accurate information regarding the  investment

2   of plaintiffs' retirement contributions state a claim.

3           Plaintiffs further allege that the defendants breached their duty to inform by

4   misrepresentations in JDSU's SEC filings incorporated by reference in the Plan Prospectus.

5   ¶ 180.  Courts have held that dismissal at this stage is inappropriate where SEC filings are

6   incorporated by reference into documents provided to plan participants.  *In re AEP Litig.*,

7   327 F. Supp. 2d 812, 825 (S.D. Ohio 2004) (citing *Vivien v. Worldcom, Inc.,* 2002 WL 31640557

8   *1, *7 (N.D. Cal.)); *Dynegy*, 309 F. Supp. 2d at 888.  Defendants argue that plaintiffs failed to

9   sufficiently allege that SEC filings were incorporated into plan communications.  However, the

10  federal securities laws require corporations that sponsor a 401(k) plan offering an employer's

11  securities to file a Form S-8 registration statement with the SEC, and Part I of the Form S-8 is the

12  Section 10(a) prospectus that must be disseminated to employees under the Securities Act.  *See*

13  *In re Worldcom, Inc., ERISA Litig.,* 263 F. Supp. 2d 745, 766 n.14 (citing Securities Act, Rule

14  428, 15 U.S.C § 77j; 17 C.F.R.§ 230.428).  The securities laws require other SEC filings to be

15  attached to a Section 10(a) prospectus.  *Id.*  The plaintiffs allege that the Committee Defendants

16  and JDSU are liable for providing prospectuses and other financial information to the plan

17  participants.  Therefore, these defendants are fiduciaries in that regard and have a duty to convey

18  truthful information and not to make material misrepresentations.  *See Mathews v. Chevron*

19  *Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004).  Plaintiffs have sufficiently pleaded this count.[6]

20          B.      Plan-wide Relief

21          Defendants argue further that this claim fails because ERISA § 502(a)(2) limits standing

22

23          [6]Plaintiffs also allege that statements in the media also included misrepresentations or

24  omitted material information.  Defendants argue that such statements are not actionable because
    they were not made by fiduciaries in their fiduciary capacity to plan participants.  The

25  defendants' argument has merit.  The statements made in press releases were made in the context

26  of discussing JDSU's long-term prospects.  The Supreme Court has rejected the idea that a
    defendant acts as a fiduciary merely because it makes statements about its expected financial

27  condition.  *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996).

28                                                  -19-

1   to recover money damages to the plan. 29 U.S.C. § 1132(a)(2).  This claim, they contend, seeks

2   recovery for individual losses and thus requires proof of individual reliance which has not been

3   alleged.

4            The complaint seeks relief under §§ 502(a)(2) and 409.  29 U.S.C. §§ 1132(a)(2), 1109.

5   ¶ 185.  It asks to have defendants "restore the losses to the Plan caused by their breaches of

6   fiduciary duties alleged in this Count." *See also* Prayer for Relief, ¶ C, seeking an order "to make

7   good to the Plans all losses to the Plans resulting from the Defendants' breaches of their fiduciary

8   duties."  Plaintiffs also seek to have the losses to the Plans allocated among participants'

9   individual accounts in proportion to their accounts' losses, ¶ G, but this is an accounting

10  adjustment that does not alter the fact that the relief sought is plan-wide.

11           Defendants insist that the claims, rather than being for plan-wide relief, are for recovery

12  of individual losses.   They rely principally on *Schering-Plough Corp. ERISA Litigation*, 2004

13  WL 1774760 (D.N.J.), in which the court dismissed a complaint in many respects similar to

14  plaintiffs' here.  However, the court found a "critical distinction" between the pleading before it

15  and other cases finding such pleadings sufficient based on the fact that Schering-Plough did not

16  make contributions to the plan in the form of company stock, stating that "the only contributions

17  were those made by employees, which remained in individual accounts and never become assets

18  of the . . . Plan." Id. at *7.  Here, plaintiffs allege that matching employer contributions to the

19  Plan, in addition to employee contributions, were invested in JDSU stock.[7]  Therefore, all Plan

20  participants were affected, and the relief sought is plan-wide.  *See In re Syncor ERISA Litig.*, 351

21  F. Supp. 2d 970, 990 (C.D. Cal. 2004) (holding that plaintiffs sought relief for entire plan, not

22  just individual losses, stating "[h]ere, the company did invest in company stock in the form of

23

24  ──────────────

25       [7]Plaintiffs allege that, during the relevant time period, they all held JDSU stock.  They
    further allege that the plan provided for employer matching contributions, and that those
26  matching contributions were invested in the same manner as the participants directed their own
    contributions to be invested.  The SPD indicates that as of September 1, 2001, only employer
27  matching contributions could be invested in company stock.

28                                              -20-

matching contributions. Therefore, all plan participants were impacted by Syncor stock").[8]

Defendants' further argument that reliance is an essential element of the claim rests on confusion between individual claims under § 502(a)(1)(B) for benefits due a participant and claims under § 502(a)(2) for relief under § 409 (i.e., for losses to the plan). *See Roth v. Sawyer-Cleator Lumber Co.,* 16 F.3d 915, 920 n.4 (8th Cir. 1994) (stating that "a breach of fiduciary duty claim puts money back in the plan"). The cases cited by defendants are not on point because they do not involve claims under § 502(a)(2). Rather, the cited cases involve claims seeking individual benefits or injunctive relief under § 502(a)(1) or § 502(a)(3), or turn on class certification issues. *See, e.g., Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365 (3d Cir. 2003); *In re Unisys Corp. Retiree Med. Benefits Litig.,* 2003 WL 252106 *1 (E.D. Pa. Feb. 4, 2003). Plaintiffs argue that they need not show detrimental reliance or, if they do, that it is presumed in this case because once plaintiffs have established a breach of fiduciary duty and a loss to the plan, the burden shifts to the defendants to prove that the loss was not caused by the breach of duty. *See Roth,* 16 F.3d at 917.

Defendants argue that because each individual plaintiff exercised authority over whether to invest in JDSU stock, individual reliance must be shown. However, given that all plaintiffs are alleged to have held JDSU stock and that defendants owed the same fiduciary duty to all plan participants –and allegedly breached that duty through plan-wide communications– the court declines to dismiss this claim at this stage. Plaintiffs allege that where a breach of duty includes misrepresentations and omissions material to a decision by plan participants, which results in harm to the participants, the participants are presumed to have relied on such misrepresentations or omissions to their detriment. ¶ 182. Other courts, have found such allegations adequate to prevent dismissal at this stage. *See, e.g., AEP,* 327 F. Supp. 2d at 833 (noting that other courts have found such allegations sufficient to prevent dismissal even under heightened pleading

---

[8]Additionally, according to Department of Labor regulations, contributions to an ERISA plan are assets of the plan, not assets of the employer or the individual participants. 29 C.F.R. 2510.3-102(a).

1    requirements).  Again, whether factual development of the claim and further briefing will support

2    plaintiffs' claim remains to be seen, but Plaintiffs' allegations are sufficient to state a claim.

3    **IV.    CO-FIDUCIARY LIABILITY**

4            In Counts I, II and III, plaintiffs allege co-fiduciary liability against all the defendants.

5    ERISA § 405(a) provides the statutory basis for co-fiduciary liability as follows:

6            In addition to any liability which he [or she] may have under any other provisions
        of this part, a fiduciary with respect to a plan shall be liable for a breach of
7        fiduciary responsibility of another fiduciary with respect to the same plan in the
        following circumstances:
8
        (1) if he [or she] participates knowingly in, or knowingly undertakes to conceal,
9        an act or omission of such other fiduciary, knowing such act or omission is a
        breach;
10        (2) if, by his [or her] failure to comply with section 1104(a)(1) of this title in the
        administration of his [or her] specific responsibilities which give rise to his [or
11        her] status as a fiduciary, he [or she] has enabled such other fiduciary to commit a
        breach; or
12        (3) if he [or she] has knowledge of a breach by such other fiduciary, unless he [or
        she] makes reasonable efforts under the circumstances to remedy the breach.
13
14    29 U.S.C. §1105(a).

15            Because ERISA fiduciary status is a prerequisite to a finding of co-fiduciary liability, *see*

16    *id.*, plaintiffs' failure to sufficiently allege the fiduciary status of the Director Defendants and the

17    Individual Defendants causes the claims against those defendants based on co-fiduciary liability

18    to fail as well.  *See Calpine*, at 12.  However, as to Counts I and III, plaintiffs have successfully

19    stated a claim for breach of fiduciary duty under ERISA against JDSU and the Committee

20    Defendants; and as to Count II, plaintiffs have successfully stated a claim against JDSU and the

21    Director Defendants.  Therefore, because the court declines to dismiss the claims against these

22    defendants on these counts, the court also declines to dismiss the accompanying co-fiduciary

23    claims at this juncture.  *In re AEP*, 327 F. Supp. 2d at 833; *CMS Energy*, 312 F. Supp. 2d at 916-

24    17.

25    **V.     COUNT IV – BREACH OF DUTY TO AVOID CONFLICTS**

26            As discussed, Count IV alleges breach of the duty to avoid conflicts.  Count IV appears to

27

28                                                    -22-

1    allege a general breach of duty against all defendants for failure to notify participants and

2    agencies that JDSU was an unsuitable investment.  However, the caption and much of the text

3    indicates that the count alleges a specific breach of duty against "certain defendants" by failing to

4    act in the best interest of participants when the defendants sold their shares.  While plaintiffs do

5    not identify these defendants in Count IV, they assert in their brief that the individuals are

6    identified in ¶¶ 148-49 of the complaint. Only one of the fourteen individuals mentioned in those

7    paragraphs – Jozef Straus – is named as a defendant in this case.  This count is not well pleaded

8    and must be dismissed for failing to give adequate notice regarding what duties were allegedly

9    breached and which defendants allegedly breached those duties. *Conley*, 355 U.S. at 47.

10   **VI.    MOTION FOR STAY**

11          Defendants have moved for a stay of this action pending resolution of the JDSU securities

12   litigation.  The motion is not well taken.  The respective plaintiffs' classes are disparate, both in

13   terms of membership and the class periods.  Moreover, the issues raised by the two actions are

14   distinctly different.  Although there is some overlap in the corporate fraud allegations, the

15   dispositive issues in this action turn on alleged breaches of fiduciary duties under ERISA while

16   the issues in the securities litigation turn on alleged violations of the securities acts.

17                                         **CONCLUSION**

18          For the reasons stated, the Court:

19          **1.**    **GRANTS** defendants' motion to dismiss Count I as to the Director Defendants

20   and the Individual Defendants, but not as to JDSU or the Committee Defendants;

21          **2.**    **DENIES** defendants' motion to dismiss Count II;

22          **3.**    **GRANTS** defendants' motion to dismiss Count III as to the Director Defendants

23   and the Individual Defendants, but not as to JDSU or the Committee Defendants;

24          **4.**    **GRANTS** defendants' motion to dismiss Count IV;

25          **5.**    **GRANTS** defendants' motion to dismiss the co-fiduciary claims in Counts I and

26   III as to the Director Defendants and the Individual Defendants, but not the claims in Counts I

27

28                                            -23-

1   and III as to JDSU and the Committee Defendants, or the claim in Count II as to JDSU and the

2   Director Defendants; and

3      **6**.      **DENIES** the motion to stay.

4      Defendants shall have twenty days to file an amended complaint.

5      Counsel are advised that this ruling is on the sufficiency of the pleadings and is not to be

6   taken as a determination of the merits of any of the claims.

7   **SO ORDERED.**

8

9   DATED:  July 13, 2005                    _____

10                                              WILLIAM W. SCHWARZER
                                              SENIOR UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          -24-