# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re JDS Uniphase Corporation ERISA
Litigation

This Document Relates To:  All Actions

Master File No. C 03-04743 CW

Judge:  Hon. Claudia Wilken

**SETTLEMENT AGREEMENT AND RELEASE**

1    This Settlement Agreement and Release ("Settlement Agreement") is entered into by and

2    among:  (1) Named Plaintiffs, for themselves and on behalf of the Settlement Class; and (2)

3    Defendants.

4    WHEREAS, Named Plaintiffs commenced this action asserting various claims for relief

5    under the Employee Retirement Income Security Act of 1974 against Defendants;

6    WHEREAS, from the inception of this action, Defendants have contended and continue to

7    contend that Named Plaintiffs' allegations are meritless and that Named Plaintiffs' claims are

8    baseless and subject to numerous legal and factual defenses;

9    WHEREAS, the Parties desire to promptly and fully resolve and settle with finality this

10   action;

11   NOW, THEREFORE, the Parties, in consideration of the promises, covenants, and

12   agreements herein described, and for other good and valuable consideration, acknowledged by

13   each of them to be satisfactory and adequate, and intending to be legally bound, do hereby

14   mutually agree as follows:

15   **1.    DEFINITIONS**

16   As used in the Settlement Agreement, capitalized terms and phrases not otherwise defined

17   have the meanings provided below:

18   1.1    "Affiliate" means, with respect to a Person, any entity which owns or controls, is

19   owned or controlled by, or is under common ownership or control with that Person.

20   1.2    "Agreement Execution Date" has the meaning set forth in Section 11.14.

21   1.3    "Case Contribution Award" means the monetary award for which Named

22   Plaintiffs apply to the District Court in recognition of their assistance in the prosecution of this

23   action.

24   1.4    "Class Counsel" means:  (i) Barroway Topaz Kessler Meltzer & Check LLP, 280

25   King of Prussia Road, Radnor, PA 19087, and (ii) Izard Nobel LLP, 29 South Main Street, Suite

26   215, West Hartford, CT 06103.

27   1.5    "Class Notice" means the forms of notice attached hereto as Exhibit 2.

28

SETTLEMENT AGREEMENT AND RELEASE                                                        1
MASTER FILE NO. C-03-4743 CW
sf-2618159

1    1.6    "Class Period" means the period between February 4, 2000, and September 30,

2    2006, inclusive.

3    1.7    "Class Settlement Amount" means the sum of $3,000,000.00 (three million

4    dollars).

5    1.8    "Defendants" means JDSU, the JDSU Benefits Committee, the OCLI

6    Administrative Committee, Jennifer Bernauer, Craig Collins, Bruce Day, Robert Enos, Rick

7    Fieber, Steve Fife, Peter Guglielmi, Gary Hochman, Martin Kaplan, Mike Kasper, Angela Kupps,

8    Kevin Kennedy, Donald J. Listwin, Marie Lynch, John MacNaughton, Steve Moore, Tom Moser,

9    Holly Neal, Andrew Pollack, Dena Regan, Garry Ronco, Jeff Ryan, Jill Sanford, Donald Scifres,

10   Wendy Serrano, Wilson Sibbett, William J. Sinclair, Casimir Skrzypczak, Jozef Straus, and Lori

11   Zaret.

12   1.9    "Defendants' Insurer" means Chubb Insurance Company of Canada.

13   1.10   "Defendants' Released Claims" means any and all claims and causes of action

14   relating to the institution or prosecution of this action or relating to the settlement of any of

15   Plaintiffs' Released Claims.

16   1.11   "Defendants' Released Persons" means Named Plaintiffs, the Settlement Class,

17   Class Counsel, and their appointed representatives.

18   1.12   "District Court" means the United States District Court for the Northern District of

19   California, Oakland Division.

20   1.13   "Effective Date" means the date on which the Final Judgment becomes Final (as

21   defined in Section 1.18 below).

22   1.14   "ERISA" means the Employee Retirement Income Security Act of 1974, as

23   amended, and all regulations promulgated thereunder.

24   1.15   "Escrow Account" has the meaning set forth in Section 7.1 and all subparts

25   thereof.

26   1.16   "Escrow Agent" has the meaning set forth in Section 7.1.1.

27   1.17   "Fairness Hearing" has the meaning set forth in Section 2.1.5.

28

SETTLEMENT AGREEMENT AND RELEASE                                                    2
MASTER FILE NO. C-03-4743 CW
sf-2618159

1       1.18    "Final" means, with respect to any judicial ruling or order, that: (1) if no appeal,

2   motion for reargument, motion for rehearing, petition for writ of certiorari or other writ has been

3   filed, the time has expired to file such an appeal, motion for reargument, motion for rehearing,

4   petition for a writ of certiorari or other writ; or (2) if an appeal, motion for reargument, motion for

5   rehearing, petition for a writ of certiorari or other writ has been filed, the judicial ruling or order

6   has been affirmed with no further right of review, or such appeal, motion, petition, or writ has

7   been denied or dismissed with no further right of review.

8       1.19    "Final Judgment" means a judgment substantially in the form attached hereto as

9   Exhibit 3.

10      1.20    "Former Defendant" means any defendant previously named in this action who is

11  no longer a Party, including any defendant named in an action that has been consolidated into this

12  action.

13      1.21    "JDSU" or the "Company" means JDS Uniphase Corporation.

14      1.22    "Lawsuit" means *In re JDS Uniphase ERISA Litigation,* Master File No. 03-04743

15  CW (N.D. Cal.).

16      1.23    "Mediator" means the Honorable Daniel Weinstein (retired).

17      1.24    "Named Plaintiffs" means plaintiffs Eric Jason Carey, Douglas A. Pettit, and Alice

18  Hodges-Toby.

19      1.25    "Parties" means Named Plaintiffs and Defendants.

20      1.26    "Person" means an individual, partnership, corporation, government entity, or any

21  other form of entity or organization.

22      1.27    "Plaintiffs' Released Claims" means, except for the exclusion noted later in this

23  paragraph, any and all claims and causes of action that: (1) were brought or could have been

24  brought in either an individual or representative capacity against Defendants in the Lawsuit; (2)

25  arise out of the Lawsuit or are based on any of the same facts, circumstances, situations,

26  transactions, occurrences, or allegations as the Lawsuit; and/or (3) were or could have been

27  asserted under ERISA based on or relating to investment in JDSU securities or any fund created

28  to invest in JDSU securities by or through the Plans during the Class Period. "Plaintiffs'

1    Released Claims" do not include any claims arising under the federal or state securities laws

2    involving the purchase or sale of any JDSU securities.

3       1.28    "Plaintiffs' Released Persons" means: (i) all Defendants and Former Defendants;

4    (ii) all family members, heirs, executors, trustees, personal representatives, estates or

5    administrators, attorneys, counselors, insurers, reinsurers, financial or investment advisors, dealer

6    managers, consultants, accountants, investment bankers, commercial bankers, engineers, advisors,

7    or agents of any Defendant or Former Defendant who is a natural person; and (iii) all current and

8    former officers, directors, employees, parents, affiliates, partners, subsidiaries, predecessors,

9    successors or assigns, past or present officers, directors, associates, controlling persons,

10    representatives, employees, attorneys, counselors, insurers, reinsurers, financial or investment

11    advisors, dealer managers, consultants, accountants, investment bankers, commercial bankers,

12    engineers, advisors, or agents of JDSU.

13       1.29    "Plans" means the JDSU Employee 401(k) Retirement Plan (the "JDSU Plan") and

14    the Optical Coating Laboratories Incorporated Employee 401(k) Retirement Plan (the "OCLI

15    Plan"), including any predecessor or successor plans, individually and collectively, and any trust

16    created under such Plans.

17       1.30    "Plan of Allocation" means the document summarizing the plan for distribution to

18    the Settlement Class of the Net Proceeds of the Settlement.

19       1.31    "Preliminary Approval Order" has the meaning set forth in Section 2.1.1 and shall

20    be substantially in the form attached hereto as Exhibit 1.

21       1.32    "Preliminary Motion" has the meaning set forth in Section 2.1.1.

22       1.33    "Settlement" means the settlement to be consummated under the Settlement

23    Agreement.

24       1.34    "Settlement Class" means all Persons, who were participants in or beneficiaries of

25    the JDSU Plan or the OCLI Plan at any time between February 4, 2000, and September 30, 2006,

26    inclusive, and whose accounts included investments in JDSU common stock or a fund created to

27    invest in JDSU common stock.

28       1.35    "Settlement Fund" has the meaning set forth in Section 7.1 and all subparts thereof

2.  **CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

The Settlement is contingent on the conditions set forth in Sections 2.1 through 2.4 (subparts included):

2.1     Condition No. 1: District Court Approval. The Settlement must be approved by the District Court in accordance with the following steps:

2.1.1   Motion for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice. The Parties will, in good faith, use their best efforts to enable Named Plaintiffs to file a motion ("Preliminary Motion") with the District Court within thirty (30) days of the Agreement Execution Date. The Preliminary Motion shall seek an order substantially in the form attached hereto as Exhibit 1 ("Preliminary Approval Order"). The Parties shall, in good faith, take reasonable steps to secure expeditious entry by the District Court of the Preliminary Approval Order and shall request that the District Court schedule a Fairness Hearing (described in Subsection 2.1.5) approximately sixty (60) days after the mailing of the Class Notice described in Subsection 2.1.4.

2.1.2   Class Certification. In connection with the proceedings on preliminary and final approval of the proposed Settlement, Named Plaintiffs shall, through Class Counsel, seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), and Defendants shall consent to such certification of the Settlement Class for purposes of this Settlement only.

2.1.3   Entry of Preliminary Approval Order. The District Court shall enter a Preliminary Approval Order substantially in the form attached hereto as Exhibit 1.

2.1.4   Issuance of Class Notice. Pursuant to the Preliminary Approval Order to be entered by the District Court, Class Counsel shall cause the Class Notice to be disseminated to the Settlement Class, substantially in the form attached hereto as Exhibit 2.

2.1.5   Fairness Hearing. In connection with the Preliminary Motion, the Parties shall request that the District Court schedule and conduct a hearing at which it will consider

1   whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules

2   of Civil Procedure ("Fairness Hearing").  Specifically, Named Plaintiffs shall request that the

3   District Court determine, on or after the Fairness Hearing:  (i) whether to enter Final Judgment,

4   substantially in the form attached hereto as Exhibit 3, granting final approval of the Settlement

5   and dismissing with prejudice this action; (ii) whether the distribution of the Class Settlement

6   Amount as provided in the Plan of Allocation should be approved or modified; (iii) what legal

7   fees, compensation, and expenses should be awarded to Class Counsel as contemplated by Article

8   10 of the Settlement Agreement; and (iv) what amount of Case Contribution Award, if any,

9   should be awarded to Named Plaintiffs.  The Parties agree to support entry of Final Judgment.

10  Defendants shall not take any position with respect to the matters described in clauses (ii), (iii), or

11  (iv) of this Paragraph 2.1.4, so long as disposition of those matters is substantially in accordance

12  with the provisions of Articles 8 and 10 of the Settlement Agreement.  The Parties otherwise

13  covenant and agree that they will reasonably cooperate with one another in seeking entry of Final

14  Judgment.

15          2.2     Condition No. 2:  Funding of Class Settlement Amount.  Defendants must cause

16  the funds specified in Section 1.7 of the Settlement Agreement to be deposited into the Settlement

17  Fund in accordance with Section 7.2 of Settlement Agreement.

18          2.3     Condition No. 3:  Finality of Final Judgment.  The Final Judgment must be Final

19  in accordance with Section 1.18 above.

20          2.4     Condition No. 4:  Independent Fiduciary.  The appropriate fiduciaries of the JDSU

21  Plan will act promptly after entry of the Preliminary Approval Order to retain an independent

22  fiduciary who will evaluate the Settlement.  Subject to Defendants' right to waive this

23  contingency, the Settlement will be contingent upon such independent fiduciary: (i) approving

24  the Settlement and giving a release in its capacity as a fiduciary of the JDSU Plan and for and on

25  behalf of the JDSU Plan that is coextensive with the Releases set forth in Sections 3.1 and 3.3 of

26  the Settlement Agreement; (ii) authorizing the Settlement in accordance with Prohibited

27  Transaction Class Exemption 2003-39; or (iii) finding that the Settlement does not constitute a

28  prohibited transaction under ERISA Section 406(a).  Defendants shall determine in their sole

SETTLEMENT AGREEMENT AND RELEASE                                                                    6
MASTER FILE NO. C-03-4743 CW
sf-2618159

1   discretion whether the Settlement Agreement shall be subject to any or all of the contingencies

2   identified in clauses (i), (ii), and (iii). Unless the contingencies described in this Subsection 2.4

3   are waived by Defendants, the JDSU Plan's fiduciaries shall move promptly to seek such

4   approval, authorization, or finding. The Parties agree that the JDSU Plan may retain Fiduciary

5   Counselors, Inc. as the independent fiduciary to evaluate the Settlement. If Fiduciary Counselors

6   is unavailable or if the appropriate fiduciaries of the JDSU Plan determine to retain a different

7   independent fiduciary, then the selection of the independent fiduciary shall be subject to Class

8   Counsel's express approval, which shall not be unreasonably withheld. All Parties shall

9   cooperate in providing information to the independent fiduciary, as may be requested. In no

10   event shall any fees or expenses of the independent fiduciary be chargeable to the Settlement

11   Fund, Named Plaintiffs, Class Counsel, or the Settlement Class or any member thereof (excluding

12   Defendants). Defendants shall notify Class Counsel no later than fourteen (14) days prior to the

13   Fairness Hearing whether the independent fiduciary has provided the requisite approval,

14   authorization, or finding, or whether they have elected to waive the contingencies identified in

15   this Condition No. 4. If Defendants waive the contingencies identified in this Condition No. 4,

16   then the Settlement shall become Final if all other conditions in this Article 2 are satisfied.

17   **3.   RELEASES**

18       3.1   Releases by Named Plaintiffs, the Settlement Class, and the Plans. Upon the

19   Effective Date, Named Plaintiffs (and their heirs and successors) shall and hereby do

20   conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge, and the

21   Plans and the Settlement Class shall, by operation of the Final Judgment, be deemed to have

22   conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the

23   Plaintiffs' Released Persons from all Plaintiffs' Released Claims. If asked by Defendants, Named

24   Plaintiffs and Class Counsel shall cooperate, to the extent reasonably feasible, with Defendants in

25   obtaining reasonable assurance from the Department of Labor that the Department of Labor does

26   not plan to bring any administrative or judicial proceedings against Defendants related to this

27   action.

28

1    3.2    Defendants' Releases. Upon the Effective Date, Defendants (and their heirs and

2    successors) shall and hereby do conclusively, absolutely, unconditionally, irrevocably, and

3    forever release and discharge the Defendants' Released Persons from any and all Defendants'

4    Released Claims.

5    3.3    Scope of Releases.

6    3.3.1    Nothing in this Settlement shall release, bar, waive, or preclude any claim

7    that has been or could be asserted directly or derivatively by any member of the proposed

8    Settlement Class or the Plans under the federal securities laws or the securities laws of any state

9    involving the purchase or sale of any JDSU securities. Nothing in this Settlement Agreement

10    shall revive any claim that has extinguished, released, or otherwise barred by operation of a

11    judgment or settlement in another action. Defendants reserve their right to object to or to

12    challenge any claim that has been or could be asserted pursuant to this paragraph on any ground.

13    3.3.2    The releases set forth in Sections 3.1 and 3.2 are not intended to include the

14    release of any rights or duties of the Parties arising out of the Settlement Agreement, including

15    the express warranties and covenants contained herein.

16    3.3.3    The following hereby expressly waive any and all rights and benefits

17    respectively conferred upon them by the provisions of Section 1542 of the California Civil Code

18    and all similar provisions of the statutory or common laws of any other State, Territory, or other

19    jurisdiction, except as limited in Sections 3.3.1 and 3.3.2:  (a) Named Plaintiffs, on their own

20    behalf and on behalf of all members of the Settlement Class; (b) the Plans (with approval of the

21    independent fiduciary, subject to Section 2.4); and (3) Defendants.  Section 1542 reads in

22    pertinent part:

23        A general release does not extend to claims that the creditor does
          not know or suspect to exist in his or her favor at the time of
24        executing the release, which if known by him or her must have
          materially affected his or her settlement with the debtor.
25

26    Named Plaintiffs, on their own behalf and on behalf of all members of the Settlement Class and

27    the Plans, and Defendants hereby acknowledge that the foregoing waiver of the provisions of

28    Section 1542 of the California Civil Code and all similar provisions of the statutory or common

SETTLEMENT AGREEMENT AND RELEASE                                                          8
MASTER FILE NO. C-03-4743 CW
sf-2618159

1  law of any other State, Territory, or other jurisdiction is a material term of this Agreement that

2  was bargained for, and without which, this Settlement would not have been entered into.

3  **4.**    **COVENANTS**

4       The Parties covenant and agree as follows:

5       4.1   Covenants not to sue.

6           4.1.1   Named Plaintiffs and the Settlement Class covenant and agree: (i) not to

7  file any claim released under Section 3.1 against any of Plaintiffs' Released Persons or the Plans;

8  and (ii) that the foregoing covenant and agreement shall be a complete defense to any such claims

9  against any of Plaintiffs' Released Persons.

10          4.1.2   Defendants covenant and agree: (i) not to file any claim released under

11  Section 3.2 against any of Defendants' Released Persons or the Plans or any other Defendant; and

12  (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims

13  against any of Defendants' Released Persons, the Plans, or any Defendant.

14       4.2   Taxation of Class Settlement Amount.  Named Plaintiffs acknowledge on their

15  own behalf and on behalf of the Settlement Class that the Plaintiffs' Released Persons have no

16  responsibility for any taxes due on funds once deposited in the Settlement Fund or on funds that

17  Class Counsel receive from the Class Settlement Amount, should any be awarded pursuant to

18  Article 10 of the Settlement Agreement.  Nothing herein shall constitute an admission or

19  representation that any taxes will or will not be due on the Class Settlement Amount.  JDSU shall

20  use its reasonable best efforts to cause the JDSU Plan's trustee to treat the amounts allocated

21  pursuant to the Plan of Allocation as restorative payments consistent with Revenue Ruling 2002-

22  45.

23       4.3   Cooperation.  JDSU shall use its reasonable best efforts to: (i) provide Class

24  Counsel, in electronic format, within thirty (30) days of the Agreement Execution Date, the

25  names and last known addresses of the members of the Settlement Class; and (2) timely respond

26  to any reasonable written requests for accessible data in the past or present custody or control of

27  trustees/record keepers of JDSU or the JDSU Plan necessary to effectuate notice and implement,

28  enforce or determine the administrability of the Plan of Allocation.  No charge against the Escrow

SETTLEMENT AGREEMENT AND RELEASE          9
MASTER FILE NO. C-03-4743 CW
sf-2618159

1  Account, Settlement Fund, Named Plaintiffs, or Class Counsel shall be made by the

2  trustees/record keepers of JDSU or the JDSU Plan, directly or indirectly, for the gathering or the

3  provision of such information.  Further, the Parties agree to cooperate with the goal of obtaining

4  entry of a Final Judgment as quickly as is reasonably practicable, including, but not limited to, the

5  expeditious preparation and execution of all documents necessary to achieve final approval of the

6  Settlement by the District Court.

7  **5.    REPRESENTATIONS AND WARRANTIES**

8          5.1    Named Plaintiffs' Representations and Warranties.

9                 5.1.1    Named Plaintiffs represent and warrant that they have not assigned or

10  otherwise transferred any interest in any of Plaintiffs' Released Claims against any of Plaintiffs'

11  Released Persons, and further covenant that they will not assign or otherwise transfer any interest

12  in any of Plaintiffs' Released Claims.

13                 5.1.2    Pursuant to Articles 3 and 4, Named Plaintiffs represent and warrant that

14  they shall have no surviving claim or cause of action against any of Plaintiffs' Released Persons

15  or against the Plans with respect to any of Plaintiffs' Released Claims.

16          5.2    The Parties' Representations and Warranties.  The Parties, and each of them on

17  his, her, its own behalf only, represent and warrant:

18                 5.2.1    That they are voluntarily entering into the Settlement Agreement as a result

19  of arm's-length negotiations among their counsel, with the assistance of the Mediator; that in

20  executing the Settlement Agreement they are relying solely upon their own judgment, belief and

21  knowledge, and the advice and recommendations of their own independently selected counsel,

22  concerning the nature, extent and duration of their rights and claims hereunder and regarding all

23  matters which relate in any way to the subject matter hereof; and that, except as provided herein,

24  they have not been influenced to any extent whatsoever in executing the Settlement Agreement

25  by representations, statements, or omissions pertaining to any of the foregoing matters by any

26  Party or by any Person representing any party to the Settlement Agreement.  Each of the Parties

27  assumes the risk of mistake as to facts or law.

28

SETTLEMENT AGREEMENT AND RELEASE                                                    10
MASTER FILE No. C-03-4743 CW
sf-2618159

1      5.2.2   That they have carefully read the contents of the Settlement Agreement,

2   and that the Settlement Agreement is signed freely by each Person executing the Settlement

3   Agreement on behalf of each of the Parties.  The Parties, and each of them, further represent and

4   warrant to each other that he, she, or it has made such investigation of the facts pertaining to the

5   Settlement, the Settlement Agreement and all of the matters pertaining thereto, as he, she, or it

6   deems necessary.

7      5.3   Signatories' Representations and Warranties.  Each individual executing the

8   Settlement Agreement on behalf of any other Person does hereby personally represent and

9   warrant to the other Parties that he or she has the authority to execute the Settlement Agreement

10   on behalf of, and fully bind, each principal whom such individual represents or purports to

11   represent.

12   **6.   NO ADMISSION OF LIABILITY**

13      The Parties understand and agree that the Settlement Agreement embodies a compromise

14   settlement of disputed claims, and that nothing in the Settlement Agreement, including the

15   furnishing of consideration for the Settlement Agreement, shall be deemed to constitute any

16   finding of fiduciary status under ERISA or wrongdoing by any of the Defendants, or give rise to

17   any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or

18   liability in the action or any other proceeding.  The Settlement Agreement and the payments made

19   hereunder are made in compromise of disputed claims and are not admissions of any liability or

20   wrongdoing of any kind, whether legal or factual, and no Party shall assert or suggest otherwise.

21   Moreover, Defendants specifically deny any such liability or wrongdoing.  Neither the fact nor

22   the terms of the Settlement Agreement shall be offered or received in evidence, or otherwise

23   introduced for any purpose in any action or proceeding, for any purpose, except:  (i) in an action

24   or proceeding arising under the Settlement Agreement or arising out of or relating to the

25   Preliminary Approval Order or the Final Judgment; or (ii) in an action or proceeding where the

26   releases or covenants not to sue provided pursuant to the Settlement Agreement may serve as a

27   bar to recovery.

28

SETTLEMENT AGREEMENT AND RELEASE                                             11
MASTER FILE NO. C-03-4743 CW
sf-2618159

**7.    THE CLASS ESCROW ACCOUNT, SETTLEMENT FUND, AND DEPOSITS INTO THE SETTLEMENT FUND**

7.1     The Escrow Account, Escrow Agent, and Settlement Fund.

7.1.1    Not later than five (5) business days after entry of the Preliminary Approval Order, Class Counsel shall establish at a federally-insured financial institution ("Escrow Agent") an Escrow Account (the "Escrow Account") for the purpose of holding funds (the "Settlement Fund") to be deposited into the Escrow Account.  Class Counsel's selection of the financial institution to act as the Escrow Agent shall be subject to the approval of Defendants' Insurer, which shall not be unreasonably withheld.  The Escrow Account shall be governed by an Escrow Agreement in a form to be approved by Defendants' Insurer, which shall not be unreasonably withheld.  Defendants' Insurer shall be a party to the Escrow Agreement.  The monies in the Settlement Fund shall be considered a common fund created as a result of the action.

7.1.2    The Settlement Fund shall include and retain all interest and other earnings arising therefrom, for the benefit of the Settlement Class, pending final distribution to the Settlement Class pursuant to the Plan of Allocation.  The Settlement Fund shall be invested only in United States Treasury Bills or other comparable risk-free investments.

7.1.2.1  Class Counsel or the Escrow Agent shall structure and manage the Settlement Fund to qualify as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder.  It is intended that the Settlement Fund be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans.  The Parties shall not take a position in any filing or before any tax authority inconsistent with such treatment.

7.1.2.2  All taxes on the income of the Settlement Fund, all tax-related expenses incurred in connection with the taxation of the Settlement Fund, and all other reasonable costs of settlement administration, including the establishment and maintenance of the Escrow Account, shall be paid out of the Settlement Fund subject to the requirements of Section 8 herein.  Except as provided in Section 8.2, all reasonable costs or expenses incurred by Class Counsel, the

1  Escrow Agent, or any third party retained by Class Counsel with respect to the Settlement or

2  implementation of the Plan of Allocation shall be paid from the Settlement Fund after the

3  Effective Date and (if separate) an order approving Class Counsel's application for fees and

4  expenses. The provisions of Section 8.2 governing disbursements before the Effective Date shall

5  not be construed as a limitation on the total costs and expenses to be paid out of the Settlement

6  Fund after the Effective Date, regardless of when incurred.

7    7.1.2.3 Class Counsel may instruct the Escrow Agent to reserve any

8  portion of the Settlement Fund for the purpose of satisfying future or contingent expenses or

9  obligations, including expenses of Settlement Fund administration or any disbursement provided

10  for in Article 8 of the Settlement Agreement. Defendants shall take no position, directly or

11  indirectly, with respect to such matters.

12    7.1.3 Except as provided in Article 10, no monies shall be paid to Class Counsel

13  from the Settlement Fund. Except as provided in Articles 8 and 10, no monies shall be paid to the

14  Named Plaintiffs from the Settlement Fund.

15    7.1.4 Except as set forth in the Escrow Agreement, the Parties acknowledge and

16  agree that Defendants and Defendants' Insurer shall have no authority, control, or liability in

17  connection with the design, management, administration, investment, maintenance, or control of

18  the Settlement Fund, for any expenses the Settlement Fund may incur, or for any taxes that may

19  be payable by the Settlement Fund or any distributee therefrom. Defendants and Defendants'

20  counsel shall not charge any fees or expenses to the Escrow Account or Settlement Fund,

21  including fees or expenses relating to implementation of the Plan of Allocation and incurred by

22  Defendants, the JDSU Plan, or any third party retained by the Plan or Defendants.

23    7.2  The Class Settlement Amount. Following entry of the Preliminary Approval

24  Order, and in consideration of, and expressly in exchange for, all of the promises and agreements

25  set forth in the Settlement Agreement, Defendants shall cause the Class Settlement Amount to be

26  deposited into the Escrow Account via wire transfer. Such transfer shall be made within ten (10)

27  business days after Class Counsel provides written notice to Defendants and Defendants' Insurer

28

SETTLEMENT AGREEMENT AND RELEASE                    13
MASTER FILE NO. C-03-4743 CW
sf-2618159

1   of (1) entry of the Preliminary Approval Order and (2) all information reasonably necessary to

2   fund the Settlement and make the wire transfer.

3       7.3    Sole Monetary Contribution. The Class Settlement Amount shall be the full and

4   sole monetary obligation of Defendants in connection with the Settlement effected between

5   Named Plaintiffs, the Plans, and the Settlement Class, on the one hand, and Defendants, on the

6   other hand, under the Settlement Agreement. The Class Settlement Amount specifically covers

7   any claims for any costs or expenses associated with or related to the Class Notice.

8   **8.    PAYMENTS FROM THE SETTLMENT FUND**

9       8.1    Defendants' Expenses. Defendants and their counsel shall not charge any fees or

10  expenses to the Settlement Fund. Except as otherwise specified in the Settlement Agreement, the

11  Parties shall bear their own costs and expenses (including attorneys' fees) in connection with the

12  Settlement and securing all necessary court orders and approvals with respect to the same.

13      8.2    Expenses of Class Notice. Prior to the Effective Date, Class Counsel shall direct

14  the Escrow Agent in writing to disburse from the Settlement Fund an amount not to exceed

15  $150,000.00 (One Hundred Fifty Thousand Dollars) for the payment of costs of Class Notice and

16  reasonable settlement administrative costs (including taxes). If the Settlement Agreement is

17  terminated for any reason or if any condition stated in Article 2 above is not satisfied or waived,

18  no Person shall have an obligation to reimburse to the Settlement Fund the costs of Class Notice,

19  or other costs or expenses of the Settlement Fund properly charged to the Settlement Fund under

20  this Section 8.2.

21      8.3    Disbursements from the Settlement Fund. After the Effective Date and subject to

22  the Escrow Agreement, Class Counsel shall direct the Escrow Agent to disburse money from the

23  Settlement Fund as follows:

24          8.3.1   For any Case Contribution Award, as provided in Section 10.3 herein.

25          8.3.2   For taxes and expenses of the Settlement Fund, as provided in Subsection

26  7.1.2.2 herein.

27          8.3.3   For the Plan of Allocation. Class Counsel shall prepare and submit to the

28  District Court prior to the Fairness Hearing a Plan of Allocation in substantially the form

SETTLEMENT AGREEMENT AND RELEASE                                                      14
MASTER FILE NO. C-03-4743 CW
sf-2618159

1  described in the Class Notice attached hereto as Exhibit 2. The Plan of Allocation shall provide

2  for the calculation, allocation, and distribution of the Settlement Fund net of the disbursements

3  called for in this Article 8 ("Net Proceeds"). Such Plan of Allocation shall provide the method by

4  which the specific dollar amount to be allocated by the Plans to each member of the Settlement

5  Class will be calculated. The Plan of Allocation proposed by Class Counsel shall be sufficiently

6  specific to allow any third-party vendor mutually agreed upon by the Parties to perform the

7  calculations called for in the Plan of Allocation. As soon as reasonably practicable after the

8  Effective Date, Class Counsel shall direct the Escrow Agent to disburse the Net Proceeds to the

9  JDSU Plan for distribution by the JDSU Plan's trustee or any third-party vendor mutually agreed

10  upon by the Parties in accordance with the Plan of Allocation. The Plan of Allocation is a matter

11  separate and apart from the Settlement between the Parties, and no decision by the District Court

12  or any appellate court concerning the Plan of Allocation shall affect the validity of the Settlement

13  Agreement or the finality of the Settlement. JDSU shall, at the request of Class Counsel and

14  without charge to Class Counsel or the Settlement Fund, consult with the JDSU Plan's trustee and

15  attempt to obtain information that is reasonably necessary to ascertain the administrability of any

16  Plan of Allocation being considered by Class Counsel.

17         8.3.4   For attorneys' fees and expenses, as described in Section 10.1.

18  **9.    TERMINATION OF THE SETTLEMENT AGREEMENT**

19         9.1    Termination. Automatic termination of the Settlement Agreement will occur if

20  any of the conditions of Sections 2.1.3 or 2.3 of the Settlement Agreement are not fully satisfied

21  or waived. The Settlement Agreement shall be terminable by any Party if any of the conditions of

22  Sections 2.1.1, 2.1.2, 2.1.4, 2.1.5, 2.2, 2.4, or 7.2 are not fully satisfied or waived pursuant to their

23  terms. If the Settlement is terminated as provided in this Section, either automatically or by a

24  Party, the Settlement shall be null and void from its inception (except as otherwise provided in the

25  Settlement Agreement).

26         9.2    Consequences of Termination of the Settlement Agreement. If the Settlement

27  Agreement is terminated and rendered null and void from its inception for any reason specified in

28  Section 9.1, the following shall occur:

1               9.2.1   Upon written notice by Defendants' Insurer that the Settlement Agreement

2 has been terminated, which notice shall be copied to Class Counsel and Defendants' counsel, the

3 Escrow Agent shall within five (5) business days after such written notice return to Defendants'

4 Insurer the amounts contributed to the Settlement Fund, with all net income earned thereon, after

5 deduction of an amount not to exceed $150,000 (One Hundred Fifty Thousand Dollars) earlier

6 disbursed or owed relating to Class Notice and the reasonable settlement administrative expenses.

7               9.2.2   This action shall for all purposes with respect to the Parties revert to its

8 status as of March 2, 2009, the day immediately before the execution of the Memorandum of

9 Understanding signed by the Parties in connection with the proposed Settlement.

10               9.2.3   The Settlement Agreement shall be null and void from its inception, except

11 that the following provisions of the Settlement Agreement will survive termination: Sections 1.1-

12 1.35, 4.2, 5.3, 8.2, 9.2, and 11, including all sub-parts.

13 **10.     ATTORNEYS' FEES AND EXPENSES**

14       10.1   Application for Attorneys' Fees and Expenses.  Class Counsel may apply to the

15 District Court for an award of attorneys' fees and for reimbursement of expenses to be paid from

16 the Settlement Fund after the Effective Date, including fees incurred in securing all necessary

17 court orders and approvals with respect to the Settlement Agreement.  Defendants will not take

18 any position on any fee request submitted by Class Counsel, provided that Class Counsel does not

19 request an award of attorneys' fees higher than 30% of the Settlement Fund.  Defendants shall not

20 take any position on any request for reimbursement of expenses reasonably incurred in

21 prosecuting this action.  Class Counsel may direct payment of any court-approved award of fees

22 and expenses from the Settlement Fund (including fees incurred in securing all necessary court

23 orders and approvals with respect to the Settlement Agreement) after the Effective Date and (if

24 separate) an order approving Class Counsel's application for fees and expenses.  In no event will

25 Class Counsel seek reimbursement of any attorneys' fees or expenses incurred in their application

26 for fees and expenses or the application for Named Plaintiffs' Compensation.

27       10.2   Application for Named Plaintiffs' Compensation.  Class Counsel may apply to the

28 District Court for a Case Contribution Award not to exceed $7,500.00 (Seven Thousand Five

1  Hundred Dollars) for each Named Plaintiff payable solely from the Settlement Fund. The Named

2  Plaintiffs shall be entitled to receive such compensation from the Settlement Fund after the

3  Effective Date, to the extent awarded by the District Court (or as modified, if necessary,

4  following any appeal).

5        10.3    Disbursement of Named Plaintiffs' Compensation. After the Effective Date, Class

6  Counsel may instruct the Escrow Agent in writing to disburse to Named Plaintiffs any amount

7  awarded by the District Court (or as modified, as necessary, following any appeal) as the Case

8  Contribution Award from the Settlement Fund.

9        10.4    Post-Award Expenses. Class Counsel may make a supplemental application to the

10  District Court for an award of reasonable expenses with respect to post-Settlement proceedings

11  and administration, and any such award shall only be payable from the Settlement Fund after the

12  Effective Date and not by any Defendant.

13        10.5    No Effect on Finality of Settlement. No decision of the District Court or any

14  appellate court concerning Class Counsel's application for attorneys' fees and expenses under

15  Section 10.1 or any application for a Case Contribution Award to the Named Plaintiffs under

16  Section 10.2 shall affect the validity of the Settlement Agreement or the finality of the Settlement.

17  **11.    MISCELLANEOUS PROVISIONS**

18        11.1    Governing Law. The Settlement Agreement shall be governed by the laws of the

19  State of California without giving effect to the conflict of laws or choice of law provisions

20  thereof, except to the extent that the law of the United States governs any matter set forth herein,

21  in which case such federal law shall govern.

22        11.2    Severability. In the event that any court with original or appellate jurisdiction over

23  this action issues a Final determination that any portion of Article 3 of the Settlement Agreement

24  is not enforceable, the Parties may (but shall not be required to) jointly agree in writing to modify

25  Article 3 to conform to such determination. With the sole exception set forth in the preceding

26  sentence, the provisions of the Settlement Agreement are not severable.

27        11.4    Amendment. Before entry of the Final Judgment, the Settlement Agreement may

28  be modified or amended only by written agreement signed by or on behalf of all Parties with

1  notice to be given to the District Court of the agreed modification or amendment. Following

2  entry of Final Judgment, the Settlement Agreement may be modified or amended only by written

3  agreement signed on behalf of all Parties, and approved by the District Court.

4       11.5   Waiver. The provisions of the Settlement Agreement may be waived only by an

5  instrument in writing executed by the waiving Party. The waiver by any Party of any breach of

6  the Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach,

7  whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

8       11.6   Construction. None of the Parties hereto shall be considered to be the drafter of

9  the Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule

10  of interpretation or construction that would or might cause any provision to construed against the

11  drafter hereof.

12       11.7   Principles of Interpretation. The following principles of interpretation apply to the

13  Settlement Agreement:

14            11.7.1 Headings. The headings of the Settlement Agreement are for reference

15  purposes only and do not affect in any way the meaning or interpretation of the Settlement

16  Agreement.

17            11.7.2 Singular and Plural. Definitions apply to the singular and plural forms of

18  each defined term.

19            11.7.3 Gender. Definitions apply the masculine, feminine, and neuter genders of

20  each defined term.

21            11.7.4 References to a Person. References to a Person are also to the Person's

22  successors-in-interest.

23            11.7.5 Terms of Inclusion. Whenever the words "include," "includes," or

24  "including" are used in the Settlement Agreement, they shall not be limiting but rather shall be

25  deemed to be followed by the words "without limitation."

26       11.8   Further Assurances. Each of the Parties agrees, without further consideration and

27  as part of effectuating the Settlement, that he, she, or it will in good faith execute and deliver such

28

SETTLEMENT AGREEMENT AND RELEASE                                      18
MASTER FILE NO. C-03-4743 CW
sf-2618159

1   other documents and take such other actions as may be reasonably necessary to consummate and

2   effectuate the subject matter and purpose of the Settlement Agreement.

3        11.9   <u>Survival</u>. Except as provided in Article 9 of the Settlement Agreement, all

4   representations, warranties, and covenants set forth in the Settlement Agreement shall be deemed

5   continuing and shall survive the Effective Date and the termination or expiration of the

6   Settlement Agreement.

7        11.10  <u>Notices</u>. Any notice, demand, or other communication under the Settlement

8   Agreement (other than Class Notice, or other notices given at the direction of the District Court)

9   shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the

10   intended recipients as set forth below and personally delivered, sent by registered or certified mail

11   (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight

12   courier, with a copy by email.

13                   IF TO NAMED PLAINTIFFS:

14                   Joseph Meltzer
                Edward W. Ciolko
15                   Katherine B. Bornstein
16                   Barroway Topaz Kessler Meltzer & Check LLP
                280 King of Prussia Road
17                   Radnor PA  19087
                Telephone:  (610) 667-7706
18                   Facsimile:  (610) 667-7056
19                   Email:  eciolko@btkmc.com

20                   Robert A. Izard
                Izard Nobel LLP
21                   29 South Main Street, Suite 215
                West Hartford CT  06103
22                   Telephone:  (860) 493-6292
                Facsimile:  (860) 493-6290
23                   Email:  rizard@izardnobel.com

24                   Class Counsel

25                   IF TO JDSU:
26
27                   Paul Flum
                Morrison & Foerster LLP
28                   425 Market Street

1 | San Francisco CA 94105
2 | Telephone: (415) 268-7000
  | Facsimile: (415) 268-7522
3 | Email: paulflum@mofo.com

4 | Counsel for Defendants

5 | IF TO DEFENDANTS' INSURER:

6 | David J. Hensler
7 | Lisa R. Bonanno
  | Hogan & Hartson LLP
8 | 555 Thirteenth Street, NW
  | Washington, DC 20004
9 | Telephone: (202) 637-5600
10 | Facsimile: (202) 637-5910
  | Email: djhensler@hhlaw.com
11 |         lrbonanno@hhlaw.com

12 | Counsel for Defendants' Insurer

13 |

    11.11 <u>Entire Agreement</u>. The Settlement Agreement contains the entire agreement among the Parties relating to the Settlement.

    11.12 <u>Counterparts</u>. The Settlement Agreement, and any amendments thereto, and waivers of conditions, may be executed by exchange of faxed or electronically mailed executed signature pages, and any signature transmitted by facsimile or electronic mail for the purpose of executing the Settlement Agreement shall be deemed an original signature for purposes of the Settlement Agreement. The Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

    11.13 <u>Binding Effect</u>. The Settlement Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors, and successors.

    11.14 <u>Agreement Execution Date</u>. The date on which the final signature is affixed below shall be the Agreement Execution Date.

1         11.15  <u>No Benefits to Non-Parties</u>.  Except as otherwise stated herein, the Settlement

2    Agreement is not intended to confer any benefits upon any Person who is not a party hereto or a

3    member of the Settlement Class.

4         11.16  <u>Use as Evidence</u>.  Neither the fact nor the terms of the Settlement Agreement shall

5    be offered or received in evidence in any action or proceeding for any purpose, except in an

6    action or proceeding arising under, or to give effect to one or more provisions of, the Settlement

7    Agreement.

8         IN WITNESS WHEREOF, the Parties have executed the Settlement Agreement on the

9    dates set forth below.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

FOR NAMED PLAINTIFFS:

Dated: September 15, 2009

3

By: _____

Joseph Meltzer

4

Edward W. Ciolko

Katherine B. Bornstein

5

Barroway Topaz Kessler Meltzer &

Check LLP

6

280 King of Prussia Road

Radnor PA 19087

7

Telephone: (610) 667-7706

Facsimile: (610) 667-7056

8

Co-Lead Counsel for Named Plaintiffs

9

Dated: September 5, 2009

By: _____

10

Robert A. Izard

Izard Nobel LLP

11

29 South Main Street

West Hartford CT 06103

12

Telephone: (860) 493-6292

Facsimile: (860) 493-6290

13

Co-Lead Counsel for Named Plaintiffs

14

FOR DEFENDANTS:

15

Dated: September 14, 2009

16

By: _____

Paul Flum

17

Morrison & Foerster LLP

425 Market Street

18

San Francisco CA 94105

19

Telephone: (415) 268-7000

Facsimile: (415) 268-7522

20

Counsel for Defendants

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE
MASTER FILE NO. C-03-4743 CW
sf-2618159

22

**Exhibit 1**

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                               OAKLAND DIVISION

11

12   In re JDS Uniphase Corporation ERISA          Master File No. C 03-04743 CW
     Litigation
13                                                  Judge:  Hon. Claudia Wilken
     This Document Relates To:  All Actions
14

15

16

17   **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED
     SETTLEMENT AGREEMENT, PRELIMINARILY CERTIFYING CLASS FOR
18   SETTLEMENT PURPOSES ONLY, APPROVING FORM AND MANNER OF CLASS
     NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL OF
19   SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND CASE
     CONTRIBUTION AWARD**

20

21

22

23

24

25

26

27

28

1    This action involves claims for alleged violations of the Employee Retirement Income

2    Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), with respect to the JDS

3    Uniphase Corporation 401(k) Retirement Plan and the Optical Coating Laboratories Inc. 401(k)

4    Plan (the "Plans").

5        The terms of the proposed Settlement of this action are set out in a Settlement Agreement

6    and Release ("Settlement Agreement") dated September ___, 2009, executed by counsel on behalf

7    of the Named Plaintiffs and Defendants.  Unless otherwise defined in this Order, the capitalized

8    terms defined in the Settlement Agreement shall have the same meaning in this Order.

9        The Court held a hearing on _____ __, 2009 to determine, among other things, whether to

10   grant preliminary approval of the proposed Settlement, whether to preliminarily certify this action

11   for settlement purposes only, and whether to direct issuance of notice to class members.  After

12   full consideration of the record of these proceedings, the representations, arguments, and

13   recommendations of counsel for the Parties, and the applicable law, the Court hereby ORDERS

14   as follows:

15       1.    Class Findings.  Solely for purposes of the Settlement, the Court finds that the

16   requirements of the Federal Rules of Civil Procedure and any other applicable law have been met

17   as to the Settlement Class, as certified herein.

18           a.    The Court preliminarily finds, as required by Fed. R. Civ. P. 23(a)(1), that

19   the Settlement Class is ascertainable from records kept with respect to the Plans and from other

20   objective criteria and that the members of the Settlement Class are so numerous that their joinder

21   before the Court would be impracticable.

22           b.    The Court preliminarily finds, as required by Fed. R. Civ. P. 23(a)(2), that

23   there are one or more questions of fact and/or law common to the Settlement Class.

24           c.    The Court preliminarily finds, as required by Fed. R. Civ. P. 23(a)(3), that

25   the claims of Named Plaintiffs are typical of the claims of the Settlement Class.

26           d.    The Court preliminarily finds, as required by Fed. R. Civ. P. 23(a)(4), that

27   Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

28   Specifically, the Court finds that:  (i) the interests of Named Plaintiffs and the nature of their

[PROPOSED] ORDER RE: PRELIMINARY APPROVAL OF SETTLEMENT                                    1
MASTER FILE NO. C-03-4743 CW
sf-2621122

1   claims are consistent with those of the absent members of the Settlement Class; (ii) there appear

2   to be no conflicts between Named Plaintiffs and absent members of the Settlement Class; and (iii)

3   Named Plaintiffs and the absent members of the Settlement Class are represented by qualified,

4   reputable counsel who are experienced in preparing and prosecuting large, complex ERISA

5   breach of fiduciary duty class actions.

6          e.      The Court preliminarily finds, as required by Fed. R. Civ. P. 23(b)(1), that

7   the prosecution of separate actions by individual members of the Settlement Class would create a

8   risk of:  (i) inconsistent or varying adjudications as to individual class members that would

9   establish incompatible standards of conduct for Defendants; or (ii) adjudications as to individual

10  class members that would, as a practical matter, be dispositive of the interests of the other class

11  members not parties to the adjudications, or substantially impair or impede the ability of such

12  persons to protect their interests.

13         f.      The Court preliminarily finds, as required by Fed. R. Civ. P. 23(b)(2), that

14  Named Plaintiffs' claims are based on allegations that Defendants have acted or refused to act on

15  grounds generally applicable to the members of the Settlement Class, thereby making injunctive

16  relief or corresponding declaratory relief on behalf of the Settlement Class appropriate.

17         g.      The Court preliminarily finds, as required by Fed. R. Civ. P. 23(g), that

18  Class Counsel are capable of fairly and adequately representing the interests of the Settlement

19  Class.  Class Counsel have done extensive work identifying and investigating potential claims in

20  this action, Class Counsel are experienced in handling class action and claims of the type asserted

21  in this action, Class Counsel are knowledgeable of the applicable law, and Class Counsel have

22  committed the necessary resources to represent the Settlement Class.

23      2.      Class Certification.  The Court certifies the following Settlement Class under Fed.

24  R. Civ. P. 23(b)(1) and 23(b)(2):

25              All Persons who were participants in or beneficiaries of the JDSU
                Plan or the OCLI Plan at any time between February 4, 2000, and
26              September 30, 2006, inclusive, and whose accounts included
                investments in JDSU common stock or a fund created to invest in
27              JDSU common stock.

28

---

[PROPOSED] ORDER RE: PRELIMINARY APPROVAL OF SETTLEMENT
MASTER FILE NO. C-03-4743 CW
sf-2621122

2

The Court appoints Named Plaintiffs as class representatives of the Settlement Class and appoints Class Counsel as counsel for the Settlement Class.

3. <u>Preliminary Findings Regarding Proposed Settlement</u>. The Court preliminarily finds that: (i) the proposed Settlement resulted from extensive arm's-length negotiations between the Parties; (ii) the Settlement Agreement was executed only after Class Counsel had conducted extensive investigation into the facts and merits of their claims, including a thorough review of documents relevant to the claims asserted in this action; (iii) Class Counsel have diligently investigated and aggressively litigated this action, including engaging in several rounds of dispositive motions, and are fully apprised of the strengths and weaknesses of Named Plaintiffs' claims; and (iv) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class.

4. <u>Fairness Hearing</u>. A Fairness Hearing is scheduled for _____ __, 20__, at ____ to determine, among other things:

- Whether the proposed Settlement should be finally approved as fair, reasonable, and adequate;

- Whether this action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement;

- Whether the notice and notice method proposed by the parties: (i) constitutes the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice; and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

- Whether Class Counsel adequately represented the Settlement Class;

- Whether the proposed Plan of Allocation described in the Class Notice should be approved; and

1         •     Whether any application(s) for attorneys' fees and expenses and

2                compensation to Named Plaintiffs is fair and reasonable and should be

3                approved.

4        5.    <u>Settlement Class Notice</u>.  The Parties have presented to the Court a proposed form

5  of Class Notice, attached to the Settlement Agreement as Exhibit 2.  The Court finds that such

6  notice fairly and adequately:  (i) describes the terms and effect of the Settlement Agreement and

7  the proposed Plan of Allocation; (ii) notifies the Settlement Class that Class Counsel will seek

8  attorneys' fees from the Settlement Fund not to exceed 30% of the Settlement Fund,

9  reimbursement of expenses, and compensation up to $7,500 for each Named Plaintiff; (iii) gives

10  notice to the Settlement Class of the time and place of the Fairness Hearing; and (iv) describes

11  how the recipients of the Class Notice may object to any of the relief requested.  The Parties have

12  proposed the following manner of communicating notice to members of the Settlement Class, and

13  the Court finds that such proposed manner of notice is the best notice practicable under the

14  circumstances.  Accordingly, the Court directs that Class Counsel shall:

15        •     No later than _____ __, 2009 [60 days before Fairness Hearing], cause the Class

16                Notice, attached hereto as Exhibit 2, with such non-substantive modifications as

17                may be agreed upon by the Parties, to be mailed, by first-class mail, postage

18                prepaid, to the last known address of each member of the Settlement Class who

19                can be identified by reasonable effort.  JDSU (if it has not already done so) shall

20                use commercially reasonable efforts to assist Class Counsel in promptly obtaining

21                the names and last known addresses of the members of the Settlement Class.  The

22                names and addresses that Class Counsel obtains pursuant to this Order shall be

23                used solely for the purpose of providing notice of this Settlement and not for any

24                other purpose.

25        •     No later than _____ __, 2009 [60 days before Fairness Hearing], cause the Class

26                Notice to be published on the website identified in the Class Notice,

27                www.JDSUniphaseERISAsettlement.com, which will also host copies of all

28                Settlement-related documents, including the Settlement Agreement.

1      •      No later than _____ __, 20__ [7 days before the Fairness Hearing], file

2             their motion for final approval of the proposed Settlement (including

3             approval of the Plan of Allocation), Attorneys' Fees and Reimbursement of

4             Expenses, and Case Contribution Award to Named Plaintiffs, and respond

5             to any objections to the Settlement.

6      6.      <u>Objections to Proposed Settlement</u>. Any member of the Settlement Class may file

7 an objection to the fairness, reasonableness or adequacy of the proposed Settlement, to any term

8 of the Settlement Agreement, to the proposed Plan of Allocation, to the proposed award of

9 attorneys' fees and expenses, or to the request for compensation for Named Plaintiffs. An

10 objector must file with the Court a statement of his, her, or its objection(s), specifying the

11 reason(s), if any, for each objection made and including any legal support and/or evidence that the

12 objector wishes to bring to the Court's attention or introduce in support of the objection(s). The

13 objector must also mail copies of the objection(s) and all supporting law and/or evidence to Class

14 Counsel and to counsel for Defendants. The addresses for filing objections with the Court and

15 effecting service on counsel are as follows:

16             For Filing with the Court:

17     Clerk of the Court
    UNITED STATES DISTRICT COURT
18       FOR THE NORTHERN DISTRICT OF CALIFORNIA
    OAKLAND DIVISION
19     1301 Clay Street,
    Suite 400 S
20     Oakland, CA 94612-5212
    Re: Master File No. C-03-4743 CW
21
            To Class Counsel:
22
    Joseph Meltzer
23     Edward W. Ciolko
    Barroway Topaz Kessler Meltzer & Check, LLP
24     280 King of Prussia Road
    Radnor, PA 19087
25
    Robert A. Izard
26     Izard Nobel LLP
    29 South Main Street
27     West Hartford, CT 06103

28

1       To Defendants' Counsel:

2       Paul Flum
        Morrison & Foerster LLP
3       425 Market Street
        San Francisco, CA  94105
4

5           The objector or his, her, or its counsel (if any) must effect service of copies of the

6       objection (together with any supporting materials) on counsel listed above and file such objection

7       and supporting materials with the Court no later than _____ __, 20__ [21 days before Fairness

8       Hearing].  If an objector hires an attorney to represent him, her, or it for the purposes of making

9       such objection pursuant to this paragraph, the attorney must both effect service of a notice of

10      appearance on counsel listed above and file it with the Court no later than _____ __, 20__ [21

11      days before Fairness Hearing].  Any member of the Settlement Class or other Person who does

12      not timely file and serve a written objection complying with the terms of this paragraph shall be

13      deemed to have waived, and shall be foreclosed from raising, any objection to the proposed

14      Settlement, and any untimely objection shall be barred.

15          7.      Appearance at Fairness Hearing.  Any objector who files and serves a timely,

16      written objection in accordance with Paragraph 6 may also appear at the Fairness Hearing either

17      in person or through counsel retained at the objector's expense.  Objectors or their attorneys who

18      wish to appear at the Fairness Hearing must effect service of a notice of intention to appear

19      setting forth, among other things, the name, address, and telephone number of the objector (and,

20      if applicable, the name, address, and telephone number of the objector's counsel) on Class

21      Counsel and Defendants' counsel (at the addresses set forth in Paragraph 6) and file such notice

22      with the Court by _____ __, 20__ [14 days before Fairness Hearing].  Any objector who does

23      not timely file and serve a notice of intention to appear in accordance with this Paragraph shall

24      not be permitted to appear at the Fairness Hearing, either in person or through counsel, except for

25      good cause shown.

26          8.      Notice Expenses.  The expenses of printing, mailing, and publishing all notices

27      required by this Order shall be paid from the Settlement Fund, subject to the provisions of

28      Sections 7.1.2.2 and 8.2 of the Settlement Agreement.

1        9.      <u>Service of Papers</u>.  Defendants' counsel and Class Counsel shall promptly provide

2  each other with copies of any and all objections to the proposed Settlement that come into their

3  possession.

4        10.     <u>Termination of Settlement</u>.   If the proposed Settlement is terminated in

5  accordance with the Settlement Agreement, this Order shall become null and void and shall be

6  without prejudice to the rights of the Parties, all of whom shall be restored to their previous

7  respective positions in accordance with Article 9 of the Settlement Agreement.

8        11.     <u>Use of this Order</u>.  This Order shall not be construed or used as an admission,

9  concession, or declaration by or against Defendants of any finding of fiduciary status, fault,

10  wrongdoing, breach, or liability.  This Order shall not be construed or used as an admission,

11  concession, or declaration by or against Named Plaintiffs or the Settlement Class that their claims

12  lack merit or that the relief requested in this action is inappropriate or unavailable, or as a waiver

13  by any Party of any arguments, defenses, or claims he, she, or it may have, including, but not

14  limited to, any objections by Defendants to class certification in the event that the Settlement

15  Agreement is terminated.

16        12.     <u>Jurisdiction</u>.  The Court shall retain jurisdiction for purposes of implementing the

17  proposed Settlement, and reserves the power to enter additional orders to effectuate the fair and

18  orderly administration and consummation of the Settlement as may from time to time be

19  appropriate and to resolve any and all disputes arising thereunder.

20        SO ORDERED this ___ day of _____, 2009.

21

22                                     _____
                                       HON. CLAUDIA WILKEN
                                       UNITED STATES DISTRICT JUDGE
23

24

25

26

27

28

## Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

———————————————————————
  )
IN RE JDS UNIPHASE CORPORATION  )      No. C 03-04743 CW
ERISA LITIGATION                )
  )
———————————————————————

# NOTICE OF CLASS ACTION SETTLEMENT

## Your legal rights might be affected
## if you are a member of the following Class:

ALL CURRENT AND FORMER PARTICIPANTS AND BENEFICIARIES OF THE JDS UNIPHASE CORPORATION 401(K) RETIREMENT PLAN (THE "*JDSU PLAN*") AND THE FORMER OCLI 401(K) PLAN (THE "*OCLI PLAN*"),[1] TOGETHER REFERRED TO HEREIN AS "*THE PLANS*," FOR WHOSE INDIVIDUAL ACCOUNTS THE PLANS PURCHASED AND/OR HELD SHARES OF JDS UNIPHASE CORPORATION ("*JDSU*" or "*JDS Uniphase*") COMMON STOCK AND/OR A FUND INVESTED IN JDSU COMMON STOCK (THE "*EMPLOYER COMMON STOCK FUND*") AT ANY TIME FROM FEBRUARY 4, 2000 THROUGH AND INCLUDING SEPTEMBER 30, 2006 (THE "*SETTLEMENT CLASS*").

### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION FROM A LAWYER.
### YOU HAVE NOT BEEN SUED.

- Judge Claudia Wilken of the United States District Court for the Northern District of California (the "*Court*") has preliminarily approved a proposed settlement of a class action lawsuit brought under the Employee Retirement Income Security Act (often referred to as ERISA) (the "*Settlement*"). The *Settlement* will provide for payments on behalf of participants of the *Plans* to be made into the *JDSU Plan* (into which the *OCLI Plan* merged on July 1, 2001) and for allocation of those payments to the accounts of members of the *Settlement Class* who had portions of their accounts in either of the *Plans* invested in the Employer Common Stock Fund. The *Settlement* is summarized below.

- The *Court* has scheduled a hearing on final approval of the *Settlement* (the "*Fairness Hearing*") and on *Named Plaintiffs'* motion for attorneys' fees and expenses and for compensation to the *Named Plaintiffs*. That *Fairness Hearing* before Judge Wilken has been scheduled for _____, 20__, at ___.m. in Courtroom _____ of the United States District Court for the Northern District of California, Oakland Division, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94612-5212.

———————————————————————
[1] OCLI is shorthand for the corporation called Optical Coating Laboratory, Inc., which was acquired by JDS Uniphase on February 4, 2000.

### QUESTIONS?  CALL (800) 494-2165 TOLL FREE
### OR VISIT www.JDSUniphaseERISAsettlement.com.
### Do not call the Court or JDS Uniphase Corporation.
### They cannot answer your questions.

- Any objections to the *Settlement* or to the motion for attorneys' fees and expenses and compensation to the *Named Plaintiffs* must be served in writing on *Class Counsel* identified on page 3 of this Notice, and on *Defendants'* attorneys, who are identified on page 14 of this Notice. The procedure for objecting is described below.

- This Notice contains summary information with respect to the *Settlement*. The terms and conditions of the *Settlement* are set forth in a Class Action Settlement Agreement (the "*Settlement Agreement*"). Capitalized and italicized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the *Settlement Agreement*. The *Settlement Agreement*, and additional information with respect to this lawsuit and the *Settlement*, is available from *Class Counsel* at their addresses listed below or at www.JDSUniphaseERISAsettlement.com

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY.  IF YOU ARE A MEMBER OF THE *SETTLEMENT CLASS* TO WHOM THIS NOTICE IS ADDRESSED, THE *SETTLEMENT* WILL AFFECT YOUR RIGHTS.   YOU ARE NOT BEING SUED IN THIS MATTER.  YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE.  IF YOU ARE IN FAVOR OF THE *SETTLEMENT*, YOU NEED NOT DO ANYTHING.   IF YOU DISAPPROVE, YOU MAY OBJECT TO THE *SETTLEMENT* PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT: | |
| --- | --- |
| **YOU CAN DO NOTHING.**<br><br><br><br><br>**NO ACTION IS NECESSARY TO RECEIVE PAYMENT.** | If the *Settlement* is approved by the *Court* and you are a member of the *Settlement Class*, you will not need to do anything to receive a payment. The portion, if any, of the *Settlement Fund* to be allocated to your account in the *JDSU Plan* (into which the *OCLI Plan* merged on July 1, 2001) will be calculated as part of the implementation of the *Settlement*.<br><br>If you are currently participating in the *JDSU Plan* and are a member of the *Settlement Class*, any share of the *Settlement Fund* to which you are entitled will be deposited into your account in the *JDSU Plan*. If you no longer are a participant in either of the *Plans* and are a member of the *Settlement Class*, any share of the net *Settlement Fund* to which you are entitled will be deposited in an account that will be established for you in the *JDSU Plan*, if necessary, and you will be notified of such account.<br><br>You will give up any rights you may have to sue any of the *Released Parties* for any *Released Claims* you may have against them. |

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

CLI-1520385v4

| OBJECT<br><br>(BY _____ , 20__ ) | If you wish to object to any part of the *Settlement*, you may (as discussed below) write to the *Court* and counsel about why you object to the *Settlement*. You may also (as discussed below) object to the application for an award of attorneys' fees and reimbursement of expenses to *Class Counsel*, or to the application for a case contribution award to the *Named Plaintiffs*, by writing to the *Court* and counsel about why you object. |
|---|---|
| GO TO A *FAIRNESS HEARING*<br><br>(TO BE HELD ON _____ , 20__ ) | If you submit a written objection to the *Court* and counsel before the *Court*-approved deadline, you may (but do not have to) attend the *Court Fairness Hearing* about the *Settlement* and present your objection to the *Court*. You may attend the *Fairness Hearing* even if you do not file a written objection, but you will be allowed to speak at the *Fairness Hearing* only if you file written comments in advance of the *Fairness Hearing*. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The *Court* in charge of this case still has to decide whether to approve the *Settlement*. Payments will be made only if the *Court* approves the *Settlement* and that approval is upheld in the event of any appeals.

Further information regarding the litigation and this *Notice* may be obtained by contacting *Class Counsel*:

Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(888) 299-7706

Robert A. Izard, Esq.
Wayne T. Boulton, Esq.
Izard Nobel LLP
29 South Main Street
Suite 215
West Hartford, CT 06107
(800) 797-5499

*Class Counsel* have established a toll-free phone number to receive your comments and questions: (800) 494-2165.

*Class Counsel* may also be contacted via e-mail: JDSUniphaseERISAsettlement@btkmc.com.

## WHAT THIS NOTICE CONTAINS

SUMMARY OF *SETTLEMENT* ........................................................................ 5

**QUESTIONS? CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

3

| | | |
|---|---|---|
| **BASIC INFORMATION** | | **6** |
| 1. | Why did I get this Notice package? | **6** |
| 2. | What is the lawsuit about? | **7** |
| 3. | Why is this case a class action? | **9** |
| 4. | Why is there a *Settlement*? | **9** |
| 5. | How do I know whether I am part of the *Settlement*? | **9** |
| 6. | Are there exceptions to being included in the *Settlement Class*? | **10** |
| **THE *SETTLEMENT* BENEFITS - WHAT YOU GET** | | **10** |
| 7. | What does the *Settlement* provide? | **10** |
| 8. | How much will my payment be? | **10** |
| 9. | How can I get a payment? | **11** |
| 10. | When  will I get my payment? | **12** |
| 11. | Can I get out of the *Settlement*? | **12** |
| **THE LAWYERS REPRESENTING YOU** | | **12** |
| 12. | Do I have a lawyer in the case? | **12** |
| 13. | How will the lawyers be paid? | **13** |
| **THE COURT'S *FAIRNESS HEARING*** | | **13** |
| 14. | When and where will the Court decide whether to approve the *Settlement*? | **13** |
| 15. | Do I have to come to the hearing? | **13** |
| 16. | May I speak at the *Fairness Hearing*? | **14** |
| 17. | How do I tell the Court if I don't like the *Settlement*, or the applications for attorneys' fees and expenses or for a case contribution award to the Named Plaintiffs? | **14** |
| **IF YOU DO NOTHING** | | **14** |
| 18. | What happens if I do nothing at all? | **14** |
| **GETTING MORE INFORMATION** | | **15** |
| 19. | Are there more details about the *Settlement*? | **15** |

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

4

CLI-1520385v4

This litigation (the "*Action*") is a consolidated case in which *Named Plaintiffs* allege that the *Defendants* breached fiduciary duties owed to the participants in and beneficiaries of the *Plans* under the Employee Retirement Income Security Act of 1974 ("ERISA"). Copies of the *Action*'s operative Complaint and other documents filed in the *Action* are available at www.JDSUniphaseERISAsettlement.com, or at the office of the Clerk, United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Suite 400 S, Oakland, CA 94612-5212.

## SUMMARY OF THE *SETTLEMENT*

1.   A *Settlement Fund* consisting of three million dollars ($3,000,000.00) in cash is being established in the *Action*.

2.   The net amount in the *Settlement Fund*, including interest, and after payment of any taxes, expenses, approved attorneys' fees and costs, and compensation to the *Named Plaintiffs*, will be paid to the *JDSU Plan* and be allocated to *Settlement Class* members according to a "*Plan of Allocation*" to be approved by the *Court*.

## Statement of Potential Outcome of the *Action*

As with any litigated case, the *Named Plaintiffs* would face an uncertain outcome if the *Action* were to continue against the *Defendants*. Continued litigation of the *Action* against *Defendants* could result in a judgment or verdict greater or lesser than the recovery under the *Settlement Agreement*, or in no recovery at all or a judgment or verdict in favor of the *Defendants*. Throughout this *Action*, the *Named Plaintiffs* and the *Defendants* have disagreed on both liability and damages, and they do not agree on the amount that would be recoverable even if the *Plaintiffs* were to prevail at trial.

The *Defendants* have denied and continue to deny all claims and contentions alleged by the *Named Plaintiffs*. In particular, *Defendants* dispute that they are liable to the *Settlement Class* and that the *Settlement Class* or the *Plans* have suffered any damages for which the *Defendants* could be legally responsible. Moreover, in the trial of a related securities fraud action, premised on substantially the same conduct at issue in this case, the jury returned a verdict in favor of the *Defendants* on all counts. *Defendants* relied on that verdict in filing a motion with the *Court* arguing that *Named Plaintiffs* in this Action were precluded from attaining any recovery whatsoever; *Defendants'* motion remained pending when the parties agreed upon this *Settlement*.

The parties have taken into account the costs, uncertainty and risks inherent in any litigation, particularly in a complex case such as this, and have concluded that it is desirable that the *Action* be fully and finally settled as to them on the terms and conditions set forth in the *Settlement Agreement*.

## Statement of Attorneys' Fees and Costs Sought in the *Action*

*Class Counsel* in the *Action* will apply to the *Court* for an order awarding to counsel for the *Named Plaintiffs* attorneys' fees not in excess of thirty percent (30%) of the amount recovered in the *Settlement*, plus reimbursement of expenses. Any amount awarded will be paid from the proceeds of the *Settlement Fund*.

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE**
**OR VISIT www.JDSUniphaseERISAsettlement.com.**
**Do not call the Court or JDS Uniphase Corporation.**
**They cannot answer your questions.**

5

## What Will the *Named Plaintiffs* Get?

The *Named Plaintiffs* named in the *Action* will share in the allocation of the money paid to the *JDSU Plan* on the same basis and to the same extent as all other members of the *Settlement Class*, except that, in addition, the *Named Plaintiffs* may apply to the *Court* for a case contribution award not to exceed seven thousand five hundred dollars ($7,500.00). Any such compensation awarded to *Named Plaintiffs* by the *Court* will be paid from the proceeds of the *Settlement Fund*.

## Further Information

*Class Counsel* have established a toll-free phone number to receive your comments and questions: (800) 494-2165.

As noted above, *Class Counsel* may also be contacted via e-mail at: JDSUniphaseERISAsettlement@btkmc.com.

Further information regarding the *Action* and this *Notice* may be obtained by contacting either:

Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA  19087
www.btkmc.com

or

Robert A. Izard, Esq.
Wayne T. Boulton, Esq.
Izard Nobel LLP
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103
www.izardnobel.com

**BASIC INFORMATION**

**1.      *Why did I get this Notice package?***

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

6

You or someone in your family are or may have been a participant in or beneficiary of either the *JDSU Plan* or the *OCLI Plan*.

The *Court* caused this Notice to be sent to you because, if you fall within the *Settlement Class*, you have a right to know about the *Settlement* and all of the options available to you regarding the *Settlement*, before the *Court* decides whether to approve the *Settlement*. If the *Court* approves the *Settlement*, and after any objections and appeals are resolved, the net amount of the *Settlement Fund* will be paid to the *JDSU Plans* and then allocated among *Settlement Class* members according to a *Court*-approved *Plan of Allocation*. This Notice package describes the litigation, the *Settlement*, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The *Court* in charge of this case is the United States District Court for the Northern District of California, Oakland Division. The people who sued are called "*Named Plaintiffs*," and the people and entities they sued are called "*Defendants*." The *Named Plaintiffs* in the *Action* are Eric Jason Carey, Douglas A. Pettit, and Alice Hodges-Toby. The *Defendants* are: JDS Uniphase Corporation ("JDSU"), Martin A. Kaplan, Jozef Straus, Kevin J. Kennedy, Donald R. Scifres, Casimir S. Skrzypczak, Bruce D. Day, Robert E. Enos, Peter A. Gugliemi, John A. MacNaughton, Donald J. Listwin, Wilson Sibbett, William J. Sinclair, the JDS Uniphase Corporation Benefits Committee, Angela Kupps, Andrew Pollack, Dena Regan, Garry Ronco, Tom Moser, Gary Hochman, Marie Lynch, Lori Zaret, Jennifer Bernauer, Steve Moore, the OCLI Plan Administrative Committee, Steve Fife, Mike Kasper, Rick Fieber, Wendy Serrano, Jill Sanford, Craig Collins, Holly Neal, and Jeff Ryan.

The legal action that is the subject of this Notice and the *Settlement* is known as *In re: JDS Uniphase Corporation ERISA Litigation*, No. C 03-04743 CW (N.D. Cal.) (the "*Action*").

| 2. | *What is the Action about?* |
|---|---|

The *Action* claims that the *Defendants* were fiduciaries of the *Plans* and violated fiduciary duties of loyalty, care and prudence under *ERISA* that they owed to the *Plans* and participants in the *Plans* regarding the *Plans'* investment in JDS Uniphase stock. In the Complaint, *Named Plaintiffs* asserted causes of action for the losses they allege were suffered by the *Plans* as the result of the alleged breaches of fiduciary duty by the *Defendants*.

The Complaint alleges that *Defendants* violated ERISA by, among other things, permitting the *Plans* to purchase and hold shares of JDSU common stock during the *Class Period* when they knew or should have known it was imprudent to do so. Specifically, *Plaintiffs* alleged that (1) *Defendants* allowed the *Plan* to imprudently invest in JDSU stock when they knew or should have known that the Company's value, financial and operational health, and future prospects were improperly inflated and unsustainable; (2) *Defendants* allowed the *Plan* to maintain and augment its investment in JDSU stock, despite their actual or constructive knowledge that the Company was engaging in corporate mismanagement including improper accounting and inventory manipulation; (3) *Defendants* disseminated inaccurate and misleading material information to the *Plans'* participants regarding investment of *Plan* assets in JDSU stock and, additionally, withheld material information vital to making any such Plan investment decision; and (4) that *Defendants*, because of their positions as corporate insiders with a stake (monetary through JDSU equity ownership and personal through their position at the Company) had an interest in withholding

**QUESTIONS? CALL (800) 494-2165 TOLL FREE**
**OR VISIT www.JDSUniphaseERISAsettlement.com.**
**Do not call the Court or JDS Uniphase Corporation.**
**They cannot answer your questions.**

7

information concerning JDSU's business and operational problems to portray JDSU as a growing and profitable company.

**The Defenses in the *Action***

The *Defendants* deny that they have liability to the *Plans* or their participants or beneficiaries. If the litigation were to continue, the *Defendants* would raise numerous defenses to liability, including the following:

- Defendants did not engage in any of the allegedly improper conduct charged in the Complaint.
- JDSU at all times fairly and accurately reported on its financial performance and prospects.
- Defendants were not fiduciaries of the *Plans*, or, if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the *Action*;
- JDS Uniphase common stock and the Employer Common Stock Fund were at all relevant times a prudent investment for the *Plans*;
- To the extent they were fiduciaries as to the matters at issue in the *Action*, Defendants fully and prudently discharged all of their fiduciary duties imposed on them by *ERISA*;
- Even if they failed to discharge one or more of their *ERISA* fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by the *Plaintiffs*; and
- *Named Plaintiffs* and the *Class* are precluded from seeking recovery in the *Action* due to the jury verdict returned in the *Defendants'* favor in the trial of a related securities fraud action that was premised on substantially the same conduct at issue, operative facts, and legal theories.

**The *Action* Has Been Aggressively Litigated**

*Class Counsel* have conducted an extensive investigation of the allegations in the *Action* and of the losses suffered by the *Plans*. In addition, through that investigation and through discovery of information in the *Action*, *Class Counsel* have obtained and reviewed all relevant documents, including the *Plans'* governing documents and materials, communications with participants of the *Plans*, internal JDSU documents regarding the *Plans*, SEC filings, press releases, public statements, news articles and other publications, voluminous amounts of documents concerning JDSU's business provided by JDSU and third parties, and other documents regarding issues at JDSU that the *Named Plaintiffs* allege made investment of the *Plans'* assets in the Employer Common Stock Fund imprudent.

*Class Counsel* previously opposed a motion by the *Defendants* to dismiss the *Named Plaintiffs'* claims. The *Court* denied Defendants' motion in part.

*Class Counsel* filed a motion for certification of the *Action* as a class action, and *Defendants* have opposed the motion. The *Court* has not yet decided the motion. If the litigation were to continue, the *Defendants* would continue to raise objections to the *Named Plaintiffs'* motion for class certification, including that the *Action* should not be certified as a class action.

**QUESTIONS? CALL (800) 494-2165 TOLL FREE**
**OR VISIT www.JDSUniphaseERISAsettlement.com.**
**Do not call the Court or JDS Uniphase Corporation.**
**They cannot answer your questions.**

8

**Settlement Discussions**

This *Settlement* is the product of extensive negotiations between *Class Counsel* and the *Defendants'* counsel, aided by Judge Daniel Weinstein, an experienced mediator who was thoroughly familiar with this litigation and the related *Securities Action* involving JDS Uniphase.

| 3. | **Why Is this case a Class Action?** |
|----|--------------------------------------|

In a class action, one or more plaintiffs, called "Class Representatives" or "Named Plaintiffs," sue on behalf of people who have similar claims. All of these people who have similar claims collectively make up the "Class" and are referred to individually as "Class Members." One court resolves the issues for all Class Members together. Because the wrongful conduct alleged by *Named Plaintiffs* in this *Action* affected a large group of people in a similar way, the *Named Plaintiffs* filed this case as a class action. U.S. District Judge Claudia Wilken is presiding over this case. In its Order setting the *Fairness Hearing*, the *Court* conditionally certified the *Settlement Class* in the *Action*.

| 4. | **Why is there a Settlement?** |
|----|--------------------------------|

The *Court* has not reached any final decisions in connection with *Named Plaintiffs'* claims against the *Defendants*. Instead, the *Named Plaintiffs* and the *Defendants* have agreed to a settlement. In reaching the *Settlement*, they have avoided the cost, time and uncertainty of a trial.

As with any litigated case, the *Named Plaintiffs* would face an uncertain outcome if this case went to trial. On the one hand, continuation of the case against the *Defendants* could result in a judgment greater than this *Settlement*. On the other hand, continuing the case against them could result in a judgment for less money than *Named Plaintiffs* have obtained in this *Settlement*, or even no recovery at all. Based on these factors, the *Named Plaintiffs* and their attorneys in this case think the *Settlement* is best for all *Settlement Class* members.

| 5. | **How do I know whether I am part of the Settlement?** |
|----|---------------------------------------------------------|

The proceeds of this *Settlement* will be allocated only to members of the *Settlement Class*, and then only according to a *Court*-approved *Plan of Allocation*.

You are a member of the *Settlement Class* if you fall within the definition of the *Settlement Class*:

All Persons, who were participants in or beneficiaries of the JDSU Plan or the OCLI Plan at any time between February 4, 2000 and September 30, 2006, inclusive, and whose accounts included investments in JDSU common stock or a fund created to invest in JDSU common stock.

If you are a member of the *Settlement Class*, the amount of money you will receive, if any, will depend upon the *Court*-approved *Plan of Allocation*, described below in Section 8.

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

9

CLI-1520385v4

| 6. | **Are there exceptions to being included?** |
|---|---|

There are no exceptions to the *Settlement Class* definition set forth in the preceding paragraph.

## THE *SETTLEMENT* BENEFITS - WHAT YOU GET

| 7. | **What does the Settlement provide?** |
|---|---|

A *Settlement Fund* consisting of three million dollars in United States currency ($3,000,000.00 cash) is being established in the *Action*. The net amount in the *Settlement Fund*, including interest, and after payment of, and establishment of reserves for, any taxes and *Court*-approved costs, attorney and other fees, and expenses, including any *Court*-approved compensation to be paid to the *Named Plaintiffs*, will be paid to the *JDSU Plan* and the remaining amount will be allocated to the *JDSU Plan* accounts of members of the *Settlement Class* according to a *Plan of Allocation* to be approved by the *Court*. If necessary, a *JDSU Plan* account will be created for those members of the *Settlement Class* who no longer have *JDSU Plan* accounts.

All *Settlement Class* members and anyone claiming through them are deemed to fully release the *"Released Parties"* from *"Released Claims."* The *Released Parties* include the *Defendants* and their officers, directors, employees, attorneys, and agents. The *Released Claims* generally include all claims which were asserted or could have been asserted in the *Action*. This means that *Settlement Class* members will not have the right to sue the *Released Parties* for anything related to the investment of *Plan* assets in JDS Uniphase stock or to other alleged fiduciary misconduct during the *Class Period* concerning the *Plans*.

The above description of the operation of the *Settlement* is only a summary. The governing provisions are set forth in the *Settlement Agreement* (including its exhibits), which may be obtained at www.JDSUniphaseERISAsettlement.com, or by contacting *Class Counsel* listed on page 3 above.

| 8. | **How much will my payment be?** |
|---|---|

Your share of the net *Settlement* proceeds paid into the *JDSU Plan* (the *"Net Proceeds"*) will depend on your alleged loss, compared to other *Class members'* alleged losses, related to the *Plans'* investments in the Employer Common Stock Fund at any time during the period February 4, 2000 through and including September 30, 2006. Each *Settlement Class* member's share of the *Net Proceeds* will be determined using a *Court*-approved *Plan of Allocation*. Because the *Net Proceeds* are less than the total losses alleged by the *Class*, each *Class* member's proportionate recovery will be less than his or her alleged loss. You are not responsible for calculating the amount you may be entitled to receive under the *Settlement*. This calculation will be done as part of the implementation of the *Settlement*.

QUESTIONS? CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.

10

CLI-1520385v4

In general, your proportionate share of the *Net Proceeds* will be calculated by establishing your "*Net Loss*" and comparing your *Net Loss* with the aggregate *Net Losses* of all *Class Members*. Your *Net Loss* shall equal A + B − C − D where, for each Participant's account:

1.    A = the dollar value, if any, of the balance in the Employer Company Stock Fund ("Fund") on the first day of the *Class Period*;

2.    B = the dollar value, if any, of all of the purchases of interests in the Fund during the *Class Period* as of the time of purchase(s);

3.    C = the dollar value, if any, of all dispositions of interests in the Fund during the *Class Period* as of the time of the sale(s); and

4.    D = the dollar value, if any, of the balance in the Fund remaining on the last day of the *Class Period*.

- The *Net Losses* of the Participants as calculated above will be totaled to yield the loss of the *Plans* as whole over the *Settlement Class Period* (the "*Plans' Loss*").

- Each Participant's "Alleged Net Loss Percentage" of the *Plan's Loss* will be calculated by dividing each Participant's *Net Loss* by the *Plans' Loss*.

- Then, each Participant's "*Preliminary Individual Dollar Recovery*," or personal share of the *Net Proceeds*, will be calculated by multiplying the Participant's Alleged *Net Loss Percentage* by the *Net Proceeds*.

- All Participants whose *Preliminary Individual Dollar Recovery* is less than or equal to ten dollars ($10.00) (the "*De Minimis Amount*"), shall be deemed to have a *Final Individual Dollar Recovery* of ten dollars ($10.00).

- Each Participant's *Final Individual Dollar Recovery* will be calculated by dividing each Participant's *Net Loss* by the *Plans' Loss* after deducting all *De Minimis Amounts*.

**Do not worry if you do not have records that show your activity in the *Plans***. If you are entitled to a share of the net *Settlement Fund*, you will receive a statement showing the amount of your share. If you have questions regarding the *Settlement* or the *Plan of Allocation*, please contact the *Class Counsel* listed on page 3 above.

| 9. | *How can I get a payment?* |
|---|---|

You do <u>not</u> need to file a claim. If you are a *Settlement Class* member entitled to a share of the *Net Proceeds*, your share will be deposited in your *JDSU Plan* account. If you are a former participant of the *Plans*, an account will be established for you in the *JDSU Plan*, if necessary, and you will be notified of such account. If you are a former participant and have not provided the *JDSU Plan* with your current address, please contact the *Plans'* trustee, _____, at_____, or contact (in writing) the counsel listed on page 3 above.

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE**
**OR VISIT www.JDSUniphaseERISAsettlement.com.**
**Do not call the Court or JDS Uniphase Corporation.**
**They cannot answer your questions.**

11

## 10.   When would I get my payment?

Payment is conditioned on several matters, including the *Court's* approval of the *Settlement* and such approval becoming final and no longer subject to any appeals to any court. Upon satisfaction of various conditions, the *Net Proceeds* will be paid to the *Plan* and allocated to the accounts of *Settlement Class* members pursuant to the *Plan of Allocation* (described in the Answer to Question No. 8, above) as soon as possible after final approval has been obtained for the *Settlement* (which, as noted, includes exhaustion of any appeals). Any appeal of the final approval may take several years. Any accrued interest on the *Settlement Fund* will be included in the amount paid to the *JDSU Plan* and allocated to the *JDSU Plan* accounts of *Settlement Class* members on a *pro rata* basis.

## 11.   What if the Settlement is terminated?

The *Settlement Agreement* may be terminated on several grounds, including if (1) the *Court* does not approve the *Settlement* or if it materially modifies the *Settlement* or (2) either as modified by the *Court* or as a result of reversal or modification on appeal, the *Court's Final Order* in the case does not satisfy certain terms of the *Settlement Agreement*. Should the *Settlement Agreement* be terminated, the *Settlement* will be terminated, the certification of the *Class* for settlement purposes will be vacated, and the *Action* will proceed as if the *Settlement Agreement* had not been entered into.

## 12.   Can I get out of the Settlement?

**You do not have the right to exclude yourself from the *Settlement*.** The *Action* has been conditionally certified as a non "opt-out" class action. Thus, it is not possible for any participants or beneficiaries to exclude themselves from the *Settlement*. As a *Settlement Class* member, you will be bound by any judgments or orders that are entered in the *Action* for all claims that were or could have been asserted in the *Action* or are otherwise included in the release under the *Settlement*.

Although you cannot opt out of the *Settlement*, you can object to the *Settlement* and ask the *Court* not to approve it. See Answer to Question No. 18, below.

## THE LAWYERS REPRESENTING YOU

## 13.   Do I have a lawyer in the case?

The *Court* has appointed the law firm Barroway Topaz Kessler Meltzer & Check, LLP and the law firm Izard Nobel LLP as *Class Counsel* in the *Action*. These lawyers are called "*Class Counsel*." You will not be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

12

CLI-1520385v4

## 14.   How will the lawyers be paid?

*Class Counsel* will file a motion for the award of attorneys' fees and expenses, to be paid out of the *Settlement Fund*. This motion will be considered at the *Fairness Hearing*. As previously described, *Class Counsel* have agreed to limit their application for an award of attorneys' fees to not more than thirty percent (30%) of the *Settlement Fund*, plus reimbursement of expenses incurred in connection with the prosecution of the *Action*.

## THE COURT'S *FAIRNESS HEARING*

The *Court* will hold a *Fairness Hearing* to decide whether to approve the *Settlement* as fair, reasonable and adequate. You may attend the *Fairness Hearing*, and you may ask to speak, but you do not have to attend.

## 15.   When and where will the Court decide whether to approve the Settlement?

The *Court* will hold a *Fairness Hearing* at ____.m. on _____, 20__, at the United States District Court for the Northern District of California, Oakland Division, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94612-5212, or in the Courtroom then occupied by United States District Judge Claudia Wilken. At that *Fairness Hearing*, the *Court* will consider whether the *Settlement* is fair, reasonable, and adequate. If there are objections to the *Settlement*, or to the application for an award of attorneys' fees and reimbursement of expenses to *Class Counsel*, or to the application for a case contribution award to the *Named Plaintiffs*, the *Court* will consider them. After the *Fairness Hearing*, the *Court* will decide whether to approve the *Settlement*. The *Court* will also rule on the applications for attorneys' fees and expenses and for a case contribution award to the *Named Plaintiffs*. We do not know how long these decisions will take.

## 16.   Do I have to come to the Fairness Hearing?

No. *Class Counsel* will answer questions Judge Wilken might have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to *Court* to talk about it. As long as you mail your written objection on time, it will be before the *Court* when the *Court* considers whether to approve the *Settlement* as fair, reasonable and adequate. You also may pay your own lawyer to attend the *Fairness Hearing*, but such attendance is not necessary.

## 17.   How do I tell the Court if I don't like the Settlement or the applications for attorneys' fees and expenses or for a case contribution award to the Named Plaintiffs?

If you are a *Settlement Class* member, you can object to the *Settlement* if you do not like any part of it. You can also object to the application for an award of attorneys' fees and reimbursement of expenses to *Class Counsel*, or to the application for a case contribution award to the *Named Plaintiffs*.

**QUESTIONS? CALL (800) 494-2165 TOLL FREE**
**OR VISIT www.JDSUniphaseERISAsettlement.com.**
**Do not call the Court or JDS Uniphase Corporation.**
**They cannot answer your questions.**

13

You can give reasons why you think the *Court* should not approve the *Settlement* or the application for an award of attorneys' fees and reimbursement of expenses to *Class Counsel*, or the application for a case contribution award to the *Named Plaintiffs*. To object, you must send a letter or other written filing saying that you object to the *Settlement,* or to the application for an award of attorneys' fees and reimbursement of expenses to *Class Counsel*, or to the application for a case contribution award to the *Named Plaintiffs,* in *In re JDS Uniphase Corporation ERISA Litigation*, No. C 03-04743 CW. Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons for your objection. **Your written objection must be served on the following counsel and must be postmarked no later than _____, 20__:**

| **CLASS COUNSEL** | **DEFENDANTS' COUNSEL** |
|---|---|
| Joseph H. Meltzer, Esq. | Jordan Eth, Esq. |
| Edward W. Ciolko, Esq. | Paul Flum, Esq. |
| Barroway Topaz Kessler Meltzer & Check, LLP | Terri Garland, Esq. |
| 280 King of Prussia Road | Raymond M. Hasu, Esq. |
| Radnor, PA  19087 | Morrison & Foerster LLP |
| | 425 Market Street |
| Robert A. Izard, Esq. | San Francisco, CA 94105-2482 |
| Wayne T. Boulton, Esq. | |
| Izard Nobel LLP | |
| 29 South Main Street | |
| Suite 215 | |
| West Hartford, CT  06107 | |

## 18.   May I speak at the Fairness Hearing?

If you are a *Settlement Class* member, you may ask the *Court* for permission to speak at the *Fairness Hearing*. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *In re JDS Uniphase Corporation ERISA Litigation*, No. C 03-04743 CW." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be served on the attorneys listed in the Answer to Question No. 18, postmarked no later than _____, 20__, and must be filed with the Clerk of the Court at the address listed below, postmarked no later than _____, 20__.

You must also file your objection with the Clerk of the United States District Court for the Northern District of California, Oakland Division. The address is:  Clerk of the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Suite 400 S, Oakland, CA 94612-5212. **Your objection must be postmarked no later than _____, 20__.**

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

14

## IF YOU DO NOTHING

| 19. | What happens if I do nothing at all? |
|---|---|

If you do nothing and you are a *Settlement Class* member, you will participate in the *Settlement* of the *Action* as described above in this Notice if the *Settlement* is approved, and you will be deemed to have released any "*Released Claims*" you may have against the "*Released Parties*," as described in Question No. 7 above.

## GETTING MORE INFORMATION

| 20. | Are there more details about the Settlement? |
|---|---|

This Notice summarizes the proposed *Settlement*. The complete *Settlement* is set forth in the *Settlement Agreement*. You may obtain a copy of the *Settlement Agreement* by making a written request to the *Class Counsel* listed at page 3 above. Copies may also be obtained at www.JDSUniphaseERISAsettlement.com. The *Settlement Agreement* also was filed with the Clerk of the Court and may be obtained from the Clerk's office directly.

**QUESTIONS?  CALL (800) 494-2165 TOLL FREE
OR VISIT www.JDSUniphaseERISAsettlement.com.
Do not call the Court or JDS Uniphase Corporation.
They cannot answer your questions.**

15

**Exhibit 3**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re JDS Uniphase Corporation ERISA Litigation | Master File No. C 03-04743 CW |
| This Document Relates To:  All Actions | Judge:  Hon. Claudia Wilken |

**[PROPOSED] ORDER AND FINAL JUDGMENT**

1    This matter came before the Court for hearing on _____ __, 20__, pursuant to the

2  Court's _____ __, 2009 Order granting preliminary approval of the proposed Settlement set forth

3  in the Parties' Settlement Agreement.[1]  Pursuant to that Order, due and adequate notice of the

4  proposed Settlement has been provided to the Settlement Class.  Having considered all papers

5  filed and the arguments, representations, and recommendations made by the Parties' counsel in

6  connection with the proposed Settlement, the Court ORDERS as follows:

7    1.   The Court has jurisdiction over the subject matter of this action and over all Parties

8  to this action, including all members of the Settlement Class.

9    2.   The Court certifies this action as a class action under Rules 23(a), 23(b)(1), and

10  23(b)(2) of the Federal Rules of Civil Procedure.  The class ("Settlement Class") is defined as:

> All Persons who were participants in or beneficiaries of the JDSU
> Plan or the OCLI Plan at any time between February 4, 2000, and
> September 30, 2006, inclusive, and whose accounts included
> investments in JDSU common stock or a fund created to invest in
> JDSU common stock.

11
12
13
14

15    3.   The Court appoints Eric Jason Carey, Douglas A Pettit, and Alice Hodges-Toby as

16  class representatives.

17    4.   The Court appoints Barroway Topaz Kessler Meltzer & Check, LLP and Izard

18  Nobel LLP as lead counsel for the class ("Class Counsel").

19    5.   The Court finds that:

20    a.   The numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil

21  Procedure is satisfied because the Settlement Class is so numerous that it is impracticable to bring

22  all class members before the Court individually.  Forms 5500 filed by the Plans with the Internal

23  Revenue Service indicate that there were more than 5,000 participants with account balances in

24  the Plans as of December 31, 2002.  For purposes of the proposed Settlement, Defendants do not

25  dispute that estimate.

26  _____

27    [1] Unless otherwise defined in this Order, the capitalized terms defined in the Settlement
Agreement, dated September __, 2009, shall have the same meaning in this Order.

28

[PROPOSED] ORDER AND FINAL JUDGMENT
MASTER FILE NO. C-03-4743 CW
sf-2621585

1

1        b.       The commonality requirement of Rule 23(a)(2) of the Federal Rules of

2  Civil Procedure is satisfied because the allegations of the Settlement Class present common

3  questions of law or fact, including:

4                i.       Whether Defendants breached fiduciary obligations to the Plans and

5  their participants by causing or allowing the Plans to offer the JDSU Stock Fund as an investment

6  option in the Plans; and

7                ii.       Whether any of the alleged breaches of fiduciary duty by

8  Defendants caused the Plans and their participants to suffer losses.

9        c.       The typicality requirement of Rule 23(a)(3) of the Federal Rules of Civil

10  Procedure is satisfied because the claims of the class representatives arise from the same alleged

11  course of conduct that gives rise to the claims of the Settlement Class and the class

12  representatives' claims are based on the same legal theory as those of the Settlement Class.  The

13  class representatives allege that, during the Class Period:  (i) they and the other members of the

14  class were participants in the Plans who held investments in the JDSU Stock Fund in their Plan

15  accounts; and (ii) the Plans' fiduciaries treated them and all other participants alike and that Plan-

16  wide relief is necessary and appropriate under ERISA.  Under these circumstances, the claims

17  asserted by the class representatives are sufficiently typical of the claims asserted by the

18  Settlement Class as a whole to satisfy Rule 23(a)(3).

19        d.       The adequacy requirement of Rule 23(a)(4) of the Federal Rules of Civil

20  Procedure is satisfied because the class representatives have no conflicts of interest with absent

21  members of the Settlement Class.  Further, the Court is satisfied that Class Counsel are qualified,

22  experienced, and prepared to the represent the Settlement Class as a whole.

23        e.       The requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

24  are also satisfied.  The class representatives' claims are brought on behalf of the Plans, creating a

25  risk that failure to certify the class would leave future plaintiffs without relief.  Absent class

26  certification, there is also a risk of inconsistent rulings that might prejudice Defendants, such as

27  potentially inconsistent rulings on the fiduciary status of various Defendants, the prudence or

28

1   imprudence of the Plans' offering of the JDSU Stock Fund as an investment option for

2   participants, and the accuracy and completeness of Defendants' disclosures to participants.

3           f.     The requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure

4   are also satisfied.  The class representatives' claims are based on allegations that Defendants

5   breached their fiduciary duties to the Settlement Class as a whole regarding the offering of the

6   JDSU Stock Fund as an investment option in the Plans.  Final injunctive relief or corresponding

7   declaratory relief is thus appropriate.

8           g.     The Court has also considered each of the elements set forth in Rule 23(g)

9   of the Federal Rules of Civil Procedure to ensure that Class Counsel will fairly and adequately

10  represent the interests of the Settlement Class.  Class Counsel have done substantial work to

11  identify and investigate potential claims in this action.  Class Counsel have represented that they

12  have investigated the allegations made in the Complaint by interviewing witnesses, reviewing

13  publicly available information, and reviewing a substantial volume of documents relating to the

14  Plans and to Defendants' conduct with regard to the Plans.  Through significant motion practice

15  in this action, including several rounds of briefing on dispositive motions, Class Counsel have

16  demonstrated knowledge of the applicable law.  Finally, over the course of more than five years,

17  Class Counsel have devoted considerable resources to this action and have aggressively litigated

18  this action at every phase.  Accordingly, the Court concludes that Class Counsel have fairly and

19  adequately represented the interests of the Settlement Class and that the requirements of Rule

20  23(g) are satisfied.

21          h.     In accordance with the Court's Preliminary Approval Order, dated _____

22  __, 2009, members of the Settlement Class have received proper notice of the proposed

23  Settlement, the Settlement Agreement, the Fairness Hearing, Class Counsel's application for

24  attorneys' fees and expenses and for a Case Contribution Award to Named Plaintiffs, and the Plan

25  of Allocation.  Such notice included individual notice to all members of the Settlement Class who

26  could be identified through reasonable efforts, as well as notice through a dedicated website on

27  the internet, and provided sufficient notice of these proceedings and of the matters set forth in this

28  Order and included sufficient information concerning the procedures and requirements for any

1   member of the Settlement Class to object to those matters.  Such notice fully satisfied the

2   requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due

3   process, and constituted the best practicable method under the circumstances for providing notice

4   to the Settlement Class.

5          6.      The Court approves the Settlement Agreement and orders that the Settlement

6   Agreement shall be implemented in accordance with its terms and conditions.

7          7.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court approves

8   and confirms the proposed Settlement as a fair, reasonable, and adequate settlement and

9   compromise of the claims asserted in this action.  Specifically, the Court finds that:

10              a.      The Settlement was negotiated vigorously and at arm's-length by the

11  Named Plaintiffs and Class Counsel on behalf of the Settlement Class seeking plan-wide relief for

12  the Plans;

13              b.      This action settled after more than five years of aggressive litigation by

14  both sides and arm's-length negotiations with the assistance of an experienced mediator between

15  counsel who were thoroughly familiar with the relevant facts and applicable law.  Named

16  Plaintiffs and Defendants had sufficient information to evaluate the settlement value of this

17  action.

18              c.      If the Settlement had not been reached, Named Plaintiffs and Defendants

19  faced significant expense, risk, and uncertainty from continued litigation.  Such litigation would

20  have included the completion of briefing on Defendants' motion for summary judgment on

21  collateral estoppel issues, and (depending on the outcome of that motion) might also have

22  included further discovery, renewed class certification proceedings, a further round of summary

23  judgment motions, and trial.  Named Plaintiffs contend that they had a reasonable chance of

24  success, given, among other things:  (i) allegedly favorable determinations in other cases on

25  issues relevant to this action; (ii) expert testimony that Named Plaintiffs expected to offer at trial;

26  and (iii) allegedly favorable documents and testimony that Named Plaintiffs expected to offer at

27  trial.  Defendants dispute those contentions, pointing, among other things, to:  (i) the jury verdict

28  and partial summary judgment order in favor of the defendants in the related securities class

1    action; (ii) alleged legal presumptions favor the offering of company stock in ERISA defined

2    contribution plans; (iii) Named Plaintiffs' burden of proof at trial; (iv) expert testimony that

3    Defendants' expected to offer at trial; and (v) alleged explanations for the Plans' alleged losses

4    that are unrelated to actions or inactions of the Plans' fiduciaries. The Court takes no position on

5    the merits of Named Plaintiffs' claims, but notes the arguments above as evidence in support of

6    the reasonableness of the proposed Settlement.

7            d.      The amount of the Settlement — $3,000,000.00 — is fair, reasonable, and

8    adequate, given the risks and arguments identified above.

9            e.      At all times, Named Plaintiffs have acted in the interest of the Settlement

10   Class and independently of Defendants.

11           f.      This action is dismissed with prejudice, each party to bear his, her, or its

12   own costs, except as expressly provided otherwise herein.

13       8.   The Court holds that the Escrow Account established to hold the Settlement Fund

14   is approved in order that it may be a Qualified Settlement Fund for federal tax purposes pursuant

15   to Treas. Reg. § 1.468B-1.

16       9.   Upon the Effective Date, the following claims are released by operation of this

17   Order and Final Judgment:

18           a.      Releases by Named Plaintiffs, the Settlement Class, and the Plans. Named

19   Plaintiffs (and their heirs and successors) shall and hereby do conclusively, absolutely,

20   unconditionally, irrevocably, and forever release and discharge, and the Plans and the Settlement

21   Class shall, by operation of this Order and Final Judgment, be deemed to have conclusively,

22   absolutely, unconditionally, irrevocably, and forever released and discharged the Plaintiffs'

23   Released Persons from any and all Plaintiffs' Released Claims. The Settlement Agreement

24   defines Plaintiffs' Released Claims as: "any and all claims and causes of action that: (1) were

25   brought or could have been brought in either an individual or representative capacity against

26   Defendants in the Lawsuit; (2) arise out of the Lawsuit or are based on any of the same facts,

27   circumstances, situations, transactions, occurrences, or allegations as the Lawsuit; and/or (3) were

28

1   or could have been asserted under ERISA based on or relating to investment in JDSU securities

2   or any fund created to invest in JDSU securities by or through the Plans during the Class Period."

3          b.      <u>Releases by Defendants</u>.  Defendants (and their heirs and successors) shall

4   and hereby do conclusively, absolutely, unconditionally, irrevocably, and forever release and

5   discharge the Defendants' Released Persons from any and all Defendants' Released Claims,

6   which the Settlement Agreement defines as "any and all claims and causes of action relating to

7   the institution or prosecution of this action or relating to the settlement of any of Plaintiffs'

8   Released Claims."

9          c.      <u>Waiver of Unknown Claims</u>.  Named Plaintiffs and Defendants have

10  agreed to waive, and the Plans and the Settlement Class, by operation of this Order and Final

11  Judgment, shall be deemed to have waived, any and all rights and benefits respectively conferred

12  upon them by the provisions of Section 1542 of the California Civil Code and all similar

13  provisions of the statutory or common laws of any other State, Territory, or other jurisdiction.

14         d.      <u>Limitations on Scope of Releases</u>.  Nothing in this Order and Final

15  Judgment shall release, bar, waive, or preclude any claim that has been or could be asserted

16  directly or derivatively by any member of the Settlement Class or by the Plans under the federal

17  securities laws or the securities laws of any state involving the purchase or sale of any JDSU

18  securities.  Nothing in this Order and Final Judgment shall revive any claim that has extinguished,

19  released, or otherwise barred by operation of a judgment or settlement in another action.  The

20  releases set forth in this Order and Final Judgment do not include the release or waiver of any

21  rights or duties of the Parties arising out of the Settlement Agreement, including the express

22  warranties and covenants contained therein.

23         10.     The Court shall retain exclusive jurisdiction to resolve any disputes or challenges

24  that may arise as to the performance of the Parties with respect to the Settlement Agreement or

25  any challenges as to the validity, interpretation, administration, enforcement, or enforceability of

26  the Class Notice, this Order and Final Judgment, or the Settlement Agreement.  The Court shall

27  also retain jurisdiction over and rule by separate order with respect to all applications for awards

28

1   of attorneys' fees and expenses by Class Counsel and compensation to the Named Plaintiffs made

2   pursuant to the Settlement Agreement.

3         11.    In the event that the Settlement Agreement is terminated in accordance with its

4   terms, this Order and Final Judgment shall be rendered null and void and shall be vacated *nunc*

5   *pro tunc*, and this action shall proceed as provided in the Settlement Agreement.

6         12.    Neither this Order and Final Judgment, the Settlement Agreement, and the

7   settlement contained therein, nor any act performed or document executed pursuant to or in

8   furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission,

9   concession, or declaration of any fault, omission, wrongdoing, breach, or liability by any Person,

10   or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault,

11   omission, wrongdoing, breach, or liability of any of Plaintiffs' Released Persons or Defendants'

12   Released Persons in any civil, criminal or administrative proceeding in any court, administrative

13   agency or other tribunal.

14         13.    Any court order regarding the Plan of Allocation, the application for a Case

15   Contribution Award for Named Plaintiffs, or any application for attorneys' fees and expenses

16   shall in no way disturb or affect this Order and Final Judgment and shall be considered separate

17   from this Order and Final Judgment.  Reversal or modification on appeal of any such order shall

18   not affect the finality of this Order and Final Judgment and shall not constitute grounds for

19   cancellation or termination of the Settlement.

20         14.    FINAL JUDGMENT is hereby ENTERED directing Defendants, the Class

21   Representatives, and the Members of the Settlement Class to comply and perform in accordance

22   with the terms of the Settlement Agreement, and dismissing with prejudice the Lawsuit and all

23   claims asserted therein.

24         SO ORDERED this ___ day of _____, 20__.

25

26                                 _____
                                 HON. CLAUDIA WILKEN

27                                  UNITED STATES DISTRICT JUDGE

28

**EXHIBIT B**

—



280 King of Prussia Road, Radnor, Pennsylvania 19087 • 610-667-7706 • Fax: 610-667-7056 • info@btkmc.com
580 California Street, Suite 1750, San Francisco, CA  94104 • 415-400-3000 • Fax: 415-400-3001 • info@btkmc.com
**www.btkmc.com**

## FIRM PROFILE

Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz"), headquartered just outside of Philadelphia, Pennsylvania, specializes in representing shareholders and consumers in complex class action litigation in state and federal courts throughout the United States. Since the firm's inception in 1987, Barroway Topaz has recovered billions of dollars on behalf of defrauded shareholders, employees and aggrieved consumers.

Recognized by courts and our clients for achieving exemplary results, Barroway Topaz has grown into one of the largest and most successful plaintiff's class action firms in the country. With over sixty attorneys, a superior support staff and in-house investigative team, Barroway Topaz has emerged as the leading firm in the campaign to eradicate securities fraud and corporate malfeasance. Barroway Topaz's considerable resources and extensive experience in prosecuting class actions place it in a unique position to track, advise, prosecute and resolve complex actions.

Barroway Topaz represents various institutional investors from the United States, Canada, Europe and around the world — including pension funds, mutual fund managers, investment advisors, insurance companies, and hedge funds — and has secured landmark recoveries on behalf of our clients and the classes we represent. The firm, with the guidance and assistance of our clients serving as lead plaintiff, is especially proud of our ability to create and structure resolutions with financially troubled companies and, when appropriate, to institute meaningful corporate governance reforms when serving as lead counsel in shareholder actions.

Barroway Topaz is also at the forefront of protecting the rights of employees. The firm's nationally recognized ERISA Litigation Department specializes in breach of fiduciary duty actions brought pursuant to the Employee Retirement Income Security Act of 1974. Barroway Topaz has helped pensioners across the country recover hundreds of millions of dollars in retirement savings lost as a result of mismanaged pension assets. Further, Barroway Topaz's Wage and Hour Department represents thousands of workers across the country pursuing claims for unpaid wages under the Fair Labor Standards Act and relevant state compensation laws.

Barroway Topaz's Competition Group combats violations of federal and state antitrust laws (and deceptive trade practice laws) including price-fixing, bid-rigging, monopolization, resale price maintenance and price discrimination. The Group's attorneys in this highly specialized area of the law have extensive experience and expertise and have been appointed by courts to leadership positions in several important antitrust actions filed in state and federal courts throughout the country.

# NOTEWORTHY ACHIEVEMENTS

*During the firm's successful history, Barroway Topaz has recovered billions of dollars for defrauded stockholders and consumers. The following are among the firm's notable achievements:*

### *In re Tyco International, Ltd. Sec. Litig.*, No. 02-1335-B (D.N.H. 2002):

Barroway Topaz, which served as Co-Lead Counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3.2billion settlement with Tyco International, Ltd. ("Tyco") and their auditor PricewaterhouseCoopers, LLP ("PwC"). The $2.975 billion settlement with Tyco represents the single-largest securities class action recovery from a single corporate defendant in history. In addition, the $225 million settlement with PwC represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history.

As presiding Judge Paul Barbadoro aptly stated in his Order approving the final settlement, "[i]t is difficult to overstate the complexity of [the litigation]." Judge Barbadoro noted the extraordinary effort required to pursue the litigation towards its successful conclusion, which included the review of more than 82.5 million pages of documents, more than 220 depositions and over seven hundred discovery requests and responses. In addition to the complexity of the litigation, Judge Barbadoro also highlighted the great risk undertaken by Co-Lead Counsel in pursuit of the litigation, which he indicated was greater than in other multi-billion dollar securities cases and "put [Plaintiffs] at the cutting edge of a rapidly changing area of law." In sum, the Tyco settlement is of historic proportions for the investors who suffered significant financial losses and it has sent a strong message to those who would try to engage in this type of misconduct in the future.

### *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):

Barroway Topaz serves as Co-Lead Counsel in this action. A partial settlement was approved on May 26, 2006. The partial settlement was comprised of three distinct elements, including a substantial monetary commitment by the company in the amount of $215 million, personal contributions by two of the individual defendants totaling $1.5 million and the enactment and/or continuation of numerous changes to the company's corporate governance practices, which have led various institutional rating entities to rank Tenet among the best in the U.S. in regards to corporate governance. The significance of the partial settlement was heightened by Tenet's precarious financial condition. Faced with many financial pressures — including several pending civil actions and federal investigations, with total contingent liabilities in the hundreds of millions of dollars — counsel was concerned that Tenet would be unable to fund a settlement or satisfy a judgment of any greater amount in the near future. By reaching the partial settlement, Barroway Topaz, on behalf of the Plaintiffs' class, was able to avoid the risks associated with a long and costly litigation battle and provide a significant and immediate benefit to the class. Barroway Topaz also obtained a rarity in securities class action litigation — personal financial contributions from individual defendants. Following the partial settlement with the Tenet defendants, Barroway Topaz actively litigated the case against Tenet's external auditor, KPMG. After more than two years of hard-fought litigation, including dispositive motion practice and merits and expert discovery, Barroway Topaz, on behalf of the Plaintiffs' class, settled the matter against KPMG for $65 million. While the settlement is not yet final, Barroway Topaz is very pleased with the result as it stands, as one of the largest recoveries against an auditor in U.S. history.

### *In re AremisSoft Corp. Sec. Litig.*, C.A. No. 01-CV-2486 (D.N.J. 2002):

Barroway Topaz is particularly proud of the results recently achieved before the Honorable Joel A. Pisano in this case. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom are now fugitives. In settling the action, Barroway Topaz, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. Pursuant to the Settlement, the litigation trust has distributed more than 16 million shares of the reorganized Company to members of the class. The Court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained Barroway Topaz to continue prosecuting the actions on behalf of the litigation trust. After extensive litigation in the Isle of Man, including the successful freezing of more than $200 million of stolen funds, the trust settled its action against one of the principal wrongdoers and recovered approximately $200 million. Thus far, the trust has distributed to beneficiaries of the trust more than 28% of their recognized losses (excluding the value of the equity of the new Company), and is poised to recover even more. Recently, the trust commenced further litigation in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against various bank accounts and assets owned and/or controlled by the other principal wrongdoer.

***In re CVS Corporation Sec. Litig.,* C.A. No. 01-11464 JLT (D.Mass. 2001):**
After more than three years of contentious litigation and a series of protracted mediation sessions, Barroway Topaz, serving as Co-Lead Counsel, secured a $110 million recovery for class members in the CVS Sec. Litig. Specifically, the suit alleged that CVS violated accounting practices by delaying discounts on merchandise in an effort to prop up its earnings. In addition, the suit charged that in 2001 the Company and its Chief Executive Officer, Thomas M. Ryan, improperly delayed announcement of its intention to close approximately 200 underperforming stores, and that an industry-wide pharmacist shortage would have a materially negative impact on the Company's performance. Settlement was reached just days prior to the commencement of trial, and shortly after the district court had denied the defendants' motions for summary judgment. This substantial recovery represents the third-largest settlement in a securities class action case in the First Circuit.

***In re Delphi Corp. Sec. Litig.,* Master File No. 1:05-MD-1725 (E.D. Mich. 2005):**
In early 2005, various securities class actions were filed against auto-parts manufacturer Delphi Corporation in the Southern District of New York. Barroway Topaz its client, Austria-based mutual fund manager Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen"), were appointed as Co-Lead Counsel and Co-Lead Plaintiff, respectively. The Lead Plaintiffs alleged that (i) Delphi improperly treated financing transactions involving inventory as sales and disposition of inventory; (ii) improperly treated financing transactions involving "indirect materials" as sales of these materials; and (iii) improperly accounted for payments made to and credits received from General Motors as warranty settlements and obligations. As a result, Delphi's reported revenue, net income and financial results were materially overstated, prompting Delphi to restate its earnings for the five previous years. Complex litigation involving difficult bankruptcy issues has potentially resulted in an excellent recovery for the class, but is awaiting Delphi's exit from bankruptcy before the settlement of cash and stock, can be finalized. In addition, Co-Lead Plaintiffs have also reached a settlement of claims against Delphi's outside auditor, Deloitte & Touche, LLP, for $38.25 million on behalf of Delphi investors, which has already been approved.

***Royal Dutch Shell European Shareholder Litigation:***
Barroway Topaz was instrumental in achieving a landmark settlement worth at least $352million in cash on behalf of non-US investors with Royal Dutch Shell plc relating to Shell's 2004 restatement of oil reserves. This settlement of securities fraud claims on a class-wide basis under Dutch law was the first of its kind, and sought to resolve claims exclusively on behalf of European and other non-United States investors. Uncertainty over whether jurisdiction for non-United States investors existed in a 2004 class action filed in federal court in New Jersey prompted a significant number of prominent European institutional investors from nine countries, representing more than one billion shares of Shell, to actively pursue a potential resolution of their claims outside the United States. Among the European investors which actively sought and supported this settlement were Alecta pensionsförsäkring, ömsesidigt, PKA Pension Funds Administration Ltd., Swedbank Robur Fonder AB, AP7 and AFA Insurance, all of which were represented by Barroway Topaz. This settlement was approved by Order dated 6/26/08.

***In re The Interpublic Group of Companies Sec. Litig.,* No. 02 Civ. 6527 (S.D.N.Y. 2002):**
Barroway Topaz served as sole Lead Counsel in this action on behalf of an institutional investor and received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of the final hearing in the case, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Barroway Topaz for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

***In re Digital Lightwave, Inc. Sec. Litig.,* Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):**
The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions in history measured by the percentage of damages recovered. After extensive litigation and negotiations, a settlement consisting primarily of stock was worth over $170 million at the time when it was distributed to the Class. Barroway Topaz took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses.

*In re Initial Public Offering Sec. Litig.,* **Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):**
Barroway Topaz holds a prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, Barroway Topaz was one of only six firms selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which accompany the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history and has resulted in numerous important rulings by the Court.

*In re Global Crossing, Ltd. ERISA Litigation,* **No. 02 Civ. 7453 (S.D.N.Y. 2004):**
Barroway Topaz served as Co-Lead Counsel in this novel, complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to certain company-provided 401(k) plans and their participants. These breaches arose from the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

*In re AOL Time Warner ERISA Litigation,* **No. 02-CV-8853 (S.D.N.Y. 2006):**
Barroway Topaz, which served as Co-Lead Counsel in this highly-publicized ERISA fiduciary breach class action brought on behalf of the Company's 401(k) plans and their participants, achieved a record $100 million settlement with defendants. The $100 million restorative cash payment to the plans (and, concomitantly, their participants) represents the largest recovery from a single defendant in a breach of fiduciary action relating to mismanagement of plan assets held in the form of employer securities. The action asserted claims for breach of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the participants in the AOL Time Warner Savings Plan, the AOL Time Warner Thrift Plan, and the Time Warner Cable Savings Plan (collectively, the "Plans") whose accounts purchased and/or held interests in the AOLTW Stock Fund at any time between January 27, 1999 and July 3, 2003. Named as defendants in the case were Time Warner (and its corporate predecessor, AOL Time Warner), several of the Plans' committees, as well as certain current and former officers and directors of the company. In March 2005, the Court largely denied defendants' motion to dismiss and the parties began the discovery phase of the case. In January 2006, Plaintiffs filed a motion for class certification, while at the same time defendants moved for partial summary judgment. These motions were pending before the Court when the settlement in principle was reached. Notably, an Independent Fiduciary retained by the Plans to review the settlement in accordance with Department of Labor regulations approved the settlement and filed a report with Court noting that the settlement, in addition to being "more than a reasonable recovery" for the Plans, is "one of the largest ERISA employer stock action settlements in history."

*In re Honeywell International ERISA Litigation,* **No. 03-1214 (DRD) (D.N.J. 2004):**
Barroway Topaz served as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell defined contribution pension plans. The suit alleged that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. The settlement of plaintiffs' claims included a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios.

*In re Remeron Antitrust Litigation,* **No. 02-CV-2007 (D.N.J. 2004):**
Barroway Topaz was Co-Lead Counsel in an action which challenged Organon, Inc.'s filing of certain patents and patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully extend their monopoly in the market for Remeron. Specifically, the lawsuit alleged that defendants violated state and federal antitrust laws in their efforts to keep competing products from entering the market, and sought damages sustained by consumers and third-party payors. After lengthy litigation, including numerous motions and over 50 depositions, the matter settled for $36 million. The settlement is pending final approval by the court.

***Henry v. Sears, et. al.,* Case No. 98 C 4110 (N.D. Ill. 1999):**
The firm served as Co-Lead Counsel for one of the largest consumer class actions in history, consisting of approximately 11 million Sears credit card holders whose interest rates were improperly increased in connection with the transfer of the credit card accounts to a national bank. Barroway Topaz successfully negotiated a settlement representing approximately 66% of all class members' damages, thereby providing a total benefit exceeding $156 million. All $156 million was distributed automatically to the Class members, without the filing of a single proof of claim form. In approving the settlement, the District Court stated: ". . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance."

***In re Transkaryotic Therapies, Inc. Sec. Litig.,* Civil Action No.: 03-10165-RWZ (D. Mass. 2003):**
After five years of hard-fought, contentious litigation, Barroway Topaz as Lead Counsel on behalf of the Class, has entered into one of largest settlements ever against a biotech company with regard to non-approval of one of its drugs by the U.S. Food and Drug Administration ("FDA"). Specifically, the Plaintiffs alleged that Transkaryotic Therapies, Inc. ("TKT") and its CEO, Richard Selden, engaged in a fraudulent scheme to artificially inflate the price of TKT common stock and to deceive Class Members by making misrepresentations and nondisclosures of material facts concerning TKT's prospects for FDA approval of Replagal, TKT's experimental enzyme replacement therapy for Fabry disease. With the assistance of the Honorable Daniel Weinstein, a retired state court judge from California, Barroway Topaz secured a $50 million settlement from the Defendants during a complex and arduous mediation.

***In re Assisted Living Concepts, Inc. Sec. Litig.,* Lead Case No. 99-167-AA (D. Or. 1999):**
Barroway Topaz served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's start-up losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

***Wanstrath v. Doctor R. Crants, et. al. Shareholders Litigation,***
**No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999):**
Barroway Topaz served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved, and important corporate governance provisions were put in place to prevent future abuse. Barroway Topaz, in addition to achieving these desirable results, was able to effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

***In re PNC Financial Services Group, Inc. Sec. Litig.,* Case No. 02-CV-271 (W.D. Pa. 2002):**
Barroway Topaz served as Co-Lead Counsel in a securities class action case brought against PNC bank, certain of its officers and directors and its outside auditor, Ernst & Young, LLP ("E&Y"), relating to the conduct of defendants in establishing, accounting for and making disclosures concerning three special purpose entities ("SPEs") in the second, third and fourth quarters of PNC's 2001 fiscal year. Plaintiffs alleged that these entities were created by defendants for the sole purpose of allowing PNC to secretly transfer hundreds of millions of dollars worth of non-performing assets from its own books to the books of the SPEs without disclosing the transfers or consolidating the results and then making positive announcements to the public concerning the bank's performance with respect to its non-performing assets. Barroway Topaz was instrumental in obtaining a $30 million recovery for class members from PNC and the assignment of certain claims it may have had against its audit and other third party law firms and insurance companies. An additional $6.6 million was recovered from the insurance company and the law firms and an agreement in principle has now been reached with the audit to resolve all claims for another $9.075 million, providing for a total recovery from the Sec. Litig. of $45.675. When coupled with the $156 million restitution fund established through government actions against some of the same defendants and third parties, the total recovery for class members exceeds $200 million, which has now been distributed with PNC paying all costs associated with notifying the Class of the settlement.

***In re New Power Holdings, Inc. Sec. Litig.,* No. 02 Civ. 1550 (S.D.N.Y. 2002):**
Barroway Topaz served as Co-Lead Counsel and was instrumental in obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Company's offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices.

***In re Liberate Technologies Sec. Litig.,* No. C-02-5017 (MJJ) (N.D. Cal. 2005):**
Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, Barroway Topaz successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

***In re Sodexho Marriott Shareholders Litigation,* Consol. C.A. No. 18640-NC (Del. Ch. 1999):**
Barroway Topaz was Class Counsel in this case which was pending in Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

***In re Riverstone Networks, Inc. Sec. Litig.,* Case No. CV-02-3581 (N.D. Cal. 2002):**
Barroway Topaz served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of extensive mediation, the parties reached a settlement of $18.5 million.

***In re McLeod USA Inc. Sec. Litig.,* No. C02-0001-MWB (N.D. Iowa 2002):**
Barroway Topaz served as Co-Lead Counsel on behalf of plaintiffs, alleging that McLeod USA and certain of its officers misrepresented the health and prospects of the company's business. After more than three years of litigation, Barroway Topaz helped obtain a settlement of $30 million from the defendants.

***In re Viacom, Inc. Shareholder Derivative Litig.*, Index No. 602527/05 (New York County, NY 2005):**
Barroway Topaz represented the Public Employees Retirement System of Mississippi and served as lead counsel in a derivative action alleging that the members of the Board of Directors of Viacom, Inc. paid excessive and unwarranted compensation to Viacom's Executive Chairman and CEO, Sumner M. Redstone, and co-COOs Thomas E. Freston and Leslie Moonves, in breach of their fiduciary duties. Specifically, Barroway Topaz alleged that in fiscal year 2004, when Viacom reported a record net loss of $17.46 billion, the board improperly approved compensation payments to Redstone, Freston, and Moonves of approximately $56 million, $52million, and $52million, respectively. Judge Ramos of the New York Supreme Court denied Defendants' motion to dismiss the action as Barroway Topaz overcame several complex arguments related to the failure to make a demand on Viacom's Board; Defendants then appealed that decision to the Appellate Division of the Supreme Court of New York. Prior to a decision by the appellate court, a settlement was reached in early 2007. Pursuant to the settlement, Sumner Redstone, the company's Executive Chairman and controlling shareholder, agreed to a new compensation package that, among other things, substantially reduces his annual salary and cash bonus, and ties the majority of his incentive compensation directly to shareholder returns.

***In re Computer Associates Sec. Litig.,* No. 02-CV-1226 (E.D.N.Y. 2002):**
Barroway Topaz served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Barroway Topaz helped obtain a settlement of $150 million in cash and stock from the company.

***Kaltman, et. al. v Key Energy Services, Inc., et. al.*, No. 04-CV-082-RAJ (W.D. Tex. 2004):**
Barroway Topaz served as sole Lead Counsel on behalf of plaintiffs, alleging that Key Energy, as well as certain of its officers and directors, had made materially false and misleading statements in the company's public filings and press releases relating to its financial results, particularly its net income and fixed asset records. After nearly four years of litigation, Barroway Topaz secured a settlement of $15.425 million, which was recently approved by the Court.

***In re Family Dollar Stores, Inc. Derivative Litig.*, Master File No. 06-CVS-16796 (Mecklenburg County, NC 2006):**
Barroway Topaz served as Lead Counsel, derivatively on behalf of Family Dollar Stores, Inc., and against certain of Family Dollar's current and former officers and directors. The actions were pending in Mecklenburg County Superior Court, Charlotte, North Carolina, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of these shareholder derivative actions, Barroway Topaz was able to achieve substantial relief for Family Dollar and its shareholders. Through Barroway Topaz's litigation of this action, Family Dollar agreed to cancel hundreds of thousands of stock options granted to certain current and former officers, resulting in a seven-figure net financial benefit for the company. In addition, Family Dollar has agreed to, among other things: implement internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; appoint two new independent directors to the board of directors; maintain a board composition of at least 75 percent independent directors; and adopt stringent officer stock-ownership policies to further align the interests of officers with those of Family Dollar shareholders. The settlement was approved by Order of the Court on August 13, 2007.

***In re Barnes & Noble, Inc. Derivative Litig.*, Index No. 06602389 (New York County, NY 2006):**
Barroway Topaz served as Lead Counsel, derivatively on behalf of Barnes & Noble, Inc., and against certain of Barnes & Noble's current and former officers and directors. This action was pending in the Supreme Court of New York, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of this shareholder derivative action, Barroway Topaz was able to achieve substantial relief for Barnes & Noble and its shareholders. Through Barroway Topaz's litigation of this action, Barnes & Noble agreed to re-price approximately $2.64 million unexercised stock options that were alleged improperly granted, and certain defendants agreed to voluntarily repay approximately $1.98 million to the Company for the proceeds they received through exercise of alleged improperly priced stock options. Furthermore, Barnes & Noble has agreed to, among other things: adopt internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; at least once per calendar year, preset a schedule of dates on which stock options will be granted to new employees or to groups of twenty (20) or more employees; make final determinations regarding stock options at duly-convened committee meetings; and designate one or more specific officer(s) within the Company who will be responsible for, among other things, compliance with the Company's stock option plans. The settlement was approved by Order of the Court on November 14, 2007.

***In re Sepracor, Inc. Derivative Litig.*, Case No. 06-4057-BLS (Suffolk County, MA 2006):**
Barroway Topaz served as Lead Counsel, derivatively on behalf of Sepracor, Inc., and against certain of Sepracor's current and former officers and directors. This action was pending in the Superior Court of Suffolk County, Massachusetts, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of this shareholder derivative action, Barroway Topaz was able to achieve substantial relief for Sepracor and its shareholders. Through Barroway Topaz's litigation of this action, Sepracor agreed to cancel or re-price more than 2.7 million unexercised stock options that were alleged to have been improperly granted. Furthermore, Sepracor has agreed to, among other things: adopt internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; not alter the exercise prices of stock options without shareholder approval; hire an employee responsible for ensuring that the Company's complies with its stock option plans; and appoint a director of internal auditing. The settlement was approved by Order of the Court on January 4, 2008.

## PARTNERS

**RAMZI ABADOU**, a partner in the firm's San Francisco office, received his Bachelor of Arts from Pitzer College in Claremont, California in 1994 and his Master of Arts from Columbia University in the City of New York in 1997. Prior to attending law school, Mr. Abadou was a political science adjunct professor at Foothill College in Los Altos Hills, California. Mr. Abadou graduated from the Boston College Law School and clerked for the United States Attorney's Office in San Diego, California. Prior to joining the firm, Mr, Abadou was a partner with Coughlin Stoia Geller Rudman & Robbins LLP in San Diego, California.

Mr. Abadou concentrates his practice on prosecuting securities class actions and is also a member of the firm's lead plaintiff litigation practice group. Mr. Abadou has been responsible for a number of significant rulings and/or recoveries, including: *In re UnitedHealth Group, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 40623 (D. Minn. 2007); *In re Cardinal Health, Inc. Sec. Litig.*, 22 6 F.R.D. 298 (S.D. Ohio 2005); *In re NorthWestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997 (D.S.D. 2003); *Borochoff v. GlaxoSmithKline PLC*, 246 F.R.D. 201 (S.D.N.Y.2007); *Kuriakose v. Federal Home Loan Mortgage Co.*, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. 2008); *In re Direct Gen. Corp. Sec.Litig.*, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); *Ross v. Abercrombie & Fitch Co.*, 2007 U.S. Dist. LEXIS 24903 (S.D. Ohio 2007) and *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. 2003).

Mr. Abadou was a featured panelist at the American Bar Association's 11th Annual National Institute on Class Actions and was a faculty member at the Practicing Law Institute's 2008 Advanced Securities Litigation Workshop. Mr. Abadou has also lectured on securities litigation at the University of San Diego and Boston College law schools. He is admitted to the California Bar and is licensed to practice in all California state courts, as well as the United States District Courts for the Southern, Northern, and Central Districts of California.

**ANDREW L. BARROWAY**, a partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues, and spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm and has played pivotal roles in the resolutions of *In re The Interpublic Group of Companies Sec. Litig.*, No. 02Civ. 6527 (S.D.N.Y. 2002) (settled — settlement value of approximately $107 million); *In re Digital Lightwave, Inc. Sec. Litig.*, Consolidated Case No. 98-152-CIVT-24E (M.D. Fla. 1999) (settled — settlement value of $170 million); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled — $3.2 billion); and *Kaltman, et al. v Key Energy Services, Inc., et al.*, No. 04-CV-082-RAJ (W.D. Tex. 2004) (settled — $15.425 million). Mr. Barroway also represents numerous public pension funds, private investment funds, money management firms, and individuals in securities fraud litigation in which Barroway Topaz has been appointed as Lead or Co-Lead Counsel.

**STUART L. BERMAN**, a partner of the firm, concentrates his practice on securities class action litigation in federal courts throughout the country, with a particular emphasis on representing institutional investors active in litigation. Mr. Berman regularly counsels and educates institutional investors located around the world on emerging legal trends, new case ideas and the rights and obligations of institutional investors as they relate to securities fraud class actions and individual actions. In this respect, Mr. Berman has been instrumental in courts appointing the firm's institutional clients as lead plaintiffs in class actions as well as in representing institutions individually in direct actions. Mr. Berman is currently representing institutional investors in direct actions against Vivendi and Merck, and took a very active role in the precedent setting Shell settlement on behalf of many of the firm's European institutional clients.

In connection with these responsibilities, Mr. Berman is a frequent speaker on securities issues, especially

as they relate to institutional investors, at events such as The European Pension Symposium in Florence, Italy; the Public Funds Symposium in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities for Institutional Investors in Amsterdam, Netherlands; and the European Investment Roundtable in Barcelona, Spain.

Mr. Berman is an honors graduate from Brandeis University and received his law degree from George Washington University National Law Center.

**GREGORY M. CASTALDO**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey.

Mr. Castaldo served as Barroway Topaz's lead litigation partner in *In re Tenet Healthcare Corp.*, No. 02-CV-8462 (C.D. Cal. 2002), securing an aggregate recovery of $281.5 million for the class, including $65 million from Tenet's auditor. Mr. Castaldo also played a primary litigation role in the following cases: *In re Liberate Technologies Sec. Litig.*, No. C-02-5017 (MJJ) (N.D. Cal. 2005) (settled — $13.8 million); *In re Sodexho Marriott Shareholders Litig.*, Consol. C.A. No. 18640-NC (Del. Ch. 1999) (settled — $166 million benefit); *In re Motive, Inc. Sec. Litig.*, 05-CV-923 (W.D.Tex. 2005) (settled — $7 million cash, 2.5 million shares); and *In re Wireless Facilities, Inc., Sec. Litig.*, 04-CV-1589 (S.D. Cal. 2004) (settled — $16.5 million).

**DARREN J. CHECK**, a partner of the firm, concentrates his practice in the area of securities litigation and institutional investor relations. He is a graduate of Franklin & Marshall College where he received a degree in History, with honors. Mr. Check received his law degree from Temple University School of Law and is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado. Mr. Check began his career at Barroway Topaz by working extensively with Mr. Kessler in *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS) (S.D.N.Y. Dec. 12, 2002).

Currently, Mr. Check concentrates his time as the firm's Director of Institutional Relations and heads up the firm's business development and portfolio monitoring departments. He consults with institutional investors from around the world regarding their rights and responsibilities with respect to their investments and purchases and taking an active role in shareholder and consumer litigation. Mr. Check assists clients in evaluating what systems they have in place to identify and monitor shareholder and consumer litigation that has an effect on their funds, and also assists them in evaluating the strength of such cases and to what extent they may be affected by the conduct that has been alleged. He currently works with clients in the U.S., Canada, United Kingdom, France, Italy, Sweden, Denmark, Finland, Norway, Germany, Austria, Switzerland, and the Netherlands.

Mr. Check regularly speaks on the subject of shareholder litigation, corporate governance, investor activism, and recovery of investment losses. Mr. Check has spoken at or participated in panel sessions at conferences around the world, including the MultiPensions 2005 Conference in Amsterdam, Netherlands; the European Pension Symposium in Florence, Italy; the Public Funds Summit in Phoenix, Arizona; the European Investment Roundtable in Barcelona, Spain; The Rights & Responsibilities of Institutional Investors in Amsterdam, Netherlands; the Corporate Governance & Responsible Investment Summit, Stockholm, Sweden; Pension Fund Investment World – Germany in Frankfurt, Germany, and Australian Investment Management Summit in Melbourne, Australia.

Mr. Check has also been actively involved in the precedent setting Shell settlement, as well as the direct action litigation against Vivendi and Merck.

**EDWARD W. CIOLKO**, a partner of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. He is licensed to practice law in the State of New

Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey and the United States Courts of Appeals for the First, Ninth and Eleventh Circuits. Mr. Ciolko concentrates his practice in the areas of ERISA, Antitrust, RESPA and Consumer Protection.

Mr. Ciolko is counsel in several pending nationwide ERISA breach of fiduciary duty class actions, brought on behalf of retirement plans and their participants alleging, inter alia, imprudent investment of plan assets which caused significant losses to the retirement savings of tens of thousands of workers. These cases include: *In re Beazer Homes USA, Inc. ERISA Litig.*, 07-CV-00952-RWS (N.D. Ga. 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *Gee v. UnumProvident Corp.*, 03-1552(E.D. Tenn. 2003); *Pettit v. JDS Uniphase Corp. et al.*, C.A. No. 03-4743 (N.D. Ca. 2003); *Hargrave v. TXU, et al.*, C.A. No. 02-2573 (N.D. Tex. 2002); *Evans v. Akers*, C.A. No. 04-11380 (D. Mass. 2004); *Lewis v. El Paso Corp.* No. 02-CV-4860 (S.D. Tex. 2002); and *In re Schering-Plough Corp. ERISA Litig.* No. 03-CV-1204 (D.N.J. 2003).

Mr. Ciolko's efforts have also helped achieve a number of large recoveries for affected retirement plan participants: *In re Sears Roebuck & Co. ERISA Litig.*, C.A. No. 02-8324 (N.D. Ill. 2002) (settled — $14.5 million recovery); and *In re Honeywell Intern'l ERISA Litig.*, No. 03-CV-1214 (DRD) (D.N.J. 2003) (settled — $14 million recovery, as well as significant structural relief regarding the plan's administration and investment of its assets).

Mr. Ciolko has also concentrated part of his practice to the investigation and prosecution of pharmaceutical antitrust actions, medical device litigation, and related anticompetitive and unfair business practices including *In re Wellbutrin SR Antitrust Litigation*, 04-CV-5898 (E.D. Pa. Dec. 17, 2004); *In re Remeron End-Payor Antitrust Litigation*, Master File No. 02-CV-2007 (D.N.J. Apr. 25, 2002); *In re Modafinil Antitrust Litigation*, 06-2020 (E.D. Pa. May 12, 2006); *In re Medtronic, Inc. Implantable Defibrillator Litigation*, 05-CV-2700 (D. Minn. 2005); and *In re Guidant Corp. Implantable Defibrillator Litigation*, 05-CV-2883 (D. Minn. 2005).

Before coming to Barroway Topaz, Mr. Ciolko worked for two and one-half years as a Law Clerk and Attorney Advisor to Commissioner Sheila F. Anthony of the Federal Trade Commission ("FTC"). While at the FTC, Mr. Ciolko reviewed commission actions/investigations and counseled the Commissioner on a wide range of antitrust and consumer protection topics including, in pertinent part: the confluence of antitrust and intellectual property law; research and production of "Generic Drug Entry Prior to Patent Expiration: An FTC Study," and an administrative complaint against, among others, Schering-Plough Corporation regarding allegedly unlawful settlements of patent litigation which delayed entry of a generic alternative to a profitable potassium supplement (K-Dur).

**SEAN M. HANDLER**, a partner of the firm, received his Bachelor of Arts degree from Colby College, graduating with distinction in American Studies. Mr. Handler then earned his Juris Doctor, cum laude, from Temple University School of Law.

After law school, Mr. Handler practiced labor law at Reed Smith, LLP in Philadelphia. Since joining Barroway Topaz, Mr. Handler has concentrated his practice in the area of securities litigation, with a particular emphasis on litigation strategy and lead plaintiff litigation. In this role, Mr. Handler has been responsible for numerous reported decisions.

In addition to these responsibilities, Mr. Handler also spends considerable time litigating ongoing securities litigation matters on behalf of institutional clients including *In re Delphi Corporation Sec. Litig.*, No. 06-10026 (GER) (E.D. MI. 2006); *Smajlaj v. Brocade Communications Systems, Inc., et al.*, No. 05-cv-02042(CRB) (N.D. Cal. 2005); and *State of New Jersey and Its Division of Investment v. Sprint Corporation, et al.,* No. 03-2071-JWL (D. Kan. 2003).

**MICHAEL J. HYNES**, a partner of the firm, received his law degree from Temple University School of Law, and is a graduate of Franklin and Marshall College. Mr. Hynes is licensed to practice law in Pennsylvania, New Jersey and Montana, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. Prior to joining

Barroway Topaz, Mr. Hynes practiced law at Cozen O'Connor, where he concentrated on bankruptcy and commercial litigation. He was an attorney with the Defenders' Association of Philadelphia from 1991 to 1996, where he defended thousands of misdemeanor and felony cases. At Barroway Topaz, Mr. Hynes concentrates his practice in the area of shareholder derivative litigation.

**JOHN A. KEHOE**, a partner of the firm, received his B.A. from DePaul University and M.P.A., with high honors, from the University of Vermont. He earned his J.D., magna cum laude, from Syracuse University College of Law, where he was Associate Editor of the *Syracuse Law Review*, Associate Member of the Moot Court Board, and Alternate Member on the National Appellate Team.

Mr. Kehoe has litigated many high profile securities and antitrust actions in state and federal courts, including *Ohio Public Employees Retirement System et al. v. Freddie Mac et al.*, 03-CV-4261 (S.D.N.Y.) (resulting in a $410 million combined class and derivative settlement); *In re Bristol-Myers Squibb Sec. Litig.*, 02-CV-22 51 (S.D.N.Y.) (resulting in a $300 million class settlement); *In re Adelphia Communications Corp.Sec. & Der. Litig.*, No. 03 MD 1529 (S.D.N.Y.) (resulting in a $460 million class settlement); and *In re Vitamins Antitrust Litig.*, MDL No. 1285 (D.D.C.) (resulting in more than $2 billion in federal and state class and direct action settlements). Mr. Kehoe is currently among the lead trial attorneys representing individual and institutional investors in 309 separate class actions that have been consolidated for pretrial purposes in *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (S.D.N.Y.).

Prior to joining Barroway Topaz Kessler Meltzer & Check, Mr. Kehoe spent six years as a litigation associate with Clifford Chance LLP, where he represented Fortune 100 corporations and their officers and directors in complex commercial litigation and criminal or civil actions brought by the Department of Justice, the Securities and Exchange Commission, and the Federal Trade Commission. From 1986 to 1994, he served as a police officer in the State of Vermont, where he was a member of the Special Reaction Team and Major Accident Investigation Team.

Mr. Kehoe is currently admitted to practice before the courts of New York State, the U.S. District Court for the Southern District of New York, the Court of Appeals for the Second Circuit, and the Court of Appeals for the Eleventh Circuit.

**DAVID KESSLER**, a partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania. In addition, Mr. Kessler often lectures on securities litigation related topics. Mr. Kessler also manages the firm's nationally recognized securities department and in this capacity, has achieved or assisted in obtaining Court approval for the following outstanding results in federal securities and consumer class action cases: *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled — $3.2 billion); *In re PNC Financial Services Group, Inc. Sec. Litig.*, Case No. 02-CV-271 (W.D. Pa. 2002) (settled — $45.675million); *Henry v. Sears, et al.*, Case No. 98 C 4110 (N.D. Ill. 1999) (settled — $156 million); *In re Assisted Living Concepts, Inc. Sec. Litig.*, Lead Case No. 99-167-AA (D. Or. 1999) (settled — $42.5 million); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002) (settled — $216.5 million with Company and $65 million with auditor). Mr. Kessler is also currently serving as the firm's primary litigation partner in what is widely recognized as the largest securities class action case in history in *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) (S.D.N.Y. Dec. 12, 2002).

**PETER ("Tad") H. LeVAN, Jr.**, a partner of the firm, graduated with distinction from the University of Cincinnati College of Law, where he was a member of the *University of Cincinnati Law Review* and received the Awards for Excellence in Criminal Law and Conflicts of Law. Mr. LeVan received his undergraduate degree, cum laude and Phi Beta Kappa, from Miami University. Upon graduating from law school, Mr. LeVan served as judicial clerk to the Honorable John M. Manos of the United States District Court for the Northern District of Ohio. Mr. LeVan is licensed to practice law in Pennsylvania, New Jersey and Ohio. In addition, he is admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, the Middle District of

Pennsylvania, the District of New Jersey, and the Northern District of Ohio, as well as the United States Courts of Appeals for the Third, Sixth and Federal Circuits.

Mr. LeVan's practice focuses on ERISA and other complex litigation. A Fellow of the Academy of Advocacy at the Temple University School of Law, Mr. LeVan was the Recipient of the Equal Justice Award, given in recognition of his outstanding dedication and pro bono service to the cause of equal justice.

Prior to joining Barroway Topaz, Mr. LeVan was a shareholder at the law firm of Hangley Aronchick Segal & Pudlin, where he also served on the firm's Board of Directors.

**JOSEPH H. MELTZER**, a partner of the firm and a member of Barroway Topaz's Management Committee, concentrates his practice in the areas of ERISA and Antitrust complex litigation.

Mr. Meltzer leads the firm's ERISA Litigation Department, which has excelled in the highly specialized area of prosecuting claims on behalf of participants in 401(k) and other retirement savings plans. Mr. Meltzer is lead counsel in numerous nationwide class actions brought under ERISA, including *Lewis v. El Paso Corp.*, 02-CV-4860 (S.D. Tex. Dec. 19, 2002); *In re Loral Space ERISA Litig*., 03-CV-9729 (S.D.N.Y. Dec. 8, 2003) and *In re Schering-Plough Corp. ERISA Litig*., 03-CV-1204 (D.N.J. Mar. 18, 2003). Since founding the ERISA Litigation Department, Mr. Meltzer has recovered well over $250 million for retirement plan participants, including in *In re AOL Time Warner ERISA Litig.*, C.A. No. 02-8853 (S.D.N.Y. 2002) (settled — $100 million) and *In re Global Crossing Ltd. ERISA Litig*., No. 02-7453 (S.D.N.Y. 2002) (settled — $79 million).

A frequent lecturer on ERISA litigation and employee benefits issues, Mr. Meltzer is a member of the ABA's Section Committee on Employee Benefits and has been recognized by numerous courts for his ability and expertise in this complex area of the law.

Mr. Meltzer also manages the firm's Antitrust and Pharmaceutical Pricing practice groups. Here, Mr. Meltzer focuses on helping clients that have been injured by anticompetitive and unlawful business practices, including with respect to overcharges related to prescription drug and other health care expenditures. Mr. Meltzer serves as lead counsel in numerous nationwide actions representing such clients as the Pennsylvania Turnpike Commission, the Southeastern Pennsylvania Transportation Authority (SEPTA) and the Sidney Hillman Health Center of Rochester. Mr. Meltzer also serves as special assistant attorney general for the state of Montana. Examples of his success in these areas include *In re Remeron Antitrust Litig*., 02-CV-2007 (D.N.J.) (settled — $36 million) and *In re Augmentin Antitrust Litig.*, 02-442(E.D. Va.) (settled — $29 million). Mr. Meltzer lectures on issues related to antitrust litigation and is a member of the ABA's Section Committee on Antitrust Law.

Mr. Meltzer is an honors graduate of the University of Maryland and received his law degree with honors from Temple University School of Law. Honors include being named a Pennsylvania Super Lawyer in 2008.

**LEE D. RUDY**, a partner of the firm, concentrates his practice in the areas of mergers and acquisition litigation and shareholder derivative actions. Most recently, Mr. Rudy has served as lead counsel in numerous high profile derivative actions relating to the "backdating" of stock options, including *In re Monster Worldwide, Inc. Derivative Litigation*, Index No. 06-108700 (New York County, NY); *In re Barnes & Noble, Inc. Derivative Litig.,* Index No. 06-602389 (New York County, NY); *In re Affiliated Computer Services, Inc. Derivative Litig*., Cause No. 06-3403 (Dallas County, TX); *In re Sepracor, Inc. Derivative Litig*., Case No. 06-4057-BLS (Suffolk County, MA); and *In re Family Dollar Stores, Inc. Derivative Litig*., Master File No. 06-CVS-16796 (Mecklenburg County, NC). Settlements of these, and similar actions, have resulted in significant monetary and corporate governance improvements for those companies and their public shareholders.

Mr. Rudy has also served as lead counsel on behalf of shareholders of companies challenging mergers and other going-private transactions, including *In re William Lyon Homes Shareholder Litigation,* Consol. CA No. 2015-N (DE Ch. 2006) ($35 million class benefit); and *In re Insight Communications Company, Inc. Shareholders Litigation*, Consol. CA No. 1154-N (DE Ch. 2005) ($53.5 million class benefit).

Mr. Rudy has significant courtroom experience, both in trial and appellate courts across the country. Prior to civil practice, Mr. Rudy served for several years as an Assistant District Attorney in the Manhattan (NY) District Attorney's Office, and as an Assistant United States Attorney in the US Attorney's Office (DNJ). He has tried dozens of cases before juries in state and federal court, including several major fraud cases. He received his law degree from Fordham University, and his undergraduate degree, cum laude, from the University of Pennsylvania.

**MARC A. TOPAZ**, a partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the *Temple Law Review* and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the *New York University Tax Law Review*. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz oversees the firm's derivative, transactional and case development departments. In this regard, Mr. Topaz has been heavily involved in all of the firm's cases related to the subprime mortgage crisis, including cases seeking recovery on behalf of shareholders in companies affected by the subprime crisis, as well as cases seeking recovery for 401K plan participants that have suffered losses in their retirement plans. Mr. Topaz has also played an instrumental role in the firm's option backdating litigation. These cases, which are pled mainly as derivative claims or as securities law violations, have served as an important vehicle both for re-pricing erroneously issued options and providing for meaningful corporate governance changes. In his capacity as the firm's department leader of case initiation and development, Mr. Topaz has been involved in many of the firm's most prominent cases, including *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) (S.D.N.Y. Dec. 12, 2002); *Wanstrath v. Doctor R. Crants, et al.*, No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled — $3.2 billion); and virtually all of the 80 options backdating cases in which the firm is serving as Lead or Co-Lead Counsel. Mr. Topaz has played an important role in the firm's focus on remedying breaches of fiduciary duties by corporate officers and directors and improving corporate governance practices of corporate defendants.

**ROBIN WINCHESTER**, a partner of the firm, received her Bachelor of Science degree in Finance from St. Joseph's University. Ms. Winchester then earned her Juris Doctor degree from Villanova University School of Law, and is licensed to practice law in Pennsylvania and New Jersey. After law school, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania.

After joining BTKMC, Ms. Winchester concentrated her practice in the areas of securities litigation and lead plaintiff litigation. Presently, Ms. Winchester concentrates her practice in the area of shareholder derivative actions, and, most recently, has served as lead counsel in numerous high-profile derivative actions relating to the backdating of stock options, including *In re Eclipsys Corp. Derivative Litigation*, Case No. 07-80611-Civ-MIDDLEBROOKS (S.D. Fla.); *In re Juniper Derivative Actions,* Case No. 5:06-cv-3396-JW (N.D. Cal.); *In re McAfee Derivative Litigation,* Master File No. 5:06-cv-03484-JF (N.D. Cal.); *In re Quest Software, Inc. Derivative Litigation,* Consolidated Case No. 06CC00115 (Cal. Super. Ct., Orange County); and *In re Sigma Designs, Inc. Derivative Litigation,* Master File No. C-06-4460-RMW (N.D. Cal.). Settlements of these, and similar, actions have resulted in significant monetary returns and corporate governance improvements for those companies, which, in turn, greatly benefits their public shareholders.

**MICHAEL K. YARNOFF**, a partner of the firm, received his law degree from Widener University School of Law. Mr. Yarnoff is licensed to practice law in Pennsylvania, New Jersey, and Delaware and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. In addition to actively litigating and assisting in achieving the historic Tyco settlement, Mr. Yarnoff served as the primary litigating partner on behalf of Barroway Topaz in the following cases: *In re CVS Corporation Sec. Litig.*, C.A. No. 01-11464 JLT (D.Mass. 2001) (settled — $110 million); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, Civil Action No. 03-10165-RWZ (D.Mass. 2003) (settled — $50 million); *In re Riverstone Networks, Inc. Sec. Litig.*, Case No. CV-02-3581 (N.D. Cal. 2002) (settled — $18.5 million); *In re Zale Corporation Sec. Litig.*, 06-CV-1470 (N.D. Tex. 2006) (settled — $5.9 million); *Gebhard v. ConAgra Foods Inc., et al.*, 04-CV-427 (D. Neb. 2004) (settled — $14 million); *Reynolds v. Repsol YPF, S.A., et al.,* 06-CV-733

(S.D.N.Y. 2006) (settled — $8 million); and *In re InfoSpace, Inc. Sec. Litig.*, 01-CV-913 (W.D. Wash. 2001) (settled — $34.3 million).

**ERIC L. ZAGAR**, a partner of the firm, received his law degree from the University of Michigan Law School, cum laude, where he was an Associate Editor of the *Michigan Law Review.* He has practiced law in Pennsylvania since 1995, and previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice in Pennsylvania, California, and New York. In addition to his extensive options backdating practice, Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. In this capacity, Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen*, Case No. 01-CC-03930 (Orange County, CA 2001) (Broadcom Corp. Derivative Action); and *In re Viacom, Inc. Shareholder Derivative Litig.*, Index No. 602527/05 (New York County, NY 2005). Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees. Mr. Zagar is also a featured speaker at Barroway Topaz's annual symposium on corporate governance.

**ANDREW L. ZIVITZ**, a partner of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor.

Prior to joining Barroway Topaz, Mr. Zivitz practiced at Drinker Biddle & Reath, LLP, litigating complex commercial and environmental matters.

Mr. Zivitz concentrates his practice in the area of securities litigation. In this respect, Mr. Zivitz has served as one of the litigating partners on the following settled matters in which Barroway Topaz was Lead or Co-Lead Counsel: *In re Tenet Healthcare Corp.*, 02-CV-8462 (C.D. Cal. 2002) (settled — $281.5 million); *In re Computer Associates Sec. Litig.,* No. 02-CV-122 6 (E.D.N.Y. 2002) (settled — $150 million); *In re McLeod USA Inc. Sec. Litig.,* No. C02-0001-MWB (N.D. Iowa 2002) (settled — $30 million); *In re Barrick Gold Sec. Litig.*, 03-cv-04302 (S.D.N.Y. 2003) (settled — $24 million), *In re Friedman's, Inc. Sec. Litig.,* 03-CV-3475 (N.D. Ga. 2003) (settled — $14.95 million); *In re Check Point Technologies Ltd. Sec. Litig.*, 03-CV-6594 (S.D.N.Y. 2003) (settled — $13 million); *In re Avista Corporation Sec. Litig.*, 03-CV-328 (E.D. Wash. 2003) (settled — $9.5 million); and *In re Ligand Pharmaceuticals, Inc. Sec. Litig.*, 3:04 cv 01620 (S.D. Cal. 2004) (settled — $8 million).

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Zivitz also has litigated cases in federal district and appellate courts throughout the country, including two successful appeals before the United States Court of Appeals for the Ninth Circuit in *In re Merix Sec. Litig.*, 04-cv-00826 (D.Or. 2004) and *In re Leadis Sec. Litig.*, 05-cv-00882 (N.D.Ca. 2005). Mr. Zivitz also lectures and serves on discussion panels concerning securities litigation matters. Mr. Zivitz recently was a faculty member at the Pennsylvania Bar Institute's workshop entitled, "Securities Liability in Turbulent Times: Practical Responses to a Changing Landscape."

## ASSOCIATES AND OTHER PROFESSIONALS

**JULES D. ALBERT**, an associate of the firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. Mr. Albert is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Albert has litigated in state and federal courts across the country, and has represented stockholders in numerous actions that have resulted in significant monetary recoveries and corporate governance improvements, including: *In re Sunrise Senior Living, Inc. Deriv. Litig.*, No. 07-00143 (D.D.C.); *Mercier v. Whittle, et al.*, No. 2008-CP-23-8395 (S.C. Ct. Com. Pl., 13th Jud. Cir.); *In re K-V Pharmaceutical Co. Deriv. Litig.*, No. 06-00384 (E.D. Mo.); *In re Progress Software Corp. Deriv. Litig.*, No. SUCV2007-01937-BLS2 (Mass. Super. Ct., Suffolk

Cty.); *In re Quest Software, Inc. Deriv. Litig.* No 06CC00115 (Cal. Super. Ct., Orange Cty.); and *Quaco v. Balakrishnan, et al.,* No. 06-2811 (N.D. Cal.).

Mr. Albert received his law degree from the University of Pennsylvania Law School, where he was a Senior Editor of the *University of Pennsylvania Journal of Labor and Employment Law* and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated magna cum laude with a Bachelor of Arts in Political Science from Emory University.

**NAUMON A. AMJED**, an associate of the firm, has significant experience conducting complex litigation in state and federal courts including federal securities class actions, shareholder derivative actions, suits by third-party insurers and other actions concerning corporate and alternative business entity disputes. Mr. Amjed has litigated in numerous state and federal courts across the country, including the Delaware Court of Chancery, and has represented shareholders in several high profile lawsuits, including: *LAMPERS v. CBOT Holdings, Inc. et al.*, C.A. No. 2803-VCN (Del. Ch.); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006); *In re Global Crossing Sec. Litig.,* 02— Civ. — 910 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687 (S.D. Tex. 2006); and *In re Marsh McLennan Cos., Inc. Sec. Litig.* 501 F. Supp. 2d 452 (S.D.N.Y. 2006).

Prior to joining the firm, Mr. Amjed was associated with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A. Mr. Amjed is a graduate of the Villanova University School of Law, cum laude, and holds an undergraduate degree in business administration from Temple University, cum laude. Mr. Amjed is a member of the Delaware State bar and is admitted to practice before the United States Court for the District of Delaware.

**KRYSTN AVDOVIC**, a staff attorney at the firm, received her law degree from the University of Miami School of Law and her undergraduate degree in Political Science and Spanish, cum laude, from Mount Saint Mary's University.

Prior to joining Barroway Topaz, Ms. Avdovic practiced employment law and was in-house counsel at Philadelphia Corporation for Aging. Ms. Avdovic is licensed to practice law in Pennsylvania and Nevada and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. She now concentrates her practice in the area of securities litigation.

**ROBERT W. BIELA**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the *Environmental Law and Policy Journal*. Mr. Biela received his undergraduate degree from West Chester University. He is licensed to practice law in the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. Mr. Biela concentrates his practice in the area of FLSA and wage and hour litigation.

**KATHERINE B. BORNSTEIN**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania, Maryland and California. Prior to joining Barroway Topaz, Ms. Bornstein was an associate at Provost & Umphrey Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice in the areas of ERISA, antitrust and consumer protection.

**NICHOLE BROWNING**, an associate in the firm's San Francisco office, received her B.A. degree from Emory University in 1994 and her J.D. degree from The American University, Washington College of Law in 1997. Ms. Browning attended the Universidad de Chile in Santiago, Chile in 1995, where she studied human rights law. She completed her final year of law school at Emory University School of Law.

Ms. Browning has spent most of her legal career representing plaintiffs in federal securities fraud and corporate governance claims. At Barroway Topaz, Ms. Browning concentrates her practice in the area of shareholders' derivative actions and securities class actions. Ms. Browning is admitted to practice law in California and Georgia and has been admitted to practice before the Ninth and Eleventh Circuit Courts of Appeals, all United States

District Courts in California and the United States District Court for the Northern District of Georgia. Ms. Browning is the co-author of "Private Securities Litigation Reform Act of 1995 (PSLRA) Update," which was a chapter in the *Class Actions ICLE of Georgia* (2002).

**JONATHAN R. CAGAN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Cagan received his undergraduate degree, cum laude, from Temple University. Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals. Mr. Cagan concentrates his practice in the area of securities litigation and specializes in discovery matters.

**MICHELLE A. COCCAGNA**, an associate of the firm, received her law degree from Villanova University School of Law in 2007 and her Bachelor of Science degree, magna cum laude, in Finance and International Business from Villanova University in 2004. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey and the United States District Court for the Eastern District of Pennsylvania. Prior to joining Barroway Topaz, Ms. Coccagna worked as in-house counsel for a financial services firm in New York City. She concentrates her practice in the areas of ERISA and wage and hour litigation.

**JASON CONWAY**, a staff attorney at the firm, received his law degree from the Queensland University of Technology, Australia in 2003, where he was published in the journal of the national plaintiff lawyers' association. While completing his studies, Mr. Conway clerked for a criminal defense firm where he participated in trials and related litigation.

Prior to joining Barroway Topaz, Mr. Conway worked with the Philadelphia law firm of Sheller, Ludwig & Badey, P.C., where he litigated complex class action matters, including tobacco, environmental and product liability cases. Mr. Conway is licensed to practice law in the State of New York and has been admitted to practice before the United States Court of Appeals for the 9th Circuit. Mr. Conway concentrates his practice in the area of FLSA and wage and hour litigation.

**MARK S. DANEK**, an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining Barroway Topaz, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables. He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**JEFFERY S. DAVIDSON**, a staff attorney at the firm, received his law degree, cum laude, from Temple University Beasley School of Law, where he was the Executive Editor of the *Temple Political and Civil Rights Law Review*. Mr. Davidson earned his undergraduate degree in Marketing, with honors, from York College of Pennsylvania in 1993. From 1997-1999, Mr. Davidson clerked for the Honorable Louis C. Bechtle of the United States District Court for the Eastern District of Pennsylvania. Prior to joining the firm, Mr. Davidson was an antitrust and commercial litigation associate with Howrey LLP and served as a consumer protection attorney with the U.S. Federal Trade Commission, including a rotation as an Assistant United States Attorney for the U.S. Department of Justice. He concentrates his practice at Barroway Topaz in the area of securities litigation.

**JONATHAN R. DAVIDSON**, an associate of the firm, is a graduate of The George Washington University where he received his Bachelor of Arts, summa cum laude, in Political Communication. Mr. Davidson received his Juris Doctor and Dispute Resolution Certificate from Pepperdine University School of Law and is licensed to practice law in the state of California. Prior to joining the firm, Mr. Davidson served as In-House Counsel for a real estate development company in Los Angeles.

Mr. Davidson concentrates his practice at Barroway Topaz in the area of securities litigation, working in the firm's business development and portfolio monitoring departments. He consults with firm clients regarding their

rights and responsibilities with respect to their investments and purchases and taking an active role in shareholder and consumer litigation.

**KRISTIN DiBONA**, an associate of the firm, received her law degree from Rutgers School of Law, and her undergraduate degree from the University of Delaware. During law school, Ms. DiBona served as a judicial intern for the Honorable Joseph E. Irenas of the United States District Court for the District of New Jersey and also served as an articles editor for the *Rutgers Journal of Law and Public Policy.* Ms. DiBona is licensed to practice law in Pennsylvania and New Jersey. Ms. DiBona now concentrates her practice in the area of securities litigation.

**DONNA EAGLESON**, a staff attorney at the firm, received her law degree from the University of Dayton School of Law in Dayton, Ohio. Prior to joining Barroway Topaz, Ms. Eagleson worked as an attorney in the law enforcement field, and practiced insurance defense law with the Philadelphia firm Margolis Edelstein. Ms. Eagleson is licensed to practice law in Pennsylvania and concentrates in the area of securities litigation discovery matters.

**JENNIFER L. ENCK**, an associate of the firm, received her law degree, cum laude, from Syracuse University College of Law in 2003 and her undergraduate degree in International Politics from The Pennsylvania State University in 1999. Ms. Enck also received a Masters degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs.

Prior to joining Barroway Topaz, Ms. Enck was an associate with Spector, Roseman & Kodroff, P.C. in Philadelphia, where she worked on a number of complex antitrust, securities and consumer protection cases. Ms. Enck is licensed to practice law in Pennsylvania. She concentrates her practice in the areas of securities litigation and settlement matters.

**JESSE FUCHS-SIMON**, an associate of the firm, received his J.D. from the University of Pennsylvania Law School in 2008. Mr. Fuchs-Simon also received a Business Certificate from the Wharton School of the University of Pennsylvania. He was a Fulbright Scholar and has lived and worked in Latin America and in Spain. Mr. Fuchs-Simon graduated summa cum laude from the University of Pennsylvania. Mr. Fuchs-Simon is licensed to practice law in Pennsylvania and concentrates his practice in the areas of mergers and acquisitions and shareholder derivative actions.

**WARREN GASKILL**, a staff attorney at the firm, received his law degree from the Widener University School of Law, Wilmington, DE and his undergraduate degree from Rutgers, the State University of New Jersey, New Brunswick, NJ. Immediately following law school, Mr. Gaskill served as a law clerk for The Honorable Valerie H. Armstrong, A.J.S.C., New Jersey Superior Court, in Atlantic City, NJ. Prior to joining Barroway Topaz, Mr. Gaskill was an associate at the Atlantic City, NJ based law firm of Cooper, Levenson, April, Neidelman, and Wagenheim PA. Mr. Gaskill concentrates in the area of securities law and is admitted to bar in New Jersey and the U.S. District Court, District of New Jersey.

**ROBERT J. GRAY**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Gray received a Bachelor of Sciences degree from La Salle University with a dual major of Accounting and Finance. Prior to joining Barroway Topaz, Mr. Gray was an associate at a Philadelphia boutique litigation firm practicing in the areas of complex commercial litigation and corporate transactions. Mr. Gray also worked as in-house counsel for a small, publicly-traded holding company. Prior to beginning his law career, Mr. Gray worked as a forensic accountant for six years, conducting a variety of investigations for numerous governmental agencies and law firms. He received his CPA license in 1997. Mr. Gray is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of consumer protection.

**JOHN J. GROSS**, an associate of the firm, received his law degree from Widener University School of Law, and his undergraduate degree from Temple University. Mr. Gross is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the

Ninth Circuit Court of Appeals and the United States Supreme Court. Mr. Gross concentrates his practice in the area of securities litigation.

**MARK K. GYANDOH,** an associate of the firm, received his undergraduate degree from Haverford College and his law degree from Temple University School of Law. While attending law school, Mr. Gyandoh served as the research editor for the *Temple International and Comparative Law Journal*. He also interned as a judicial clerk for the Honorable Dolores K. Sloviter of the U.S. Court of Appeals for the Third Circuit and the Honorable Jerome B. Simandle of the U.S. District Court for New Jersey.

After graduating from law school Mr. Gyandoh was employed as a judicial clerk for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division. Mr. Gyandoh is the author of "Foreign Evidence Gathering: What Obstacles Stand in the Way of Justice?" 15 Temp. Int'l & Comp. L.J. (2001) and "Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to Be Learned from the United States" found in *Redefining Europe* (2005).

Mr. Gyandoh is licensed to practice in New Jersey and Pennsylvania and concentrates in the area of ERISA, antitrust and consumer protection. Mr. Gyandoh litigates ERISA fiduciary breach class actions across the country and was recently part of one of the few trial teams that have ever tried a "company stock" imprudent investment case to verdict in *Brieger et al. v. Tellabs, Inc.,* No. 06-CV-01882 (N.D. Ill.).

**LIGAYA T. HERNANDEZ**, an associate of the firm, received her J.D. and a Health Law Certificate from Loyola University Chicago. While in law school she served as Senior Editor for the *Annals of Health Law Journal*, received the CALI Award for highest grade in Appellate Advocacy, and was on the Dean's List. Ms. Hernandez also served as a judicial extern for the Honorable Mary Anne Mason of the Circuit Court of Cook County, Illinois.

Ms. Hernandez received a Master in Health Services Administration in Health Policy from The George Washington University and a Bachelor of Science degree in Biology from the University of Pittsburgh. She is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Ms. Hernandez concentrates her practice in the areas of mergers and acquisitions and shareholder derivative actions.

**BENJAMIN J. HINERFELD**, an associate at the firm, concentrates his work in securities litigation, representing investors in both class actions and individual actions. Recently, Mr. Hinerfeld has litigated several high profile matters, including *In re Delphi Corp. Sec. Litig.*, No. 06-10026 (GER) (E.D. MI. 2006) and *In re Tyco International, Ltd. Sec. Litig.,* No. 02-1335-B (D.N.H. 2002). He is currently litigating *In re Lehman Bros Sec. Litig.,* No. 08 MD 5523 (LAK) (S.D.N.Y. 2008), *In re Moody's Corp. Sec. Litig.*, No. 07-cv-8375 (SWK), and several individual actions by European institutional investors against Vivendi Universal, S.A.., No. 07-cv-8156 (RJH)(HBP) (S.D.N.Y. 2007).

Mr. Hinerfeld graduated from the University of Pittsburgh School of Law, where he served as Lead Note and Comment Editor of the *Journal of Law and Commerce.* He received his bachelor's degree in philosophy from Vassar College and a master's degree in American History from the University of Texas at Austin. Following law school, Mr. Hinerfeld served as a law clerk for the Hon. Sandra Schultz Newman of the Supreme Court of Pennsylvania. Mr. Hinerfeld is licensed to practice law in Pennsylvania, New York and Delaware. He is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, as well as the United States Courts of Appeals for the Ninth and Eleventh Circuits.

Prior to joining Barroway Topaz, Mr. Hinerfeld worked in a litigation firm in Wilmington, Delaware, where he focused on securities, shareholder derivative and ERISA litigation. Mr. Hinerfeld also worked as a writing consultant at the University of Texas at Austin, and co-authored, with Dr. Sarah Jane Rehnborg and Catherine Fallon, "Investing in Volunteerism: The Impact of Service Initiatives in Selected Texas State Agencies," a report prepared by The RGK Center for Philanthropy and Community Service, LBJ School of Public Affairs.

**JENNIFER L. JOOST**, an associate of the firm, received her law degree, cum laude, from Temple University Beasley School of Law, where she was the Special Projects Editor for the *Temple International and Comparative Law Journal.* Ms. Joost earned her undergraduate degree in History, with honors, from Washington University in St. Louis in 2003. She is licensed to practice in Pennsylvania and New Jersey and admitted to practice before the United States Courts of Appeals for the Second, Fourth, Ninth, and Eleventh Circuits, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. She concentrates her practice at Barroway Topaz in the area of securities litigation.

Ms. Joost has served as an associate on the following matters: *In re Wireless Facilities, Inc.*, No. 04-CV-1589-JAH (NLS) (S.D. Cal.) and *In re ProQuest Inc. Securities Litigation*, No. 2:06-cv-10619 (E.D. Mich.). Additionally, she is currently serving as an associate on the following matters: *In re UBS AG Securities Litigation*, No. 1:07-cv-11225-RJS, currently pending in the United States District Court for the Southern District of New York; *Luther, et al. v. Countrywide Financial Corp.*, No. BC 380698, currently pending in the Superior Court of the State of California, County of Los Angeles; and *In re Citigroup, Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS), currently pending in the United States District Court for the Southern District of New York.

**TARA P. KAO**, an associate of the firm, received her J.D. from Villanova University School of Law, where she was a Managing Editor of Student Works for the *Villanova Law Review.* During law school, she also published an article, titled "They Can Take Your Body But Not Your Soul — Or So You Thought — The Third Circuit's Application of the Turner Standard in Prisoners' Free Exercise Cases," in the *Berkeley Journal of Criminal Law* in December 2005. Ms. Kao received her Bachelor of Science in Business/Finance, with honors, from Carnegie Mellon University. She is licensed to practice law in Pennsylvania and New Jersey, and concentrates her practice in the areas of shareholder derivative actions and mergers and acquisitions.

**D. SEAMUS KASKELA**, an associate of the firm, received his B.S. in Sociology from Saint Joseph's University, his M.B.A. from The Pennsylvania State University, and his law degree from Rutgers School of Law – Camden. Mr. Kaskela is licensed to practice law in Pennsylvania and New Jersey, and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Kaskela works in the firm's case development department.

**SHANNON O. LACK**, an associate of the firm, received her law degree from the University of Pittsburgh School of Law and her undergraduate degree in International Relations and French from Bucknell University. While a law student, Ms. Lack served as a judicial clerk for the Honorable Max Baer of the Supreme Court of Pennsylvania. She also served as a Managing Editor of the University of Pittsburgh *Journal of Law and Commerce*. Ms. Lack has authored "Civil Rights for Trafficked Persons: Recommendations for a More Effective Federal Civil Remedy," University of Pittsburgh School of Law, *Journal of Law and Commerce*, Vol. 26 (2007). Ms. Lack is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice in the areas of ERISA and consumer protection litigation.

**RONALD G. LOPIT II**, an associate of the firm, received his Juris Doctor degree from Villanova University School of Law and graduated cum laude with a Bachelor of Arts in Politics from The Catholic University of America. Mr. Lopit has focused his career as an attorney in the areas of complex commercial litigation, including class action antitrust litigation and securities fraud. He is licensed to practice law in the State of New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey. Presently, Mr. Lopit concentrates his practice in the areas of consumer protection and antitrust litigation.

**TARYN LUCIANI**, a staff attorney at the firm, graduated cum laude from the University of Seton Hall, School of Law in 2006, where she was the Student Director for the *Legislative Bureau Journal* and was the recipient of the Mary Franzese Humanitarian Achievement Award. During law school, Ms. Luciani worked with the Hudson County Prosecutor's Office and interned at the United States Attorney's Office. Prior to joining Barroway Topaz, Ms. Luciani worked with the law firm of Pepper Hamilton, LLP, where she represented lenders and borrowers in secured and unsecured financing transactions and provided advice to financial institutions on regulatory issues.

Ms. Luciani is licensed to practice law in New Jersey and Pennsylvania and concentrates in the area of Securities Fraud Litigation.

**JAMES A. MARO, JR.**, an associate of the firm, received his law degree from the Villanova University School of Law in 2000. He received a B.A. in Political Science from the Johns Hopkins University in 1997. Mr. Maro is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of ERISA, antitrust and consumer protection and also has experience in the areas of mergers and acquisitions and shareholder derivative actions.

**LISA A. McNEELEY**, a staff attorney at the firm, received her law degree from Temple University Beasley School of Law in 2008. She received her Bachelor of Arts in Sociology from the University of Pennsylvania in 2003. Ms. McNeeley is licensed to practice law in Pennsylvania and New Jersey, and concentrates her practice in the area of securities litigation.

**JAMES H. MILLER**, an associate of the firm, received his J.D. in 2005 from Villanova University School of Law, where he was enrolled in Villanova University's JD/MBA program. Mr. Miller received his Master of Business Administration from Villanova University in 2005, and received his Bachelor of Chemical Engineering from Villanova University in 2002. Mr. Miller is licensed to practice law in Pennsylvania and concentrates his practice in the areas of mergers and acquisitions and shareholder derivative actions.

**PETER A. MUHIC**, an associate of the firm, has substantial trial experience involving complex actions in federal and state courts throughout the country. In 2009, Mr. Muhic was co-lead trial counsel in one of the few class action ERISA cases ever to be tried, which involved claims against the fiduciaries of the 401k plan of an S&P 500 company for imprudent investment in company stock and misrepresentations to plan participants. In addition to his significant trial recoveries, he has successfully resolved numerous actions through arbitrations and mediations in an array of forums. Mr. Muhic currently prosecutes class actions and/or collective actions concerning the FLSA, ERISA, FHA, ECOA and numerous state consumer protection statutes and laws.

Prior to joining Barroway Topaz Kessler Meltzer and Check, Mr. Muhic was a senior member of a prominent national firm based in Philadelphia. Mr. Muhic graduated from Syracuse University and graduated with honors from the Temple University School of Law, where he was Managing Editor of the *Temple Law Review* and also was a member of the Moot Court Board. He is licensed to practice law in Pennsylvania and New Jersey and also is admitted to practice before the United States Courts of Appeals for the Third and Fifth Circuits, the United States District Courts for the Eastern and Middle Districts of Pennsylvania and the District Court of New Jersey.

Mr. Muhic serves on the Board of Directors of the Senior-LAW Center in Philadelphia, a nonprofit organization dedicated to protecting the rights and interests of senior citizens in need. He also serves as a Judge Pro Tem for the Court of Common Pleas of Philadelphia County.

**CASANDRA A. MURPHY**, an associate of the firm, received her law degree from Widener University School of Law and her undergraduate from Gettysburg College. Prior to joining Barroway Topaz, Ms. Murphy was an associate at Post & Schell, P.C. where she practiced general casualty litigation. Ms. Murphy is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United State District Court for the Eastern District of Pennsylvania. Ms. Murphy has lectured for the Pennsylvania Bar Institute and the Philadelphia Judicial Conference. She concentrates her practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust litigation.

**CHRISTOPHER L. NELSON**, an associate of the firm, received his law degree from Duke University School of Law in 2000, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis in 1997.

Prior to joining Barroway Topaz, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator. Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Ninth, and Eleventh Circuits, and the United States District Court for the Eastern District of Pennsylvania.

Mr. Nelson has litigated in federal district and appellate courts across the country in numerous actions that have resulted in significant monetary recoveries, including: *Johnson v. Aljian et al.*, 394 F. Supp. 2d 1184 (C.D. Cal. 2004) (lead counsel, successfully argued opposition to defendants' motion to dismiss in insider trading case), 490 F.3d 778 (9th Cir. 2007) (successfully drafted and argued opposition to defendants' appeal before Ninth Circuit), cert. denied, 2008 U.S. LEXIS 2481 (U.S. Mar. 17, 2008). Class certified February 13, 2009, over defendants' opposition; *Safron Capital Corp. v. Leadis Tech., Inc. (In re Leadis Tech. Inc. Sec. Litig.*), No. 06-15623, 274 Fed. Appx. 540; 2008 U.S. App. LEXIS 8699 (9th Cir. 2008) (lead counsel, successfully appealed decision of District Court granting motion to dismiss, $4,200,000 recovery), cert. denied, 2009 U.S. LEXIS 1778 (U.S. Mar. 6, 2009); *Cent. Laborers Pension Fund v. Merix Corp. (In re Merix Corp. Sec. Litig.),* No. 06-35894, 275 Fed. Appx. 599; 2008 U.S. App. LEXIS 9073 (9th Cir. 2008) (lead counsel, successfully appealed decision of District Court granting motion to dismiss), cert. denied, 2008 U.S. LEXIS 9162 (U.S. Dec. 15, 2008); *Kaltman v. Key Energy Servs. (In re Key Energy Sec. Litig.)*, 447 F. Supp. 2d 648 (W.D. Tex. 2006) (lead counsel, $15,425,000 recovery); *In re Martek Biosciences Sec. Litig.*, No. MJG-05-122 4 (D.Md. June 14, 2006) (co-lead counsel, $6,000,000 recovery); *Brody v. Zix. Corp.*, No. 3-04-CV-1931-K, 2006 U.S. Dist. LEXIS 69302 (N.D.Tex. Sept. 26, 2006) (co-lead counsel, $5,600,000 recovery); *In re NUI Sec. Litig.*, 314 F. Supp. 2d 388 (D.N.J. 2004) (lead counsel, $3,500,000 recovery).

**MICHELLE M. NEWCOMER**, an associate of the firm, received her law degree from Villanova University School of Law in 2005. Ms. Newcomer received her undergraduate degrees in Finance and Art History from Loyola College in Maryland in 2002. Throughout her legal career, Ms. Newcomer has concentrated her practice in the area of securities litigation, representing individual and institutional investors and helping them to recover millions against corporate and executive defendants for violations of the federal securities laws. In this respect, Ms. Newcomer helped secure the following recoveries for investors: *In re Tenet Healthcare Corp. Sec. Litig.*, No. 02-8462 (C.D. Cal.) (settled – $281.5 million); *In re Acclaim Entertainment, Inc. Sec. Litig.*, No. 2:03-CV-1270 (JS) (ETB) (E.D.N.Y.) (settled – $13.65 million); *In re Zale Corp. Sec. Litig.*, No. 3:06-CV-01470-N (settled – $5.9 million); and *In re Leadis Tech., Inc. Sec. Litig.*, No. C-05-0882-CRB (N.D. Cal.) (settled – $4.2 million). Ms. Newcomer is also currently involved in several high profile securities fraud suits, including: *In re Lehman Brothers Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK) (S.D.N.Y.) and *In re SemGroup Energy Partners, L.P. Sec. Litig.*, No. 08-MD-1989-GFK-FHM (N.D. Olka.).

Ms. Newcomer is licensed to practice law in the Commonwealth of Pennsylvania and the State of New Jersey and has been admitted to practice before the Supreme Court of the United States, the United States Court of Appeals for the Ninth and Tenth Circuits, and the United States District Court for the District of New Jersey.

**SHARAN NIRMUL**, an associate of the firm, focuses on securities and corporate governance litigation. He has represented investors successfully in major securities fraud litigation including financial frauds involving Global Crossing Ltd, Qwest Communications International, WorldCom Inc., Delphi Corp., Marsh and McLennan Companies, Inc. and Able Laboratories. Mr. Nirmul has also represented shareholders in derivative and direct shareholder litigation in the Delaware Chancery Court and in other state courts around the country. Prior to joining the firm, Mr. Nirmul was associated with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

Sharan Nirmul received his law degree from The George Washington University Law School (J.D. 2001) where he served as an articles editor for the *Environmental Lawyer Journal* and was a member of the Moot Court Board. He was awarded the school's Lewis Memorial Award for excellence in clinical practice. He received his undergraduate degree from Cornell University (B.S. 1996).

Mr. Nirmul is admitted to practice law in the state courts of New York, New Jersey, Pennsylvania and Delaware and in the U.S. District Courts for the Southern District of New York, District of New Jersey, District of Delaware, and District of Colorado.

**ERIK PETERSON**, an associate in the firm's San Francisco office, received his Bachelor of Arts from James Madison University and his Master of Public Administration, concentrating in public finance, with honors, from the University of Kentucky. Mr. Peterson graduated cum laude from the University of Kentucky College of Law, where he was Editor-in-Chief of the *Journal of Natural Resources and Environmental Law*. There he received the CALI Award in Federal Taxation and authored Navigating the Waters of Informational Standing in *American Canoe Ass'n, Inc. v. City of Louisa*, 20 J. Nat. Resources & Envtl. L. 291 (2006).

During law school, Mr. Peterson served as Judicial Intern to United States District Court Judge T.S. Ellis, III, Eastern District of Virginia. Following law school, Mr. Peterson served as Law Clerk to United States District Court Judge Gregory F. Van Tatenhove, Eastern District of Kentucky. Prior to joining the firm, Mr. Peterson was associated with Coughlin Stoia Geller Rudman & Robbins LLP in San Diego, California.

Mr. Peterson concentrates his practice on prosecuting securities class actions. He is licensed to practice in California and Kentucky and is admitted to practice before all United States District Courts in California, as well as the United States Court of Appeals for the Sixth Circuit, and is also a member of the firm's lead plaintiff litigation practice group.

**DAVID PROMISLOFF**, an associate of the firm, received his law degree from the University of Michigan in 2005. While in law school, he served as an associate editor of the *Michigan Telecommunications and Technology Law Review*. Mr. Promisloff received his undergraduate degree from Emory University in 2002, double majoring in political science and history. Mr. Promisloff is licensed to practice in Pennsylvania, and works in the firm's case development department.

**KAREN E. REILLY**, an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut. Prior to joining Barroway Topaz, Ms. Reilly practiced at Pelino & Lentz, P.C., in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

In addition to actively litigating and assisting in achieving the historic Tyco settlement, Ms. Reilly has also served as litigation associate in the following settled cases in which Barroway Topaz has served as lead or co-lead counsel: *In re Liberate Technologies Sec. Litig.,* No. C-02-5017 (N.D. Cal. 2005) (settled - $13.8 million); *In re Vodafone Group, PLC Sec. Litig.*, 02-CV-7592 (S.D.N.Y. 2002) (settled – $24.5 million); *In re Check Point Technologies Ltd. Sec. Litig.*, 03-CV-6594 (S.D.N.Y. 2003) (settled – $13 million); *In re Cornerstone Propane Partners LP Sec. Litig.,* 03-CV-2522 (N.D. Cal. 2003) (settled – $13.5 million); *In re CVS Corporation Sec. Litig.,* C.A. No. 01-11464 JLT (D.Mass. 2001) (settled – $110 million); and *In re ProQuest Company Sec. Litig.*, No. 2:06-CV-10619 (E.D. Mich. 2006) (settled - $20 million).

**STEVEN D. RESNICK**, an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, cum laude, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining Barroway Topaz, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick is active in the American Association for Justice and serves on the

Board of Governors of the New Lawyers Division. Mr. Resnick has broad experience in Mass Tort litigation and now concentrates his practice in the area of securities litigation.

**EMILY B. RUBIN**, an associate of the firm, received her J.D. from Villanova University School of Law. Ms. Rubin received her Bachelor of Arts in Psychology, with honors, from The George Washington University in 2005. She is licensed to practice law in Pennsylvania and New Jersey, and concentrates her practice in the area of securities litigation.

**RICHARD A. RUSSO, JR.**, an associate of the firm, received his J.D. from the Temple University Beasley School of Law, cum laude, where he was a member of the *Temple Law Review*. Mr. Russo received his Bachelor of Science in Business Administration, cum laude, from Villanova University. He is licensed to practice law in Pennsylvania and New Jersey, and concentrates his practice in the area of securities litigation.

**JULIE SIEBERT-JOHNSON**, an associate of the firm, received her law degree from Villanova University School of Law in 2008. She graduated cum laude from the University of Pennsylvania in 2003. Ms. Siebert-Johnson is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice in the area of ERISA and consumer protection litigation.

**BHARATI O. SHARMA**, an associate of the firm, received her law degree from the American University Washington College of Law, where she was a member of American University's *International Law Review*. Ms. Sharma also received a Master of Public Administration, with honors, from The George Washington University, and her undergraduate degree from the University of Pittsburgh. Following law school, Ms. Sharma clerked for the Honorable Stephen Skillman, Superior Court of New Jersey, Appellate Division. She is the founder and former President of the South Asian Bar Association of Philadelphia. Ms. Sharma has also served on the Executive Committees of the North American South Asian Bar Association and the Philadelphia Bar Association Young Lawyer's Division. Prior to joining Barroway Topaz, Ms. Sharma practiced complex civil litigation at a Philadelphia law firm. She now concentrates her practice in the area of securities litigation.

**BENJAMIN J. SWEET**, an associate of the firm, received his juris doctor, cum laude, from The Dickinson School of Law of the Pennsylvania State University, and his BA, cum laude, from the Shreyers Honors College of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the *Dickinson Law Review*, and was also awarded Best Oral Advocate and Best Team in the ATLA Mock Trial Competition.

Mr. Sweet concentrates his practice exclusively in the area of securities litigation and has helped obtain significant recoveries on behalf of class members in several nationwide federal securities class actions, including *In re Tyco, Int'l Sec. Litig.*, No. 02-1335-B (D.N.H.) ($3.2 billion total recovery for class members), *In re CVS, Inc. Sec. Litig.*, No. 01-11464-JLT (D. Mass.) ($110 million recovery for class members), *In re PNC Fin. Svcs. Group Inc. Sec. Litig.*, No. 02-CV-271 (W.D. Pa.) ($39 million recovery for class members) and *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04-cv-01589, (S.D. Ca.) ($12 million recovery for class members).

Mr. Sweet is actively litigating several nationwide federal securities class actions, including *In re Thornburg Mortgage, Inc. Sec. Litig.*, 1:07-cv-00815-JB-WDS (D.N.M.), *In re Pfizer Inc. Sec. Litig.* No. 04-Civ 9866 (LTS) (S.D.N.Y.), *In re NeuroMetrix Inc. Sec. Litig.*, No. 08-cv-10434-RWZ (D. Mass.) and *In re Citigroup Inc. Bond Litigation*, No. 08-Civ-9522 (SHS), (S.D.N.Y.).

Prior to joining Barroway Topaz, Mr. Sweet practiced with Reed Smith LLP in Pittsburgh, where he specialized in complex civil litigation. Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania, and the United States Courts of Appeals for the Second, Third and Ninth Circuits.

Honors include being selected by his peers as a Pennsylvania Super Lawyers Rising Star for 2008, a distinction bestowed on no more than 2.5% of Pennsylvania lawyers annually.

**KATRICE A. TAYLOR**, a staff attorney at the firm, received her law degree from the University of Richmond School of Law. She received her undergraduate degree from The Johns Hopkins University. During law school, Ms. Taylor practiced as an intern in the office of the United States Attorney for the Eastern District of Virginia, where she represented the United States in matters before the District Court. She also practiced in the University of Richmond Children's Law Center Disability Clinic. Prior to joining Barroway Topaz, Ms. Taylor practiced in the areas of real estate and construction litigation. Ms. Taylor is licensed to practice law in Pennsylvania and concentrates in the area of securities litigation.

**AMANDA R. TRASK**, an associate with the firm, received her law degree from Harvard Law School and her undergraduate degree, cum laude, from Bryn Mawr College, with honors in Anthropology. She is licensed to practice law in Pennsylvania and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Prior to joining Barroway Topaz, she worked as an associate at a Philadelphia law firm where she represented defendants in consumer product litigation. Ms. Trask has served as an advocate for children with disabilities and their parents and taught special education law. She currently serves on the Board of the Bryn Mawr College Club of Philadelphia. She concentrates her practice in the areas of ERISA, consumer protection and stockholder derivative actions.

**NEENA VERMA**, an associate of the firm, received her law degree, magna cum laude, from Rutgers School of Law – Camden, where she was the Executive Editor of the Rutgers Journal of Law and Public Policy. While a law student, Ms. Verma served as a Judicial Extern to the Honorable Barry T. Albin of the New Jersey Supreme Court and as a Judicial Pupil at the United Kingdom Information Tribunal. She earned dual degrees, cum laude, at the University of Pennsylvania, receiving a Bachelor of Arts in Architecture and a Bachelor of Science in Economics from the Wharton School. Ms. Verma is licensed to practice in the District of Columbia, New Jersey and Pennsylvania and concentrates her practice in the area of securities litigation.

**MICHAEL C. WAGNER**, an associate of the firm, received his undergraduate degree in Government from Franklin & Marshall College, and his law degree from the University of Pittsburgh School of Law in 1996. Mr. Wagner is licensed to practice law in Pennsylvania, and he has been admitted to practice in the United States Court of Appeals for the Third Circuit, and United States District Courts for the Eastern Western Districts of Pennsylvania, for the Eastern District of Michigan, and for the District of Colorado.

Before joining Barroway Topaz, Mr. Wagner worked at Rubin, Fortunato & Harbison, a boutique law firm in Paoli, PA, representing Fortune 100 corporations, as well as individuals and small businesses, in employment matters across the country. Mr. Wagner earlier worked for several years at Spector, Gadon & Rosen, in Philadelphia, concentrating his practice in complex commercial and corporate litigation. At Barroway Topaz, Mr. Wagner focuses his practice in the area of shareholder derivative litigation.

**JOSEPH A. WEEDEN**, an associate of the firm, received his law degree from the University of North Carolina School of Law, where he received the Gressman-Politt Award for outstanding oral advocacy. Mr. Weeden also received his undergraduate degree from the University of North Carolina at Chapel Hill, where he was a Joseph E. Pogue Scholar. Prior to joining the firm, Mr. Weeden was an associate at Kaufman & Canoles, P.C., where he practiced in the areas of commercial and business law. Mr. Weeden is licensed to practice law in Virginia, and concentrates his practice in the area of ERISA and consumer protection litigation.

**KURT WEILER**, a staff attorney at the firm, received his law degree from Duquesne University School of Law, where he was a member of the Moot Court Board and McArdle Wall Honoree. He received his undergraduate degree from the University of Pennsylvania.

Prior to joining Barroway Topaz, Mr. Weiler was associate corporate counsel for a Philadelphia-based mortgage company, where he specialized in the area of foreclosures and bankruptcy. Mr. Weiler is licensed to practice law in Pennsylvania and currently concentrates his practice in the area of securities litigation.

**GERALD D. WELLS, III**, an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the *Environment Law & Technology Journal*. He is licensed to practice in Pennsylvania, New Jersey and California. Mr. Wells has also been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District Court of New Jersey, Southern, Eastern and Central Districts of California, and the Eastern District of Michigan. In addition, he is admitted to practice before the United States Court of Appeals for the Eighth, Ninth, and Eleventh Circuits. Mr. Wells concentrates his practice in the areas of antitrust, ERISA, consumer protection, and wage and hour litigation and has helped obtain several multi-million dollar settlements on behalf of class members. Mr. Wells has spoken at several conferences on the topics of ERISA class actions and fiduciary liability.

**TERENCE S. ZIEGLER**, an associate of the firm, received his law degree from the Tulane University School of Law and received his undergraduate degree from Loyola University. He has concentrated a significant percentage of his practice to the investigation and prosecution of pharmaceutical antitrust actions, medical device litigation, and related anticompetitive and unfair business practice claims. Specific examples include: *In re Flonase Antitrust Litigation; In re Wellbutrin SR Antitrust Litigation; In re Modafinil Antitrust Litigation; In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (against manufacturers of defective medical devices — pacemakers/implantable defibrillators — seeking costs of removal and replacement); and *In re Actiq Sales and Marketing Practices Litigation* (regarding drug manufacturer's unlawful marketing, sales and promotional activities for non-indicated and unapproved uses).

Mr. Ziegler is licensed to practice law in the State of Louisiana, and has been admitted to practice before several courts including the United States Court of Appeals for the Third Circuit.

## OF COUNSEL

**LAUREN WAGNER PEDERSON**, of Counsel to the firm, received a B.S. degree in Business Administration from Auburn University. She launched her legal career after working in sales and marketing for Fortune 500 companies such as Colgate-Palmolive Company and earned her J.D., summa cum laude, from the Cumberland School of Law where she was Associate Editor of the *Cumberland Law Review*. Lauren served as Law Clerk to the Honorable Joel F. Dubina for the United States Court of Appeals for the Eleventh Circuit and currently is enrolled at Georgetown University Law Center in the Securities and Financial Regulation LL.M. program.

In her practice, Lauren serves as counsel to public pension funds, shareholders and companies in a broad range of complex corporate securities and corporate governance litigation. She has represented individuals and institutional investors in many high profile securities class actions and other actions in state and federal courts. She has represented the Ohio Public Retirement Systems in securities fraud actions arising out of the collapse of Enron Corp. and WorldCom, Inc. and represented three institutional investors as lead plaintiffs in a groundbreaking case against Oxford Health Plans, Inc. that resulted in a $300 million settlement. In addition, Lauren has litigated accounting and legal malpractice actions and recently recovered a judgment in Delaware federal court on behalf of Trust Company of the West in a legal malpractice action arising out of an international private equity transaction. She also has successfully argued and defended appeals before the Court of Appeals for the Eleventh Circuit and has represented individuals and companies in securities arbitrations before the NASD and New York Stock Exchange. Currently, Lauren is heavily involved in the firm's cases related to the subprime mortgage crisis, including cases pending against Countrywide Financial Corporation and IndyMac Bancorp, Inc.

Lauren also is a certified mediator and a member of the State Bars of New York, Delaware, Maryland, Georgia and Alabama and is admitted to practice in numerous federal courts. She also has been an Adjunct Professor of Law at the Widener University School of Law in Wilmington, Delaware, teaching a securities litigation seminar.

**DONNA SIEGEL MOFFA**, of Counsel to the firm, received her law degree, with honors, from Georgetown University Law Center in May 1982. She received her undergraduate degree, cum laude, from Mount Holyoke College in Massachusetts. Ms. Siegel Moffa is admitted to practice before the Third Circuit Court of Appeals, the United States Courts for the District of New Jersey and the District of Columbia, as well as the Supreme Court of

New Jersey and the District of Columbia Court of Appeals. Prior to joining the firm, Ms. Siegel Moffa was a member of the law firm of Trujillo, Rodriguez & Richards, LLC, where she litigated, and served as co-lead counsel, in complex class actions arising under federal and state consumer protection statutes, lending laws and laws governing contracts and employee compensation. Prior to entering private practice, Ms. Siegel Moffa worked at both the Federal Energy Regulatory Commission (FERC) and the Federal Trade Commission (FTC). At the FTC, she prosecuted cases involving allegations of deceptive and unsubstantiated advertising. In addition, both at FERC and the FTC, Ms. Siegel Moffa was involved in a wide range of administrative and regulatory issues including labeling and marketing claims, compliance, FOIA and disclosure obligations, employment matters, licensing and rulemaking proceedings.

Ms. Siegel Moffa continues to concentrate her practice in the area of consumer protection litigation. She served as co-lead counsel for the class in *Robinson v. Thorn Americas, Inc.*, L-03697-94 (Law Div. 1995), a case that resulted in a significant monetary recovery for consumers and changes to rent-to-own contracts in New Jersey. Ms. Siegel Moffa was also counsel in *Muhammad v. County Bank of Rehoboth Beach, Delaware,* 189 N.J. 1 (2006), U.S. Sup. Ct. cert. denied, 127 S. Ct. 2032(2007), in which the New Jersey Supreme Court struck a class action ban in a consumer arbitration contract. She has served as class counsel representing consumers pressing TILA claims, e.g. *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540 (D.N.J. 1999), and *Dal Ponte v. Am. Mortg. Express Corp.*, CV- 04-2152(D.N.J. 2006), and has pursued a wide variety of claims that impact consumers and individuals including those involving predatory and sub-prime lending, mandatory arbitration clauses, price fixing, improper medical billing practices, the marketing of light cigarettes and employee compensation. Ms. Siegel Moffa's practice has involved significant appellate work representing individuals, classes, and non-profit organizations participating as amicus curiae, such as the National Consumer Law Center and the AARP. In addition, Ms. Siegel Moffa has regularly addressed consumer protection and litigation issues in presentations to organizations and professional associations. Ms. Siegel Moffa is a member of the New Jersey State Bar Association, the Camden County Bar Association, the District of Columbia Bar Association, the National Association of Consumer Advocates and the Public Justice Foundation.

## CONSULTANTS

**KEVIN P. CAULEY** serves as an institutional liaison at the firm. Mr. Cauley has extensive experience working with public and Taft-Hartley pension funds regarding their rights and responsibilities with respect to their investments and purchases and taking an active role in shareholder and consumer litigation. In addition, Mr. Cauley assists clients in evaluating what systems they have in place to identify and monitor shareholder and consumer litigation that has an effect on their funds, and also assists them in evaluating the strength of such cases and to what extent they may be affected by alleged misconduct.

Mr. Cauley, a graduate of Temple University, also has prior experience at a multi-family office, in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania. He is also an active member of The Pennsylvania Future Fund, A.O.H. Division 88 "Officer Danny Boyle Chapter," The Clover Club of Philadelphia, The Foreign Policy Research Institute, The Princeton Committee on Foreign Relations, and is an elected member to The Pennsylvania Society and The Union League of Philadelphia, where he serves on the Armed Services Committee.

**PETER KRANEVELD**, an advisor to the firm, works with Barroway Topaz to analyze and evaluate corporate governance issues, shareholder rights and activism and how these fit into the interests of the firm's large international client base of pension funds and other institutional investors. An economist by training, Mr. Kraneveld has a long history of working with pension funds and other institutional shareholders. He recently completed an eight year stint working with Dutch pension fund PGGM, a public pension fund for the healthcare sector in the Netherlands, and one of the largest pension funds in Europe. Mr. Kraneveld's last three years at PGGM were spent as a Special Advisor for International Affairs where his main responsibilities included setting up a network among national and international lobbying organizations, domestic and foreign pension funds and

international civil servants and using it to promote the interests of the pension fund industry. Mr. Kraneveld served as Chief Economist for PGGM's Investments Directorate from 1999 until 2004 where his accomplishments included the Tactical Asset Allocation process and designing alternative scenarios for Asset Liability Management. Prior to his work with PGGM, Mr. Kraneveld worked with the Organisation for Economic Co-operation and Development (OECD) and the Dutch Ministry of Economic Affairs.

**DAVID RABBINER** serves as Barroway Topaz's Director of Investigative Services and leads investigations necessary to further and strengthen the firm's class action litigation efforts. Although his investigative services are primarily devoted to securities matters, Mr. Rabbiner routinely provides litigation support, conducts due diligence, and lends general investigative expertise and assistance to the firm's other class action practice areas. Mr. Rabbiner plays an integral role on the firm's legal team, providing critical investigative services to obtain evidence and information to help ensure a successful litigation outcome. Before joining Barroway Topaz, Mr. Rabbiner enjoyed a broad based, successful career as an FBI Special Agent, including service as an Assistant Special Agent in Charge, overseeing multiple criminal programs, in one of the Bureau's largest field offices. He holds an A.B. in English Language and Literature from the University of Michigan and a Juris Doctor from the University of Miami School of Law.

**EXHIBIT C**



29 South Main Street    Phone  860.493.6292
Suite 215    Fax  860.493.6290
West Hartford CT  06107    www.izardnobel.com

## RESUME OF IZARD NOBEL LLP

Izard Nobel LLP is one of the premier firms engaged in class action litigation on

behalf of investors alleging misrepresentations in connection with the purchase or sale of

securities.  We are or have been lead or primary counsel in many large securities or

ERISA class actions, including cases against AT&T, AOL Time Warner, Merck, Dell,

John Hancock and Tyco International.  In the securities fraud class action against

Campbell Soup Company, we represented the pension funds of the State of Connecticut

as lead plaintiff.  We settled the securities fraud class action on behalf of investors in

Smallworldwide plc, for over 85% of the total losses claimed by class members.

Izard Nobel LLP (f/k/a Schatz Nobel Izard, P.C. or Schatz & Nobel, P.C.) has

been formally appointed by many courts as lead counsel or co-lead counsel for investors

in securities class actions, including Papanikolaou v. Value-Added Communications, et

al., No. 3-95CV0346-H (N.D. Tex.), Gorga v. Uniroyal Chemical Corporation et al., No.

CV-96-0132014-S (Conn. Super.); David v. Simware, Inc. et al., No. 96/602143 (N.Y.

Sup.), Butler et al. v. Northstar Health Services, Inc. et al., No. 96-701 (W.D. Pa.), Allen,

et al v. Johansson, et al., 397CV02172 (RNC) (D. Conn.), Feiner v. SS&C Technologies,

Inc. et al., 397CV0656 (D. Conn.), Berti, et al. v. Videolan Technologies, Inc., et al.,

No.3:97CV296H (W.D. Ky.), Ganino, et al v. Citizens Utilities Company, et al., No.

398CV00480 (JBA) (D. Conn.), Bunting, et al v. HealthCor Holdings, Inc., et al., No.

398CV0744-D (N.D. Tex.), Hirsch, et al. v. PSS World Medical, Inc., et al., No. 98 502

Civ. J20A (M.D. Fla.), <u>Kenneth Blau, et al v. Douglas Murphy, et al.</u>, No. H 99 0535

(S.D. Tex.), <u>Angres v. Smallworldwide plc</u>, No. 99-K-1254 (D. Colo.), <u>In re Complete</u>

<u>Management, Inc. Sec. Litig.</u>, No. 99 Civ. 1454 (S.D.N.Y.), <u>Allain Roy v. dElia*s, Inc.,</u>

<u>et al.</u>, No. 99 Civ. 3951 (JES) (S.D.N.Y.), <u>Russo, et al v. KTI, Inc., et al.</u>, No. 99-1780

(JAG) (D.N.J.); <u>Laborers Local 1298 Pension Fund v. Campbell Soup Company, et al.</u>,

No. 00-152 (JEI) (D.N.J.); <u>Hart v. Internet Wire, et al.</u>, No. 00 Civ. 6571 (S.D.N.Y.),

<u>Ottmann v. Hanger Orthopedic Group, Inc., et al.</u>,  Civil Action No. AW 00CV3508 (D.

Md.), <u>In re PolyMedica Corp. Sec. Litig.</u>, No. 00-12426-REK (D. Mass.), <u>Karl L. Kapps,</u>

<u>et al. v. Torch Offshore, Inc., et al.</u>, Case No. 02-CV-0582 (E.D. La), <u>In re Cable and</u>

<u>Wireless, PLC, Sec. Litig.</u>, Civil Action No. 02-1860 (E.D. Va), <u>In re Alloy, Inc. Sec.</u>

<u>Litig.</u>, Case No. 03-CV-1597 (S.D.N.Y.), <u>In re Surebeam Corporation Sec. Litig.</u>, Case

No. 03-CV-1721 (S.D. Cal.); <u>In re Primus Telecommunications Group, Inc. Sec. Litig.</u>,

Master Case No. 04-970-A (E.D. Va.); <u>In re Netopia Sec. Litig.</u>, Case No. C 04-3364

(N.D. Cal); <u>Malasky v. IAC/InterActive Corp., et al.</u>, Case No. 04-CV-7447 (S.D.N.Y.);

<u>In re Supportsoft, Inc. Sec. Litig.</u>, C 04-5222 SI (N.D.Cal.); <u>Berson v. Applied Signal</u>

<u>Technology Inc. et al</u>, 4:05-cv-01027-SBA (N.D.Cal.); <u>The Cornelia I. Crowell GST</u>

<u>Trust v. Pemstar, Inc. et al.</u>, 05-CV-1182 (D. MN); <u>UFCW Local 880 Retail Food</u>

<u>Employers Joint Pension Fund v. Newmont Mining Corp. et al.</u>, No. 05-CV-01046 (D.

Colo.); <u>Aviva Partners v. Exide Technologies et al.</u>, 3:05-CV-03098 (D. NJ); <u>In re</u>

<u>Veritas Software Corp. Sec. Litig.</u>, No. 04-831 (D. Del.); <u>In re Ionatron, Inc. Sec. Litig.</u>,

Case No. 06-354 (D. AZ); <u>In re FX Energy, Inc. Securities Litigation.</u>, 2:07-CV-00874

(D. UT); <u>Melms v. Home Solutions of America et al.</u>, Civil Action No. 3:07-CV-1961-N

(N.D. Tex.); <u>In re: McDermott International, Inc. Sec. Litig.</u>,  1:08-cv-09943-DC

(S.D.N.Y 2008); <u>Desai v. Bucksbaum, et al.,</u> No. 09-CV-487 (N.D. IL.); and <u>Bauer v. Prudential, Inc., et al.,</u> 09-cv-1120 (JLL) (D.NJ).

We have also been responsible for many important decisions which have advanced the cause of shareholder protection through the federal securities laws, including in <u>Ganino, et al v. Citizens Utilities Company, et al,</u> 228 F.3d 154 (2d Cir. 2000), <u>In re Campbell Soup Sec. Litig.,</u> 145 F. Supp.2d 574 (D.N.J. 2001), <u>In re Complete Management, Inc. Sec. Litig.,</u> 153 F.Supp. 2d 314 (S.D.N.Y. 2001), <u>Angres v. Smallworldwide, plc,</u> 94 F. Supp.2d 1167 (D. Colo. 2000); <u>Feiner v.S&C Technologies, Inc.,</u> 47 F. Supp.2d 250 (D. Conn. 1999) and <u>Berson v. Applied Signal Technology Inc. et al.,</u> 527 F.3d 982 (9th Cir. 2008).

In ERISA cases, Izard Nobel has been formally appointed as sole or co-lead counsel in <u>Overby v. Tyco International, Ltd.,</u> No. 02-CV-1357-B (D.N.H.); <u>In re Reliant Energy ERISA Litig..,</u> No. H-02-2051 (S.D. Tex.); <u>In re AOL Time Warner, Inc. Sec. and ERISA Litig.,</u> MDL Docket No. 1500 (S.D.N.Y.); <u>Furstenau v. AT&T,</u> Case No. 02 CV 8853 (D.N.J.); <u>In re AEP ERISA Litig.,</u> Case No. C2-03-67 (S.D.Ohio); <u>Pettit v. JDS Uniphase Corporation,</u> Civil Action No. 03-4743-CW (N.D.Cal.); <u>In re Sprint Corporation ERISA Litig.,</u> Master File No. 2:03-cv-02202-JWL (D.Kan.); <u>In re Cardinal Health, Inc. ERISA Litig.,</u> Case No. C 2-04-642 (S.D.Ohio); <u>Spear v. Hartford Fin. Svcs Group, Inc.,</u> No. 04-1790 (D.Conn.); <u>In re Merck & Co., Inc. Securities, Derivative and ERISA Litig.,</u> MDL No. 1658 (D.N.J.); <u>In re Diebold ERISA Litig.</u> No.5:06-CV- 0170 N.D.Ohio; <u>In re Bausch & Lomb, Inc. ERISA Litig.,</u> Master File No. 06-CV-6297-MAT-MWP (W.D.N.Y.); <u>In re Dell, Inc. ERISA Litig.,</u> Case No. 06-CA-758-SS (W.D. Tex.); and <u>In re First American Corp. ERISA Litigation,</u> SA-CV07-1357 (C.D.Cal.); and to the

Steering Committee in Tittle v. Enron Corp., No. H-01-3913 (S.D. Tex.); In re Electronic
Data Systems ERISA Litig., 3:02-cv-1323 (E.D.Tex.); In re Marsh ERISA Litig., Master
File No. 04 cv 8157 (S.D.N.Y.); In re Hartford Fin. Svcs Group. Inc. ERISA Litig., No.
08-1708 (D.Conn.); and In re Merck & Co., Inc. Vytorin ERISA Litig., MDL No. 1938,
05-CV-1974 (D.N.J.).  We are responsible for the seminal decision in Vivien v.
Worldcom, Civil Action No. 2-01329 (N.D.Cal.), in which the Court in denying a motion
to dismiss affirmed the legal theory upon which these cases are based.

PARTNERS

Jeffrey S. Nobel co-founded the firm in 1995.  Mr. Nobel is a 1989 graduate of
Albany Law School, where he served as an Associate Editor of its Law Review, and is
also a 1986 *cum laude* graduate of the University of Connecticut, Storrs, where he
received a Bachelors of Arts degree in Political Science.

Following his law school graduation in 1989, Mr. Nobel was employed as a
litigation associate with the Hartford, Connecticut law firm of Schatz & Schatz, Ribicoff
& Kotkin, where he represented officers and directors in various securities class action
cases, as well as corporations and financial institutions in complex litigation matters.

Since co-founding the firm in 1995, Mr. Nobel has concentrated his practice on
representing investors, consumers and employees harmed by corporate wrongdoing. Mr.
Nobel is admitted to practice in Connecticut, and has prosecuted class action suits in
numerous State and Federal courts throughout the country, including the District of
Connecticut, the District of New Jersey, the District of Colorado, the Northern, Central
and Southern Districts of California, the Northern and Southern Districts of Texas, the

Southern District of New York, the Middle District of Florida, the District of Minnesota, and the Eastern District of Virginia.

Robert A. Izard is the former chair of the Commercial and Business Litigation Committee of the Litigation Section of the American Bar Association. He leads the firm's ERISA team, which is at the forefront of retirement plan litigation in this country. He is lead counsel in many of the nation's most significant class actions, including cases against Merck, Tyco International, Time Warner, AT&T and Sprint among others.

Mr. Izard has substantial experience in other types of complex class action and commercial litigation matters. For example, he represented a class of milk purchasers in a price fixing case. He also represented a large gasoline terminal in a gasoline distribution monopolization lawsuit.

Prior to joining the firm, he was a partner at Robinson & Cole where he represented large corporate clients in a variety of business litigation matters. For example, he represented a large worker's compensation insurer in numerous class action lawsuits filed throughout the country concerning an alleged conspiracy to fix worker's compensation insurance rates.

As part of his twenty plus years litigating complex commercial cases, Mr. Izard has substantial jury and nonjury trial experience, including a seven-month jury trial in federal district court. He is also experienced in various forms of alternative dispute resolution, including mediation and arbitration, and is a Distinguished Neutral for the CPR Institute for Dispute Resolution.

Mr. Izard is the author of Lawyers and Lawsuits: A Guide to Litigation published by Simon and Schuster and a contributing author to the Mediation Practice Guide.

He received his B.A. from Yale University and his J.D., with honors, from Emory University, where he was elected to the Order of the Coif and was an editor of the Emory Law Journal.

Seth R. Klein graduated *cum laude* from both Yale University and, in 1996, from the University of Michigan Law School, where he was a member of the Michigan Law Review and the Moot Court Board and where he was elected to the Order of the Coif. After clerking for the Hon. David M. Borden of the Connecticut Supreme Court, Mr. Klein served as an Assistant Attorney General for the State of Connecticut, where he specialized in consumer protection matters and was a founding member of the office's electronic commerce unit. Mr. Klein thereafter joined the reinsurance litigation group at Cadwalader, Wickersham & Taft LLP in New York, where he focused on complex business disputes routinely involving hundreds of millions of dollars. At Izard Nobel LLP, Mr. Klein's practice continues to focus on consumer protection matters as well as on complex securities and antitrust litigation

Mark P. Kindall is a 1988 graduate of Boalt Hall School of Law at the University of California at Berkeley, where he served as Book Review Editor of the California Law Review and was elected to the Order of the Coif. He has a bachelor's degree in history with highest honors from the University of California at Riverside, and he also studied history at the University of St. Andrews in Scotland.

Mr. Kindall was an associate at Covington & Burling in Washington, D.C. from 1988 until 1990. In 1990 he joined the United States Environmental Protection Agency as an Attorney Advisor. He represented the U.S. government in international negotiations at the United Nations, the Organization for Economic Cooperation and

Development, and the predecessor of the World Trade Organization. He was also a member of the U.S. Delegation to the United Nations Conference on Environment and Development (the "Earth Summit") in Rio de Janeiro in 1992.

In 1994, Mr. Kindall joined the Connecticut Attorney General's Office. As an Assistant Attorney General, he represented the State of Connecticut in numerous cases in federal and state court, as well as in various administrative tribunals. On several occasions, he argued appeals before the Connecticut Supreme Court and the United States Court of Appeals for the Second Circuit. In 2005, Mr. Kindall joined Izard Nobel LLP, where his practice has focused on securities, pension and consumer fraud cases.

Mr. Kindall has taught courses in appellate advocacy and administrative law at the University of Connecticut School of Law. He is admitted to practice in Connecticut, California, and the District of Columbia. He is also a member of the bar of the United States Supreme Court, the U.S. Courts of Appeals for the Second, Ninth, and D.C. Circuits, and the United States District Courts for Connecticut, the District of Columbia, the Northern, Southern, and Eastern Districts of New York, and the Northern, Central and Southern Districts of California.

William Bernarduci graduated from Bucknell University with a Business Administration   degree and graduated *magna cum laude* from New York Law School, where he was a member of the New York Law School Law Review. Upon graduation, he served as a law clerk for the Honorable Nina Gershon, United States District Judge for the Eastern District of New York.

His practice focuses on class action litigation in a variety of areas including ERISA, consumer and securities law, with a particular emphasis on litigation involving 401(k) retirement plans.

Prior to joining the firm, Mr. Bernarduci was associated with the New York law firms Skadden, Arps, Slate Meagher & Flom LLP and Dornbush Schaeffer, where he was involved primarily in complex commercial and securities litigation.

Mr. Bernarduci is admitted to the state and federal bars of Connecticut and New York, and is a member of the Connecticut Bar Association and the New York City Bar Association.  He has had notable *pro bono* experience including a successful political asylum case on behalf of a Tibetan nun who was imprisoned for her political and religious activism.

<u>ASSOCIATES</u>

<u>Wayne T. Boulton</u> received his bachelor's degree, *cum laude*, from Colgate University, and received his law degree, with honors, from the University of Connecticut School of Law.  Mr. Boulton served as Special Deputy Assistant States Attorney for the State of Connecticut before joining the law firm of O'Connell Flaherty & Attmore LLP in Hartford, Connecticut.  Mr. Boulton joined Schatz & Nobel P.C., in 2001.

Mr. Boulton has held numerous elected and appointed positions within the American Bar Association and the Connecticut Bar Association, including District Representative for the states of Connecticut and Rhode Island before the ABA's Young Lawyers Division.  Through a compact between the ABA and the United States Federal Emergency Management Agency, Mr. Boulton became a director of Disaster Legal Services during recovery operations following the September 11, 2001 terrorist attacks.

Mr. Boulton's practice at Izard Nobel has focused on Employee Benefits Law, including Employee Retirement Income Security Act ("ERISA") litigation, as well as securities fraud and consumer class actions. His pro bono and community service work includes representation of the American Civil Liberties Union of Connecticut, including In re National Security Agency Telecommunications Records Litig., and projects with the American Friends Service Committee.

Matthew L. Tuccillo earned his J.D in 1999 from the Georgetown University Law Center, where he made the Dean's List and was active in Georgetown's moot court program, on law review, and in its prestigious clinical program. He earned his B.A. and an interdisciplinary International Relations Certificate from Wesleyan University in 1995.

Prior to joining Izard Nobel, Mr. Tuccillo spent the first decade of his career working in Boston, Massachusetts. At Shapiro Haber & Urmy LLP from 2002-2009, he handled complex sale of business disputes and class actions involving securities, consumer protection, and overtime wage claims, several of which resulted in multi-million dollar settlements. He also served on the court-appointed Plaintiffs' Steering Committee in a federal Multidistrict litigation that consolidated 23 state-law-based consumer actions separately filed nationwide.

Mr. Tuccillo joined Izard Nobel in 2009 and handles a broad array of class action litigation, including consumer protection, securities, and ERISA cases. He has extensive experience in all facets of complex litigation and has represented individuals, organizations, and corporate clients nationally in state, federal, and bankruptcy courts, as well as arbitrations and mediations. Mr. Tuccillo is a member of the Massachusetts state

and federal bars, is currently applying for admission in Connecticut, and has been admitted pro hac vice before numerous state and federal courts nationwide.

Nancy A. Kulesa graduated from Fordham University with a B.A. with honors in International Politics, and earned her Juris Doctor from the University of Connecticut School of Law in 2001. Ms. Kulesa also studied comparative and international law at the University of London. Prior to joining Izard Nobel LLP, Ms. Kulesa was involved in representing corporations seeking antitrust clearance of mergers and acquisitions. Ms. Kulesa is involved in all of the firm's practice areas, with a primary focus on investigations, new cases and issues relating to the administration of individual and class actions.   Ms. Kulesa is admitted to the Connecticut Bar and the United States District Court for the District of Connecticut.